Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WAG ACQUISITION, L.L.C.**, <br><br> Plaintiff, <br><br> v. <br><br> **MULTI MEDIA, LLC**, et al., <br><br> Defendants. | Case No.: 2:14-cv-2340-ES-JAD <br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff WAG ACQUISITION, L.L.C., for its first amended complaint against Defendants, alleges infringement of United States Patent Nos. 8,122,141 and 8,327,011 (the "patents-in-suit"). Plaintiff alleges that Defendants' Internet delivery of live adult video web cam performances infringes the patents-in-suit, as more particularly specified herein.

## THE PARTIES

1. Plaintiff WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 3 Gold Mine Road, Suite 104, Flanders, New Jersey 07836.

2. On information and belief, Defendant MULTI MEDIA, LLC ("MMLLC") is a California limited liability company with its principal place of business at 23600 El Toro Road, #D344, Lake Forest, California 92630. On information and belief, MMLLC was formerly known as ZMEDIANOW, L.L.C., and located at 200 Goddard Drive, Irvine, California 92618. On information and belief, MMLLC is doing business under a number of trade names, including without limitation chaturbate.com.

3. On information and belief, Defendants DOE 1 – DOE 20 are entities whose precise identities are unknown to Plaintiff at this time, which operate in concert with Defendant MMLLC in connection with the conduct complained of herein. Plaintiff believes that information obtained in discovery will lead to identification of each such Defendant's true identity and permit Plaintiff to amend this complaint to state the same.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

**PLAINTIFF'S BUSINESS AND DEVELOPMENTS**

6. Plaintiff, operating under the trade name SurferNETWORK, is in the business of providing Internet broadcasting services for live and on-demand audio and video program material. Plaintiff began this business in 1998, and has been one of the leading providers of such services to the terrestrial radio stations and other content providers that comprise its customer base.

7. Early in developing its business, two of Plaintiff's principals, William A. Grywalski, ("Grywalski") and Harry Emerson ("Emerson"), recognized a need that existed in the field of Internet delivery of broadcast media due to the shortcomings in the then current Internet streaming technologies. They observed that long startup delays due to "buffering" and frequent program interruptions (sometimes referred to as "jitter") made the experience of trying to listen to or view streaming Internet content frustrating to the end user, and therefore impractical as a content delivery mechanism. They were interested in making the Internet streaming experience more like radio or television, including the immediacy of having the programming appear to start instantly on demand (e.g., turning on a radio or flipping channels), and continue playing once started without random interruptions.

8. Plaintiff engaged the assistance of a software design engineer, Harold Price ("Price"), to develop solutions for the shortcomings that Grywalski and Emerson saw in the then current technology, with respect to streaming media playback performance, as well as other technological issues concerning Internet delivery of broadcast media. Price worked on several aspects of this matter for Plaintiff over the period 1999-2001.

9. Price was aware of the then current approach to streaming, which attempted to overcome streaming transmission delays and jitter by a variety of techniques, including, for example, establishing a content buffer of 20-seconds or so in duration, on the receiving (user or "client") end of the communication, within the client's media player or media player browser plugin. After the user selected (e.g., clicked on) a stream, the player would start filling this buffer at the playback rate and then start playing when the buffer was full. While this method did provide some protection against interruptions for the duration of whatever content was initially buffered, it entailed an undesirable startup delay for "buffering," and provided no means for graceful recovery once the 20 seconds worth of content in the buffer was consumed.

10. Price conceived of solutions to these problems. He built a prototype that implemented one embodiment of those solutions, and he demonstrated that a system according to his new design could overcome the problems put to him by Grywalski and Emerson.

11. Plaintiff and its predecessors in interest filed a number of U.S. patent applications on these solutions, as enumerated below. To date, this family of patent applications has resulted in seven issued U.S. patents, including the two patents-in-suit. All of these patent applications were assigned to Plaintiff, or to a predecessor-in-interest of Plaintiff and reassigned to Plaintiff.

12. Plaintiff has been conducting an active, operating business ever since the developments described above, and has actively practiced technology taught in the patents-in-suit, from then to the present. Plaintiff has developed commercial

arrangements under which it streams content for numerous terrestrial radio stations and content providers in New Jersey, regionally, nationally, and internationally. It also provides a One-Click Royalty Reporter™ for radio stations to report streaming media performance royalty information to SoundExchange (a performing rights organization that collects royalties on the behalf of sound recording copyright owners ), among other services.

## DEFENDANTS' BUSINESS ACTIVITIES

13.  Defendants operate a series of sexually explicit, pornographic web sites, featuring live, interactive webcam performances by users and "models." Defendants' flagship site is chaturbate.com. (References herein to "Chaturbate" or "chaturbate.com" include reference to related and affiliated web sites operated by Defendant MMLLC and/or Doe Defendants.)

14.  Defendants recruit users and models and take live feeds from their individual web cams, over the Internet, for redistribution through Defendants' servers. Users can selectively view any of the individual streams through an interface that also provides an interactive "chat" window. Through the chat interface, a user can chat with other users and models, and request performances and "private sessions."

15.  The currency used on Chaturbate to pay and tip for services consists of "tokens" purchased from Defendants via credit card. The chat windows provided on the Chaturbate web site provide mechanisms to buy, pay, and tip with tokens. Defendants derive substantial revenue from the money that users spend for tokens on the Chaturbate site.

16. On information and belief, Defendants have recruited a large number of webcam performers in the U.S., Western and Eastern Europe, and elsewhere, to form an online pornography enterprise of national and international scope. Defendants' worldwide retinue of performers includes New Jersey residents, who perform online over Defendants' infringing services, from New Jersey, using server facilities provided by Defendants. Defendants also regularly make business visits to New Jersey and sponsor events in New Jersey to recruit models and promote Defendants' online services.

17. Defendants' servers include servers in the United States, under Defendants' ownership and control, configured to receive live streams from user and model webcams, and to stream Defendants' live webcam performances and other video streams over a variety of delivery technologies to diverse user equipment, including, inter alia, desktop computers and mobile devices (collectively referred to herein as "Players").

18. Defendants also provide an "Affiliate" program, under which Defendants' chaturbate.com and other webcam sites can be adapted ("white labeled") for other Internet service providers on a revenue splitting basis, or simply linked to, on a similar basis. Through such affiliation, providers of other high volume pornography sites (frequently "Tube" (Youtube-style) sites offering short, low-quality, prerecorded clips on a free basis), provide a paid, revenue-generating webcam adjunct service under the Tube site provider's own branding. The live webcam Affiliate site will appear to the user of the Tube site as a click-through site, or in a window that pops over the Tube site. Though branded and decorated to look

like the Tube site, the Affiliate site is actually served by MMLLC and/or one of the other Defendants herein.  The Affiliate site provider and the Defendants split the revenue resulting from the Affiliate site activity, in accordance with the terms of Defendants' Affiliate program.

19.   Defendants aggressively market their live webcam services to a worldwide audience, including, on information and belief, a substantial volume of users in this District, from which defendants derive substantial revenues.

20.   Adult streaming media is an extremely high volume business, which is well known as consuming a high percentage of the total bandwidth available on the Internet.  Operating in this market requires sophisticated technology and complex infrastructure.  While the operational demands of the adult streaming business entail high infrastructure cost, the market for Defendants' services is also very large, making the business extremely lucrative.

21.   Success in Defendants' business depends on the technological capability to deliver streaming media content in a responsive, smooth, and scalable manner, such as made possible by Plaintiff's patents.  Defendants derive great value as a result of operating under Plaintiff's patented technology, for which they have not compensated Plaintiff.

**THE PATENTS-IN-SUIT**

22.   United States Patent No. 8,122,141 (the '141 patent") was duly and legally issued on February 21, 2012, for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '141 patent and owns all rights to recover for past and ongoing infringement thereof.

23. United States Patent No. 8,327,011 (the '011 patent") was duly and legally issued on December 4, 2012, for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM." Plaintiff is the owner by assignment of the '011 patent and owns all rights to recover for past and ongoing infringement thereof.

24. The '141 and '011 patents cover a server and corresponding software ("Player Software") for sending and receiving requests for streaming video. These patents claim mechanisms whereby, (a) the server receives streaming media from a live or disk-based source, and processes streams for delivery by breaking them up into serially identified data elements; (b) the Player requests the streaming data elements by the identifiers assigned by the server, keeping track of the last data element received, and (c) the server sends the requested streaming data elements to the Player at high speed (faster than the rate at which the data is played back), and the Player renders the stream.

25. The individual claims of the '141 and '011 patents relate to

   (i) *Server apparatus*, and software executed completely on the server apparatus (claims 10-18 and 19-23 of the '141 patent);

   (ii) *Player apparatus*, including Player Software, which implements the claimed functionality of the Player apparatus (claims 24-27 of the '141 patent, and claims 1-4 of the '011 patent); and

   (iii) The use of server apparatus *in combination with* Player Software, to effect streaming video distribution in a specified manner (claims 1-9 and 28 of the '141 patent).

26. Pursuant to 35 U.S.C. § 287(a), Defendants have had notice of the patents-in-suit and of their infringement thereof since at least April 11, 2014, the date this action was filed.  On the same date, Plaintiff, by its undersigned counsel, sent a letter (the "Demand Letter") to Defendant MMLLC, , which Defendant MMLLC received shortly thereafter, also providing notice of Plaintiff's patents and Defendants' infringement.

## DEFENDANTS' INFRINGING OPERATIONS

27. The following describes, by way of example, and not of limitation, one mode of infringement practiced by Defendants, which Plaintiff alleges constitutes direct and indirect infringement (active inducement of infringement) of the patents-in-suit.

28. Plaintiffs operate, and for a considerable time have operated, servers for streaming live video performances over the Internet.  Such servers function to process and serve live streams, received by the servers from performers' web cams, to users who wish to view the streams and interact with performers in real time.

29. In performing these functions, such servers (a) process the stream to adapt it for delivery in the form of serially identified media data elements, by assigning serial identifiers to the sequential media data elements comprising the stream, and (b) serve, at high speed, the serially identified media data elements responsive to requests received from Players.

30. Defendants' servers, which provide streams in the form of sequential media data elements identified by serial identifiers, are especially adapted to work with Players specifically configured to request and receive such streams.  Such

Players operate by requesting a stream by its constituent elements, by the serial identifiers assigned to the elements, and by keeping track of the last media data element that the Player has received so it can request the proper next data element. Such functions are implemented by the Player Software loaded and executed by the Players.

31.  Defendants' servers direct and control the users' Players, causing the Players to load and execute the Player Software.  Defendants' servers read encoded information in network packets received from Players, identifying the type of Player that sent the packet.  In the case of Players so identified as compatible with such servers, Defendants' servers send such Players electronic instructions that cause the Players, without any user intervention, to load and execute the Player Software, so that the Player may request and receive the serialized streaming transmissions from Defendants' servers.  Defendants' servers also send electronic data to the Players containing the serial identifiers used by the Players to request streaming media elements, thereby further controlling the operation of the Players.

32.  Defendants encourage users to use such Players by making available streams especially adapted to be played only on such Players, and by providing instructions on their web site recommending that users use such Players to interact with Defendants' services.

33.  Defendants' delivery of live streaming media infringes the patents-in-suit (i) directly, under 35 U.S.C. § 271(a), and (ii) by inducing infringement under 35 U.S.C. § 271(b).

## **COUNT I: DIRECT INFRINGEMENT OF THE '141 AND '011 PATENTS**

34. Plaintiff repeats and realleges the allegations of paragraphs 1-33 above as if fully set forth at length herein.

35. 35 U.S.C. § 271(a) provides in pertinent part as follows:

> "(a) . . . whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

36. Defendants have infringed and are still infringing the '141 and '011 patents by making, selling, offering to sell, performing, and using apparatus and methods that embody the claims of each of said patents.  Defendants do so by practicing and/or directing and controlling the performance and/or use of each and every element of such claims.

37. In addition, and in the alternative, Defendants directly infringe claims 1-8 and 28 of the '141 patent under 35 U.S.C. § 271(a) by Defendants' acts combined with those of its users, with knowledge that each step of said patented methods will be performed through their combined action.

38. Pursuant to 35 U.S.C. §284, Plaintiff is entitled to not less than a reasonable royalty for the use made of said inventions by the Defendants, together with interest and costs as fixed by the Court.

39. Plaintiff is entitled to recover from Defendants the past and continuing damages so sustained by Plaintiff as a result of Defendants' acts of direct infringement as aforesaid, in an amount subject to proof at trial.

## COUNT II: INDUCED INFRINGEMENT OF THE '141 AND '011 PATENTS

40. Plaintiff repeats and realleges the allegations of paragraphs 1-39 above as if fully set forth at length herein.

41. 35 U.S.C. § 271(b) provides:

> "Whoever actively induces infringement of a patent shall be liable as an infringer."

42. In addition and in the alternative to Plaintiff's allegations under Counts I and III, Defendants actively induce infringement, by users, of claims 24-27 of the '141 patent, and claims 1-4 of the '011 patent.

43. Defendants induce such infringement by recommending that users use Players adapted to interoperate with their servers and infringe said claims.

44. Defendants further induce infringement by providing streams in a manner especially adapted to be viewed only on compatible Players. Defendants' servers provide such streams when they identify that the user is using a compatible Player, providing a user experience that further induces the user to use such Players. Defendants' servers send electronic instructions causing the Players to load and execute compatible Player Software and electronic data containing the serial identifiers for the Players to use to request sequential media data elements.

45. The users of such Players are thereby induced by Defendants to directly infringe claims 24-27 of the '141 patent and claims 1-4 of the '011 patent (e.g., by using Players and Player Software within the scope of said claims, whereby said users directly infringe such claims).

46. Since at least April 11, 2014 and/or their receipt of the Demand Letter, Defendants' acts of inducing users to infringe the above-specified claims of '141 and '011 patents have been committed, and continue to be committed, with knowledge of the '141 and '011 patents and specific intent that users infringe said patents, knowing that the users' acts constitute infringement.

47. Pursuant to 35 U.S.C. §284, Plaintiff is entitled to not less than a reasonable royalty for the use made of the invention by the Defendants, since at least April 11, 2014 and/or their receipt of the Demand Letter, by way of induced infringement as aforesaid under claims 24-27 of the '141 patent, and claims 1-4 of the '011 patent, together with interest and costs as fixed by the Court.

48. Plaintiff is entitled to recover from Defendants for the damages so sustained by Plaintiff as a result of Defendants' infringing acts, in an amount subject to proof at trial.

## COUNT III: WILLFUL INFRINGEMENT

49. Plaintiff repeats and realleges the allegations of paragraphs 1-48 above as if fully set forth at length herein.

50. 35 U.S.C. § 284 provides in pertinent part as follows:

> "When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."

51. 35 U.S.C. § 285 provides as follows:

> "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

52. The filing of this action for infringement on April 11, 2014 constituted notice to Defendants of such infringement, pursuant to 35 U.S.C. § 287. At or about the same time, Defendant MMLLC was also notified of infringement by the Demand Letter. From at least such time, Defendants should have known of Plaintiff's patents, understood the allegations of direct and indirect infringement against them, involving their acts and those of their users, known that their and their users' acts constitute infringement and specifically intended that the users infringe said patents. Defendants should have been aware at least from such time that there was an objectively high likelihood that their actions thereafter constituted, and were inducing, patent infringement. Defendants have no good faith basis to believe that their continuing conduct as alleged herein does not constitute patent infringement.

53. Defendants' continued infringement since at least the filing of this action and/or their receipt of the Demand Letter is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. § 284.

54. Defendants' continued infringement since at least the filing of this action and/or their receipt of the Demand Letter, without a good faith basis to believe that such conduct is not infringing, renders this an extraordinary case under 35 U.S.C. § 285, which entitles Plaintiff to an award of reasonable attorneys' fees.

55. Plaintiff does not compete with Defendants and does not currently practice the claims alleged herein to be infringed, and accordingly does not have an adequate preliminary injunctive remedy to prevent ongoing infringement, including willful infringement, by the Defendants. Accordingly, Plaintiff is entitled to seek

enhanced damages for continuing willful infringement even if Defendants had no knowledge of Plaintiffs' patents prior to the filing of the complaint.

## DEMAND FOR JURY TRIAL

56. Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WAG ACQUISITION, L.L.C. requests an entry of judgment in its favor and against Defendants as follows:

a) Declaring that each of the Defendants has and/or continues to directly infringe and induce infringement of one of more claims of United States Patent Nos. 8,122,141 and 8,327,011;

b) Declaring that each of Defendants' infringement has been willful, and awarding enhanced damages at least from the filing of this action and/or receipt of the Demand Letter as a result of that willfulness under 35 U.S.C. § 284, jointly and severally against the Defendants;

c) Awarding the past and continuing damages arising out of Defendants' direct infringement of United States Patent Nos. 8,122,141 and 8,327,011 and damages at least from the filing of this action and/or receipt of the Demand Letter for Defendants' indirect infringement as alleged herein, to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof, jointly and severally against the Defendants;

d) Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, jointly and severally against the Defendants;

e) Upon the final judgment of infringement herein, entering an order, pursuant to 35 U.S.C. § 283, permanently enjoining and restraining Defendants and their respective officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with each of the foregoing, from infringing and/or inducing the infringement of, any claims of United States Patent Nos. 8,122,141 and 8,327,011;

f) Awarding costs in this action to Plaintiff; and

g) For such other and further relief as the Court may deem just and proper.

Dated:   June 2, 2014                                   RONALD ABRAMSON
                                                        DAVID G. LISTON
                                                        LEWIS BAACH PLLC
                                                        The Chrysler Building
                                                        405 Lexington Avenue
                                                        New York, NY 10174

                                                        By: s/ Ronald Abramson
                                                               Ronald Abramson
                                                        Tel: (212) 822-0163

                                                        By: s/ David G. Liston
                                                               David G. Liston
                                                        Tel: (212) 822-0160

                                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On this 2nd day of June, 2014, I certify that I served upon counsel for Defendant Multi Media LLC a copy of the foregoing First Amended Complaint via the Court's ECF filing system.

Dated: June 2, 2014

                                            s/ Ronald Abramson
                                            Ronald Abramson
                                            **LEWIS BAACH pllc**
                                            The Chrysler Building
                                            405 Lexington Avenue
                                            New York, NY 10174
                                            Tel: (212) 826-7001