Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**                    <u>**ORAL ARGUMENT REQUESTED**</u>
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WAG ACQUISITION, L.L.C.**, <br><br> Plaintiff, <br><br> v. <br><br> **MULTI MEDIA, LLC**, *et al*., <br><br> Defendants. | Case No.: 2:14-cv-2340-ES-JAD |

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................1

A.   Background ........................................................................1

B.   Procedural History ................................................................3

C.   The Patented Technology ..........................................................4

ARGUMENT ............................................................................9

POINT I.   DIFFERENT PLEADING STANDARDS APPLY TO
CLAIMS OF DIRECT AND INDIRECT PATENT
INFRINGEMENT ........................................................9

A.   Different Pleading Standards Under Official "Forms" and *Twombly/Iqbal* ...9

B.   All Inferences In Favor of Non-Moving Party ....................................10

POINT II.   THE FAC SUFFICIENTLY PLEADS DIRECT
INFRINGEMENT ......................................................11

POINT III.   THE FAC SUFFICIENTLY PLEADS INDUCED
INFRINGEMENT ......................................................16

A.   The FAC *'s* Allegations of Induced Infringement ................................17

B.   MM *'s* Knowledge of WAG *'s* Patents and Intent to Cause Infringement .....19

1.   Controlling Authority Holds that Knowledge Provided
By The Complaint is Sufficient ............................................20

2.   The Better-Reasoned District Court Decisions Hold That Knowledge
Provided By The Complaint is Sufficient To Support Post-Filing
Induced Infringement ......................................................21

i

3.      Even Cases That Require Pre-Suit Knowledge Permit The Addition
        Of Inducement Counts In An Amended Complaint ............................24

C.    The FAC Properly Pleads Specific Intent ....................................................25

      POINT IV.   THE FAC SUFFICIENTLY PLEADS WILLFUL
                  INFRINGEMENT ...................................................................28

CONCLUSION ........................................................................................................38

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*3D Sys., Inc. v. Formlabs, Inc.,*
   No. 13 Civ. 7973, 2014 WL 1904365 (S.D.N.Y. May 12, 2014) ....................24

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.,*
   592 F. Supp. 2d 1208 (N.D. Cal. 2008) .............................................................35

*Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc.,*
   No. 9:08-CV-171, 2009 WL 9091275 (E.D. Tex. Sept. 2, 2009) .............. 35, 38

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
   239 F.3d 1343 (Fed. Cir. 2001) ........................................................................31

*Apeldyn Corp. v. Sony Corp.,*
   852 F. Supp. 2d 568 (D. Del. 2012)...................................................................23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................. *passim*

*Astrazeneca AB v. Apotex Corp.,*
   Nos. 01 Civ. 9351, M-21-81 (BSJ),
   2010 WL 2541180 (S.D.N.Y. June 9, 2010) .....................................................35

*Automated Transactions, L.L.C. v. First Niagara Fin. Grp., Inc.,*
   Nos. 10-CV-0407 (A) (M),
   2010 WL 5819060 (W.D.N.Y. Aug. 31, 2010) ..................................................24

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................. *passim*

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
   681 F.3d 1323 (Fed. Cir. 2012) ............................................................... *passim*

*British Telecomms. PLC v. Google Inc.,*
   Civ. Act. No. 11-1249-LPS, Slip Op. (D. Mass. Jan. 9, 2014).........................23

*Capogrosso v. Supreme Court of N.J.,*
   588 F.3d 180 (3d Cir. 2009)...............................................................................10

*Dataquill Ltd. v. High Tech Computer Corp.*,
   887 F. Supp. 2d 999 (S.D. Cal. 2011) .......................................................... 34, 35

*Discovision Assocs. v. Disc Mfg., Inc.*,
   25 F. Supp. 2d 301 (D. Del. 1998) .....................................................................36

*DSU Med. Corp. v. JMC Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) ....................................................... 10, 16, 26, 27

*Englishtown, Inc. v. Rosetta Stone Inc.*,
   962 F. Supp. 2d 355 (D. Mass. 2013) .......................................................... 33, 34

*EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*,
   No. C-12-1011 EMC, 2012 WL 4514138 (N.D. Cal. Oct. 1, 2012) .................21

*Execware, LLC v. Staples, Inc.*,
   Civ. Act. No. 11-836-LPS,
   2012 WL 6138340-SRF (D. Del. Dec. 10, 2012) ..............................................22

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ........................................................................27

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   ___ U.S. ___, 131 S. Ct. 2060 (2011)...............................................................16

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005)...............................................................................11

*Int'l Nutrition Co. v. Horphag Research Ltd.*,
   257 F.3d 1324 (Fed. Cir. 2001) ........................................................................21

*Labyrinth Optical Tech., LLC v. Fujitsu Am., Inc.*,
   No. 13-cv-00030 (C.D. Cal. Aug. 21, 2013) ............................................... 20, 21

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   __ U.S. __, 134 S. Ct. 2111 (2014)....................................................................4

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
   No. CV 12-10322 GW (FFMx),
   2013 WL 8540289 (C.D. Cal. July 11, 2013)............................................... 36, 37

*Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*,
   No. Civ. 10-666-SLR, 2011 WL 941197 (D. Del. Mar. 16, 2011) ...................23

iv

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681 DOC (ANx),
   2012 WL 1835680 (C.D. Cal. May 16, 2012) ............................................. 23, 25

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
   950 F. Supp. 2d 876 (E.D. Va. 2013) ................................................................25

*Richmond v. Lumisol Elec. Ltd.*,
   Civ. Act. No. 13-1944 MLC,
   2014 WL 1405159 (D.N.J. Apr. 10, 2014) .................................................. 14, 27

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ................................................................ *passim*

*Smartwater, Ltd. v. Applied DNA Scis., Inc.*,
   No. 12-CV-5731 (JS) (AKT),
   2013 WL 5440599 (E.D.N.Y. Sept. 27, 2013) ...................................................24

*SoftView LLC v. Apple Inc.*,
   Civ. Act. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ............22

*St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*,
   Civ. Act. No. 08-371-JJF-LFS,
   2009 WL 163812 (D. Del. June 10, 2009) .........................................................35

*Sule v. Kloehn Co., Ltd.*,
   149 F. Supp. 2d 115 (D.N.J. 2001) ....................................................................36

*Trans Video Elecs., Ltd. v. Netflix, Inc.*,
   Civ. Act. No. 12-1743-LPS,
   2014 WL 900929 (D. Del. Mar. 4, 2014) .............................................. 23, 27, 28

*Trustees of Univ. of Penn. v. St. Jude Children's Research Hosp.*,
   982 F. Supp. 2d 518 (E.D. Pa. 2013) .......................................................... 35, 37

*Walker Digital LLC v. Facebook Inc.*,
   852 F. Supp. 2d 559 (D. Del. 2012).......................................................... 21, 22

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
   Civ. Act. No. 13-11634-WGY, 2014 WL 69035 (D. Mass. Jan. 9, 2014).........24

## STATUTORY AUTHORITIES

28 U.S.C. § 2072 .................................................................................................9

35 U.S.C. § 271(a) ..........................................................................................9, 14

35 U.S.C. § 271(b) ....................................................................................9, 10, 16

35 U.S.C. § 282(a) ............................................................................................29

35 U.S.C. § 283 ................................................................................................31

35 U.S.C. § 287 ................................................................................................28

35 U.S.C. § 287(a) ...............................................................................17, 19, 24

## RULES

Fed. R. Civ. P. 8 ...............................................................................................30

Fed. R. Civ. P. 8(a)(2) .......................................................................................9

Fed. R. Civ. P. 11(b) .........................................................................................30

Fed. R. Civ. P. 15(d) .........................................................................................25

Fed. R. Civ. P. 84 .............................................................................................9

Defendant MULTI MEDIA, LLC ("MM") has moved to dismiss Plaintiff's First Amended Complaint ("FAC").  Plaintiff submits that in the main, the Court need look no further than the FAC itself to see the shortcomings of MM's motion. The few points in MM's motion based on legal propositions also prove unfounded when the authorities are reviewed.

Simply reading the FAC will show factually detailed (and legally sufficient) allegations of how MM, an adult "web cam" operator, by the configuration and operation of its streaming media servers, directly infringes Plaintiff's patents; and, further, that with full knowledge of those patents and what they cover, MM induces its web site users to infringe those patents as well.

In the months since Plaintiff's patents were directly brought to MM's attention, MM has not changed its infringing *modus operandi* in any respect, or sought any kind of license from Plaintiff, opting instead to be a willful infringer.

As will be demonstrated herein, MM's motion disregards the express allegations of the pleading it purports to challenge, just as MM itself disregards Plaintiff's patents.  MM's motion is without merit and must be denied.

## INTRODUCTION

**A. Background**

Plaintiff WAG ACQUISITION, L.L.C. ("WAG" or "Plaintiff") is a New Jersey business that provides Internet streaming services to proprietors of traditional radio stations – so that, in addition to over-the-air broadcast, the radio station can retransmit ("stream") its live programming over the Internet.  WAG and

its predecessor entities have operated this business continuously since 1998 and WAG continues in that business to the present date.

In the course of operating its radio streaming business, WAG invested in research and development ("R&D") to improve the then current techniques for streaming over the Internet.  WAG found that it needed to do so because Internet streaming as implemented at the time was typified by frustrating startup delays for "buffering" (waiting for signals to arrive), and frequent interruptions and "drop-outs."  WAG's object was to provide an Internet radio experience that would seem to be just like broadcast radio, with an instantaneous program startup when an Internet "radio" channel was clicked on by the user, and uninterrupted delivery while the user was listening to the program.  WAG developed technology to overcome these problems.  WAG applied for and obtained a number of patents on these developments.  The patents apply to how WAG solved the noted problems in its own business, but have applicability well beyond WAG's business of streaming broadcast radio.

Defendant MM operates a web site called "chaturbate.com," which streams pornographic live video feeds from the "web cams" of its members, who perform on camera for each other, as well for a large audience of paying users who view the performances on MM's web sites.  The FAC alleges that the technology MM uses to stream its video is WAG's technology, as claimed in the patents-in-suit; that MM and its customers are infringing those patents; and that the customers are induced (indeed, directed and controlled) to do so by the actions of MM.  Thus, while WAG and MM do not compete with each other in their respective

2

businesses, which address totally different markets and classes of customers, MM uses technology that was originated and patented by WAG.  WAG seeks fair compensation for MM's use of WAG's patented technology.

## B. Procedural History

On April 11, 2014, WAG filed its initial complaint (the "Complaint") against MM and a number of other defendants then believed to be in complicity with MM (Dkt. 1).  MM was served on April 16 (Dkt. 6).

On the same day that WAG filed the Complaint, it sent a letter to MM at its California address, asserting infringement (the "Demand Letter").  FAC ¶ 26.  MM admits that it received the Demand Letter and does not assert that it was delayed.  MM's Opening Brief in Support of its Motion for Dismissal, Dkt. 27-1 ("MM Br.") at 2.  The Demand Letter advised MM with specificity of its infringement of WAG's patents and conveyed WAG's willingness to discuss a license.

On May 19, WAG voluntarily dismissed the named defendants other than MM, pursuant to Rule 41(a)(i), Fed. R. Civ. P. (Dkt. 12).  On May 21, MM moved to dismiss the original complaint.  On June 2, WAG filed its First Amended Complaint, limiting its allegations to MM and the Doe Defendants, and conforming its pleading to the intervening Supreme Court decision in *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, __ U.S. __, 134 S. Ct. 2111 (2014), thereby mooting MM's initial motion.  (*See* Dkt. 25).  (Contrary to MM's assertion, MM Br. at 2, the filing of the FAC was not a concession that MM's initial motion had merit.)  MM now moves to dismiss the FAC.

Although MM has been aware for at least three months that its acts infringe WAG's patents, it continues full bore with its infringing activities, in complete disregard of WAG's rights.

## C. The Patented Technology

WAG has obtained seven patents on the streaming technology it developed. This action concerns MM's infringement of two of those patents: U.S. Pat. Nos. 8,122,141 (the '141 patent) and 8,327,011 (the '011 patent).

All seven of WAG's streaming media patents address the problem of how to deliver a high-bandwidth stream of media reliably over the Internet, which is inherently an unreliable network.  Information sent over the Internet takes the form of discrete packets of data.  Although ordinary users view the Internet as dependable, the mechanisms provided by the Internet Protocol do not guarantee timely delivery of those packets of data, or that the packets will arrive in the order they were sent.  WAG's technologies overcome these limitations so that a stream can be delivered to the user (*i.e.*, the program listener or viewer) without startup delays or interruptions.  Reliable streaming of live media is a make-or-break issue for WAG's radio station customers – just as it is for MM, whose "Chaturbate" service benefits tremendously from the improved delivery provided by the technology covered by WAG's patents.

The '141 and '011 patents concern one solution to the problem of unreliable delivery of streaming media on the Internet.  Others of WAG's patents cover a

different solution (and have been asserted by WAG in other cases), but only the '141 and '011 patents are being asserted in this particular lawsuit.

The '141 and '011 patents disclose and claim what is essentially a "divide and conquer" approach to delivering a coherent stream of media over a potentially poor quality Internet connection. Rather than seeking to moderate transmission of a continuous stream from a server to an essentially passive ("dumb") client, the '141 and '011 patents instead divide the stream into separate, serially identified pieces, and then rely on an active ("intelligent") client (*i.e.*, the user's computer, mobile device, or other player, hereinafter the "Player") to request the pieces, by their serial identifiers, as the client needs for steady and uninterrupted playback.

The FAC alleges MM's conduct in textual terms. The following diagram is provided as a visual aid, to represent the technical allegations graphically:



As shown in the figure, the Server (represented by the large block at the upper center-right in the above diagram) and the Player (the smaller block at the bottom) are in back-and-forth communication over the Internet, as indicated by the vertical "Signal" lines (2), (3) and (4) in the center of the diagram.  The MM performer's web cam, also connected to the Server over the Internet, is represented by the block at the upper left.  As the Server receives the original live video stream (1) from the web cam, a segmenting component of the Server (represented by the block labeled "5" within the Server) divides the stream into a series of chunks or "segments" of video data.  The segmenting process gives each segment a serial identifier (*e.g.*, "Seg 01", "Seg 02", "Seg 03", etc.).  The Player internally keeps a record (labeled as "LAST SEG" in this figure), which notes the identifier of the last segment that the Player has received.  In this case, the LAST SEG indicator reflects that the stream viewing is already in process, and that the Player has already received the video segment "Seg 01".  Based on this information, the Player makes a request (REQUEST Signal (2)) to the Server for the segment "Seg 02."  A serving component of the Server (Block (6)) responds (RESPONSE Signal (3)) by fetching and sending the requested segment, "Seg 02" to the Player, at high speed, and the Player queues the segment up to be played.  If a segment is not received, the Player knows that fact due to the identifier system and can request it again in time to put it in line for play-back in the right order so that the user is not aware of any interruption.

The pattern of activity reflected in this figure (which mirrors the acts alleged to be performed by MM) falls within the claims of the patents-in-suit.  First, as

alleged in detail, the Server and Player in the illustrated arrangement both infringe specific claims. MM operates the infringing Server and thereby directly infringes. Users infringe by using the Players, which independently infringe.

The foregoing, of course, is sufficient in itself to make MM liable for direct infringement. But MM's infringement goes well beyond this. In addition to its ***own*** acts of direct infringement resulting from its operation of the Server, MM also has responsibility for the users' use of their infringing Players. MM takes actions that both ***induce*** and ***cause*** users to use the infringing Players (and the infringing software within the Players). MM causes this use by sending the Player electronic instructions (see CONTROL Signal 04 in the figure), which put the infringing internal Player mechanisms into action. In other words, MM directs and controls infringement by others (*i.e.*, users), which, as will be explained below, is legally the same as its own acts of direct infringement. At the same time, MM, by triggering and controlling the Players in this manner, is also using the Players as elements in its own media delivery system, thereby "using" the Players (and related software), further constituting direct infringement by MM. In addition, MM is also indirectly liable, for "inducing" infringement, as a result of encouraging and enticing users to use infringing Players to watch MM's video streams, with the knowledge that this is causing the users as well to directly infringe WAG's patents. As will be addressed below, all of this is expressly laid out in the allegations of the FAC.

## ARGUMENT

**POINT I.   DIFFERENT PLEADING STANDARDS APPLY
TO CLAIMS OF DIRECT AND INDIRECT
PATENT INFRINGEMENT**

**A. Different Pleading Standards Under Official "Forms" and *Twombly/Iqbal***

Rule 8(a)(2), Fed. R. Civ. P. provides that a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  The rule requires that a claim for relief give the defendant "fair notice" of the claim "and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The allegations must make it plausible on the face of the pleading that the claimant is legally entitled to the relief it is seeking.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

However, certain types of pleadings have been established as "Forms" under the Federal Rules.  One of these forms, Form 18, is for patent infringement.  Rule 84, Fed. R. Civ. P., states that a pleading in accordance with one of the Forms will "suffice."  Rule 84 has the force of a federal statute, by reason of the Federal Rules Enabling Act, 28 U.S.C. § 2072.

There are two general categories of patent infringement – "direct" and "indirect" infringement.  "Direct infringement" occurs when an infringer is directly responsible, under 35 U.S.C. § 271(a), for the acts constituting infringement.  "Indirect infringement" refers to the statutory categories under 35 U.S.C. § 271(b) and (c), where an accused party "actively induces" or materially "contributes to" another party's direct infringement.  As it turns out, the applicable pleading

9

standards differ, depending on whether the alleged infringement is direct or indirect.  This case involves both forms of infringement, and different pleading standards apply to each.

The example pleading covered by Form 18 is for direct patent infringement.  Thus, notwithstanding *Twombly* and *Iqbal*, controlling authority states that whether a complaint "adequately plead[s] direct infringement is to be measured by the specificity required by Form 18."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig*., 681 F.3d 1323, 1334 (Fed. Cir. 2012).

By contrast, claims of induced infringement under 35 U.S.C. § 271(b), must contain factual allegations that are "sufficient to allow an inference that at least one direct infringer exists" (*id.* at 1336) and that the defendants "'knowingly induced infringement and possessed specific intent to encourage another's infringement'" (*id.* at 1339 (quoting *DSU Med. Corp. v. JMC Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006))).  In contrast to allegations of direct infringement, induced infringement claims must meet the pleading requirements of Rule 8(a)(2) as explained in *Twombly* and *Iqbal*.  *Bill of Lading*, 681 F.3d at 1336-37.

## B.  All Inferences In Favor of Non-Moving Party

For both direct and indirect infringement, it is axiomatic that on a motion to dismiss for failure to state a claim, a court must "draw all reasonable inferences" from the allegations of the complaint in favor of the non-moving party. *Capogrosso v. Supreme Court of N.J*., 588 F.3d 180, 184 (3d Cir. 2009).  "When there are well-pleaded allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). If the claim is "plausible on its face," a motion to dismiss should not be granted. *Twombly*, 550 U.S. at 570. "Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *Bill of Lading*, 681 F.3d at 1340.

## POINT II.   THE FAC SUFFICIENTLY PLEADS DIRECT INFRINGEMENT

Count I of the FAC pleads direct infringement. Count I (FAC ¶¶ 34-39) is immediately preceded by sections captioned "The Patents-In-Suit" (¶¶ 22-26) (describing, claim-by-claim, what the patents cover), and "Defendants' Infringing Operations" (FAC ¶¶ 27-33) (describing how Defendants do what is covered by the respective claims). These allegations are also part of Count I because ¶ 34 of the FAC expressly incorporates these allegations into Count I by reference. Thus, all of the allegations set forth in ¶¶ 22-39 of the FAC must be considered in evaluating the sufficiency of Count I.

Because it deals with direct infringement, Count I pleads in accordance with Form 18 (see in particular FAC ¶ 36) – but Count I also adds considerable additional allegations that exceed the requirements of Form 18.

MM does not deny that the requirements of Form 18 are met, except in one respect: MM quibbles that Plaintiff "fail[s] to address the '141 and '011 patents

11

separately in its count for direct infringement." MM Br. at 5. This contention, in addition to being purely formalistic, is simply wrong. It overlooks the specific allegations incorporated into Count I by reference, which **do** "address the '141 and '011 patents separately" – and do so in thorough detail. The most MM can say is that the claims for infringement of the two patents, even if the facts are adequately recited (which they are) are not broken into separate "Counts," and that this in itself requires repleading – in short, a weak, implausible, and unpersuasive argument.

The allegations of the FAC unquestionably cover the substance of MM's direct infringement of the '141 and '011 patents. To begin with, ¶ 24 of the FAC alleges what the patents-in-suit cover. In particular, ¶ 24 specifically alleges that the patents:

> claim mechanisms whereby, (a) the server receives streaming media from a live or disk-based source, and processes streams for delivery by breaking them up into serially identified data elements; (b) the Player requests the streaming data elements by the identifiers assigned by the server, keeping track of the last data element received, and (c) the server sends the requested streaming data elements to the Player at high speed (faster than the rate at which the data is played back), and the Player renders the stream.

FAC ¶ 25 then addresses "individual claims of the '141 and '011 patents," tying particular apparatus and processes with specified, identified patent claims:

25. The individual claims of the '141 and '011 patents relate to

(i) *Server apparatus*, and software executed completely on the server apparatus (claims 10-18 and 19-23 of the '141 patent);

(ii)     *Player apparatus*, including Player Software, which implements the claimed functionality of the Player apparatus (claims 24-27 of the '141 patent, and claims 1-4 of the '011 patent); and

(iii)    The use of server apparatus *in combination with* Player Software, to effect streaming video distribution in a specified manner (claims 1-9 and 28 of the '141 patent).

FAC ¶¶ 29-31 then recite how MM performs each of the specific acts

covered by these respective patent claims:

> 29.    In performing these functions [of "processing and serving live streams"], [Defendants'] servers (a) process the stream to adapt it for delivery in the form of serially identified media data elements, by assigning serial identifiers to the sequential media data elements comprising the stream, and (b) serve, at high speed, the serially identified media data elements responsive to requests received from Players.

The allegations also detail how MM's servers invoke infringing Players and

Player Software, and "direct and control" this activity:

> 30.    Defendants' servers, which provide streams in the form of sequential media data elements identified by serial identifiers, are especially adapted to work with Players specifically configured to request and receive such streams.  Such Players operate by requesting a stream by its constituent elements, by the serial identifiers assigned to the elements, and by keeping track of the last media data element that the Player has received so it can request the proper next data element.  Such functions are implemented by the Player Software loaded and executed by the Players.

> 31.    Defendants' servers direct and control the users' Players, causing the Players to load and execute the Player Software.  Defendants' servers read encoded information in network packets received from Players, identifying the type of Player that sent the packet.  In the case of Players so identified as compatible with such servers, Defendants' servers send such Players electronic instructions that cause the Players, without any user intervention, to load and execute the Player Software, so that the Player may request and receive the serialized streaming transmissions from Defendants' servers. Defendants' servers also send electronic data to the Players containing the

serial identifiers used by the Players to request streaming media elements, thereby further controlling the operation of the Players.

FAC ¶ 36, following the format of Form 18, then alleges that the foregoing constitutes direct infringement:

> 36.    Defendants have infringed and are still infringing the '141 and '011 patents by making, selling, offering to sell, performing, and using apparatus and methods that embody the claims of each of said patents.  Defendants do so by practicing and/or directing and controlling the performance and/or use of each and every element of such claims.

The FAC's allegations, as set forth above, include, without limitation, allegations that MM (and any Doe Defendants working with MM) practice the claims relating to its servers (claims 10-18 and 19-23 of the '141 patent, as reflected at FAC ¶¶ 25, 29 & 36), and "direct and control" the separate infringement resulting from users' use of Players and Player Software (claims 1-8, 28 and 23-27 of the '141 patent and claims 1-4 of the '011 patent, as reflected at FAC ¶¶ 31 & 36).  In addition to "direction and control," this allegation also alleges that Defendants "use" the claimed subject matter (the verb "use" is part of the prohibition of 35 U.S.C. § 271(a)).  Defendants "use" the infringing Players and Player Software when they trigger their use and control their operation (as alleged in the FAC) so that these items can serve as part of Defendants' media delivery vehicle

As support for its argument that separate counts are required for each patent, MM cites *Richmond v. Lumisol Electronics Ltd*., Civ. Act. No. 13-1944 MLC, 2014 WL 1405159 (D.N.J. Apr. 10, 2014), in which the plaintiff made a single conclusory allegation of infringement of four patents against six defendants.  The

14

court in that case was concerned that each defendant had not properly been given notice of what it was being accused of infringing. This case, by contrast, involves one named defendant, and two closely related patents, and a complaint that expressly lays out in multiple, detailed paragraphs, the basis for charging MM with direct infringement of each patent.

In particular, as set forth above, the FAC contains highly detailed allegations reciting exactly what it is that MM does to infringe each of the '141 and '011 patents, broken down to the level of individual claim groups! Plaintiff respectfully submits that these allegations meet any conceivable pleading requirement under Form 18, *Twombly/Iqbal* or otherwise. There is no possibility of a lack of proper notice here.

The Court could decide to overlook the detailed paragraphs in the FAC spelling out, claim-by-claim, what Defendant MM does to infringe, overlook the express incorporation by reference of ¶ 22-33 into Count I, and instead order that, in addition to all those specific allegations, the "Form 18" paragraph (¶ 36) be broken out into two separate Counts. However, Plaintiff respectfully submits that such a ruling would merely elevate form over substance – and cause needless delay. The proper response to MM's motion is to recognize that direct infringement has been sufficiently pleaded, and to require Defendant to step up to the bar and answer these allegations.

## POINT III.   THE FAC SUFFICIENTLY PLEADS INDUCED INFRINGEMENT

Count II of the FAC seeks *prospective* damages for Defendant's continued inducement of direct infringement by users.  FAC ¶¶ 46-47 (claiming a reasonable royalty "since at least April 11, 2014 [the date this action was commenced] and/or [Defendant's] receipt of the Demand Letter, [for] induced infringement").

Plaintiff's claim for induced infringement is based on 35 U.S.C. § 271(b), which provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."  Plaintiff's allegations of induced infringement are limited to only specified claims of the patents-in-suit.  Thus, the only patent claims as to which Plaintiff alleges induced infringement are claims 1-4 of the '011 patent, which concern Players *per se*, and claims 24-27 of the '141 patent, which concern Player Software (*i.e.*, the software that makes the Player perform the functions claimed in these patents).  Plaintiff alleges that MM actively induces users to use Players and Player Software in a manner MM knows directly infringes Plaintiff's patents.

Liability under § 271(b) "requires knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, ___ U.S. ___, 131 S. Ct. 2060, 2068 (2011); *see also DSU Med. Corp.*, 471 F.3d at 1306.  Thus, a complaint that a defendant induces infringement by its customers "must contain facts plausibly showing that [the defendants] specifically intended their customers to infringe the [patent-in-suit] and knew that the customer's acts constituted infringement."  *Bill of Lading*, 681 F.3d at 1339.  (This does ***not*** mean, however,

"that [the plaintiff] must prove its case at the pleading stage." *Bill of Lading*, 681 F.3d at 1339 (internal citation omitted).)

For the knowledge component of this claim, Plaintiff relies on several elements. First, 35 U.S.C. § 287(a) provides that "filing of an action for infringement shall constitute" notice of infringement. This occurred on April 11, 2014. Second, Plaintiff's Demand Letter, undisputedly received within days after the filing of the action, gave similar notice. Third, Defendants were served on April 16. Fourth, the Complaint was amended by the FAC on June 2, and the FAC alleges that Defendants had the requisite knowledge at least as of the aforesaid filing, service, and notice events, which had taken place in April.

Clearly, the FAC sufficiently alleges both the infringement-related and knowledge-related facts relative to induced infringement.

## A.  The FAC's Allegations of Induced Infringement

As noted, indirect infringement requires there to be a direct infringement. The FAC specifically alleges that the direct infringement lies in infringement, by MM's users, of claims 1-4 of the '011 patent and claims 24-27 of the '141 patent. FAC ¶ 45 ("The users of such Players are thereby induced by Defendants to directly infringe claims 24-27 of the '141 patent and claims 1-4 of the '011 patent (*e.g.*, by using Players and Player Software within the scope of said claims, whereby said users directly infringe such claims).")

17

Moreover, ¶¶ 31-32 of the FAC (incorporated by reference into Count II by virtue of FAC ¶ 40)), as well as ¶¶ 42-44, spell out how the Defendant induces this infringement, including:

31.     Defendants' servers direct and control the users' Players, causing the Players to load and execute the Player Software.  Defendants' servers read encoded information in network packets received from Players, identifying the type of Player that sent the packet.  In the case of Players so identified as compatible with such servers, Defendants' servers send such Players electronic instructions that cause the Players, without any user intervention, to load and execute the Player Software, so that the Player may request and receive the serialized streaming transmissions from Defendants' servers. Defendants' servers also send electronic data to the Players containing the serial identifiers used by the Players to request streaming media elements, thereby further controlling the operation of the Players.

32.     Defendants encourage users to use such Players by making available streams especially adapted to be played only on such Players, and by providing instructions on their web site recommending that users use such Players to interact with Defendants' services.

42.     In addition and in the alternative to Plaintiff's allegations under Counts I and III, Defendants actively induce infringement, by users, of claims 24-27 of the '141 patent, and claims 1-4 of the '011 patent.

43.     Defendants induce such infringement by recommending that users use Players adapted to interoperate with their servers and infringe said claims.

44.     Defendants further induce infringement by providing streams in a manner especially adapted to be viewed only on compatible Players. Defendants' servers provide such streams when they identify that the user is using a compatible Player, providing a user experience that further induces the user to use such Players.  Defendants' servers send electronic instructions causing the Players to load and execute compatible Player Software and electronic data containing the serial identifiers for the Players to use to request sequential media data elements.

As noted, a claim for inducement also has requirements concerning the defendant's state of mind in inducing the direct infringement.  In this regard, the FAC also pleads – expressly and in detail – that no later than April 11, 2014, and/or receipt of the Demand Letter, MM was aware of WAG's patents and knew that its customers' acts constituted direct infringement.  FAC ¶¶ 46, 52.

## B.  MM's Knowledge of WAG's Patents and Intent to Cause Infringement

MM's principal contention with respect to the induced infringement claim is less directed at the facts constituting MM's notice, or the facts of what MM did to induce its users to act, than at the legal contention that knowledge of infringement acquired only upon being sued cannot be considered for purposes of an induced infringement claim.  Indeed, this contention is the lynchpin of MM's argument on induced infringement.  It must be rejected because it is simply in error.

First, MM's contention flies in the face of 35 U.S.C. § 287(a), which provides that "filing of an action for infringement shall constitute" notice of infringement.  Section 271(b) does not state that whoever actively induces infringement of a patent *before being sued on the patent* shall be liable as an infringer.  MM's argument would require the Court to read these italicized words into the statute.  As the overwhelming weight of authority holds, there is no such implied limitation.

Indeed, Defendant MM's motion acknowledges that courts have permitted claims for prospective damages for induced infringement based on knowledge acquired on the filing of an action.  MM Br. at 12.  If Defendant had carefully read

19

the FAC, it would have seen that Count II's claim for relief is ***already*** limited to damages since the filing of the Complaint (FAC ¶¶ 46, 47), which comports with MM's cited authority.

But beyond this, MM's entire legal proposition on induced infringement is simply wrong.  MM also attempts to argue that the FAC does not sufficiently allege intent to cause infringement; but the allegations are sufficient, and MM's argument to the contrary misreads the applicable precedent.

### 1.  Controlling Authority Holds that Knowledge Provided By The Complaint is Sufficient

A thorough discussion of the standard for pleading inducement after *Bill of Lading* is found in *Labyrinth Optical Technology, LLC v. Fujitsu America, Inc*., No. 13-cv-00030, Slip. Op. at 9 (C.D. Cal. Aug. 21, 2013).  After reviewing conflicting district court authority, the court held that *Bill of Lading* "settled the issue" and is "binding authority" for the position that sufficient awareness is provided by a complaint that identifies the patents-in-suit.  *Id.* at 7, 12.

First, *Labyrinth* explains, *Bill of Lading* is a holding – not merely *obiter dictum*.  *Id*. at 9.  The complaint there alleged no facts suggesting pre-filing awareness of the patent-in-suit.  The Federal Circuit nonetheless ruled that the elements of infringement were properly pled and that "the District Court erred when it dismissed" the complaint.  *Id.* at 7-8 (quoting *Bill of Lading*, 681 F.3d at 1345).  Because the District Court's error was its ruling that the absence of an allegation of pre-filing notice required dismissal, the statement is a holding.  *Id*.

Second, *Labyrinth* concludes, the *Bill of Lading* decision is a ruling of patent law, not of procedure for which the court must look to regional circuit law.  It is true that procedural aspects of pleading are reviewed pursuant to the precedent of regional circuit law.  *Bill of Lading*, 681 F.3d at 1331.  But the question here – whether pre-complaint knowledge is an element of the cause of action – is not procedural.  It is an issue of substantive patent law, which is squarely within the jurisdiction of the Federal Circuit.  *Labyrinth*, No. 13-cv-00030 at 10-11 (citing *Int'l Nutrition Co. v. Horphag Research Ltd*., 257 F.3d 1324, 1328 (Fed. Cir. 2001)).

Following *Labyrinth*, the court in *EON Corp. IP Holdings, LLC v. Sensus USA, Inc*. held that although claims for indirect infringement "require knowledge of the patent, the Federal Circuit has recently held that post-filing knowledge is sufficient to meet this requirement."  No. C-12-1011 EMC, 2012 WL 4514138 (N.D. Cal. Oct. 1, 2012) (citing *Bill of Lading*, 681 F.3d at 1345).  The question is therefore settled.  In spite of a few district court decisions to the contrary, the controlling appellate case law is clear that the complaint itself is sufficient to satisfy the knowledge requirement of a claim for induced infringement.

**2.    The Better-Reasoned District Court Decisions Hold That Knowledge Provided By The Complaint is Sufficient To Support Post-Filing Induced Infringement**

Aside from *Bill of Lading*, several district court decisions reason from the statute that the knowledge provided by a complaint does support an induced infringement claim.  The leading district court case on point is *Walker Digital LLC*

*v. Facebook Inc*., 852 F. Supp. 2d 559, 565 (D. Del. 2012), which holds that, by alleging that the defendants "knew of the patents-in-suit at least as early as the filing of the initial complaint" and that "armed with this knowledge, have continued their allegedly infringing conduct," the patent owner had alleged the elements of the cause of action so long as the remedy is "limited to post-litigation conduct."  (As noted above, the FAC claims damages only prospectively for induced infringement and does *not* allege that the inducement cause of action should apply to conduct prior to MM's notice of WAG's patents.)  *Walker Digital* rejects the argument, made by MM here, that *Global-Tech* mandates a different result.  It notes that *Global-Tech* was not a case about pleading requirements.  In *Global-Tech*, the infringer indisputably learned of the patent well before the suit; the issue was whether it could be liable for inducement even before it learned of the patent.  The Supreme Court said no, but it did ***not*** say that such knowledge cannot be obtained from the suit itself, and conceptually there is no reason it cannot.  Accordingly, the court in *Walker Digital* found that the "allegations pass muster under Rule 8 and, therefore, satisfy the requirements of *Global–Tech*… [T]here is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct."  *Walker Digital*, 852 F. Supp. 2d at 565. *Accord Execware, LLC v. Staples, Inc*., Civ. Act. No. 11-836-LPS, 2012 WL 6138340-SRF (D.  Del. Dec. 10, 2012), *report and rec. adopted*, Civ. Act. No. 11-836-LPS-SRF, 2013 WL 171906 (D. Del. Jan. 16, 2013) (citing *Walker Digital,* 852 F. Supp. 2d at 565*)*; *SoftView LLC v. Apple Inc*., Civ. Act. No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("an accused infringer is on

22

notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit"); *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 573-74 (D. Del. 2012) (same); *British Telecomms. PLC v. Google Inc*., Civ. Act. No. 11-1249-LPS, Slip. Op. at ¶ 5 (D. Del. Sept. 20, 2012) (same); *Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*, Civ. No. 10-666-SLR, 2011 WL 941197 (D. Del. Mar. 16, 2011) ("all defendants will be deemed to have knowledge [of the patent] as of the date the complaint was filed").  These cases are strong authority that MM*'s* motion to dismiss the induced infringement claim should be denied.

In support of its position to the contrary, MM relies heavily on *Proxyconn Inc. v. Microsoft Corp*., No. SACV 11-1681 DOC (ANx), 2012 WL 1835680 (C.D. Cal. May 16, 2012), which reasoned that a defendant cannot be liable "for acts it did without knowledge."  MM Br. at 12.  But MM fails to note that the subsequent *Labyrinth* and *EON* decisions from the same district reached the opposite conclusion.  Nor does it acknowledge that the rationale for *Proxyconn'*s holding is satisfied by *Walker Digital* and *Execware*, which limit the cause of action for infringement to post-filing activity and thus do not expose the defendant to liability for acts done "without knowledge."  *Accord Trans Video Elecs., Ltd. v. Netflix, Inc*., Civ. Act. No. 12-1743-LPS, 2014 WL 900929, *3 (D. Del. Mar. 4, 2014), *report and rec. adopted*, Civ. Act. No. 12-1743-LPS, 2014 WL 1268680 (D. Del. Mar. 26, 2014) ("[t]o the extent Plaintiff intends to limit its allegations to the time period after it served the Complaint, sufficient knowledge of the patent's existence is provided by the Complaint's filing").

To the same effect is a line of cases from district courts in New York also holding that knowledge gained from the complaint is sufficient for inducement. Among these are *3D Sys., Inc. v. Formlabs, Inc*., No. 13 Civ. 7973, 2014 WL 1904365 (S.D.N.Y. May 12, 2014); *Smartwater, Ltd. v. Applied DNA Sciences, Inc*., No. 12-CV-5731 (JS) (AKT) 2013 WL 5440599, at *8 (E.D.N.Y. Sept. 27, 2013); and *Automated Transactions, L.L.C. v. First Niagara Financial Group, Inc*., No. 10-CV-0407 (A) (M), 2010 WL 5819060, at *6 (W.D.N.Y. Aug. 31, 2010)). What all these cases recognize is that once the complaint has been filed and served, the defendant is on notice of the patent and has the power to alter its conduct.  If it fails to do so, it then becomes liable for inducement with respect to its ongoing activities.  35 U.S.C. § 287(a).  Notice of the patents may be the notice that results from the filing of the lawsuit, so long as the remedy being sought is limited to post-filing activities, which it is here.

### 3. Even Cases That Require Pre-Suit Knowledge Permit The Addition Of Inducement Counts In An Amended Complaint

WAG filed and served its Complaint no later than April 16, 2014.  Thus, when the FAC was served, MM had been aware of WAG*'s* patents for at least six weeks.  As *Zond, Inc. v. Fujitsu Semiconductor Ltd*., Civ. Act. No. 13-11634-WGY, 2014 WL 69035, at *6 (D. Mass. Jan. 9, 2014), concludes, even if there were no ground to allege inducement in an initial complaint, nothing would "prevent a plaintiff from filing and then subsequently amending its filing were the defendant to continue to induce others to infringe."  That is what has occurred here.

24

*Rembrandt Social Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 882

(E.D. Va. 2013), reaches the same conclusion:

> [I]f a putative infringer continues to engage in indirect infringement of a patent after the filing of the suit, then a plaintiff may recover damages … [If such an initial complaint fails to plead knowledge adequately, the appropriate relief would be dismissal without prejudice.  The patentee could then file, as here, an amended complaint that alleges indirect infringement with notice of the patent in issue based on the filing of the original complaint.

Indeed, MM's own leading case, *Proxyconn*, acknowledges that when a

defendant continues to induce infringement, the patent-holder may use Fed. R. Civ.

P. 15(d) to allege post-suit facts and add a cause of action.  2012 WL 1835680, at

*6.  Although WAG was able to use Rule 15(a) and did not require Rule 15(d), the

reasoning applies to both rules.  Thus, the FAC complies fully with pleading

requirements, even as understood by MM's own authority.

## C. The FAC Properly Pleads Specific Intent

In addition to awareness of WAG's patent, the FAC properly pleads that

MM had the specific intent to induce others to infringe both the '141 patent and the

'011 patent.  The allegations of induced infringement are found in FAC ¶¶ 24-32

and in FAC ¶¶ 42 -46.  These allegations set out the claims of the patents whose

direct infringement is induced, and the acts of MM that induce such infringement.

The intent to induce infringement is clear: the FAC alleges, *inter alia*, that it is

*impossible* for users to use the MM websites without causing their players to

activate infringing player software.  FAC ¶¶ 24-25, 31-32, 43-44.  Thus, by making

their service available and encouraging users to view it, MM necessarily induces

25

users to infringe WAG's patents.  At least since the filing of the initial Complaint –
MM has been well aware that its service causes users to infringe both of WAG's
patents, Complaint, ¶¶ 33, 37, yet it has not ceased its infringing activity.  These
allegations are more than sufficient to state the element of specific intent.
Nonetheless, MM appears to contend that a plaintiff must make specific factual
allegations regarding the infringer's subjective intent.  Absent a confession in a
leaked email or other document, MM's standard would make induced infringement
impossible to allege.  Fortunately, that is not the law, and MM's own authority
does not so hold.

First, MM flatly misstates the holding of its main case, *DSU Med. Corp.*,
471 F.3d at 1306.  MM represents this case as holding that "to plead inducement a
plaintiff must show ***sufficient facts*** that 'the alleged infringer … possessed specific
intent to encourage another's infringement.'"  MM Br. at 13 (emphasis added by
MM).  But the words quoted from *DSU* (the internal quote set off here by single
quotation marks) are not related to what a plaintiff must do "to plead inducement."

In fact, *DSU* is not a case about pleading rules at all; it is about whether the
district court's jury instructions properly instructed the jury in the elements of
infringement.  *DSU* holds that ***at trial*** a plaintiff must show that the defendant
"knowingly induced infringement and possessed specific intent to encourage
another's infringement."  471 F.3d at 1306.  However, "[w]hile proof of intent is
necessary, direct evidence is not required; rather, circumstantial evidence may
suffice."  *Id.*  Further, after *DSU*, the Federal Circuit held that specific intent is
satisfied if an infringer "knew ***or should have known*** that its actions would induce

actual infringement." *Fujitsu Ltd. v. Netgear Inc*., 620 F.3d 1321, 1331-32 (Fed. Cir. 2010) (citing *DSU Med. Corp.*, 471 F.3d at 1304) (emphasis added).

Thus, *DSU* simply does not hold that, prior to discovery, a plaintiff must be able to make specific allegations of fact in its complaint showing that the defendant had a subjective specific intent to induce infringement.

MM*'s* next case, *Richmond v. Lumisol Electronics, supra*, is at least a pleadings case, but it too provides MM no assistance.  *Richmond* dismissed a complaint where the allegations were insufficient because "they fail to identify the induced party, to demonstrate specific intent by Defendants to induce infringement, and to show knowledge by Defendants that the third-party's acts would constitute infringement."  *Richmond*, 2014 WL 1405159, at *2.  The FAC specifically alleges all of these things.  *See* ¶¶ 45 (identifies users as the induced parties); 43 & 44 (specific intent by suggesting use and then requiring users to use infringing items); and 46 (knowledge that the users' acts constitute infringement).

Similarly, the allegations of the FAC are nothing like the bare-bones allegations found in cases like *Trans Video Electronics, Ltd. v. Netflix, Inc*., *supra*. There, the allegation was that the defendant provided unspecified instructions that induced infringement, but "did not give any hint as to how the customers' action are said to relate to the content of the method-at-issue… [T]he Complaint is silent even as to what it is that the customers are alleged to have actually done that is asserted to amount to the "use" of such a method."  *Trans Video*, 2014 WL 900929, at *4.  Here, by contrast, the FAC describes precisely how the customers are encouraged to act, what that action consists of (*i.e*., using infringing Players

27

and Player Software), and how the actions directly infringe the two patents. Thus, far from being "silent" as to the nature of the inducement, the FAC shouts it from the rooftops: every person who uses certain devices to access MM's video streams infringes; MM solicits them to do so, and provides streams in a format especially tailored for their devices; and MM then triggers the infringing devices to perform their infringement. Since April 2014, MM has known this and continues to instruct its customers in how to access those video streams. In this way, the FAC has "linked up" MM's instructions to its customers with "conduct plausibly asserted to amount to direct infringement." MM Br. at 14-15 (quoting *Trans Video*, 2014 WL 900929, at *4).

In sum, there is no merit whatsoever in MM's contentions that the FAC does not sufficiently allege induced infringement.

## POINT IV.   THE FAC SUFFICIENTLY PLEADS WILLFUL INFRINGEMENT

The FAC was a June 2, 2014 amendment of a complaint first filed on April 11, 2014. FAC ¶ 52 alleges willful infringement based on knowledge of Plaintiff's patents acquired at least as early as the filing of the suit or in the days shortly thereafter. The FAC alleges (FAC ¶¶ 26, 52) that such notice was conveyed to Defendants as a result of the filing of the Complaint on April 11 (which by statute constitutes such notice (35 U.S.C. § 287); service of the Complaint on April 16; and a demand letter dated April 11 (which included a copy of the Complaint, and which MM has acknowledged receiving), and alleges that the willful conduct is

28

continuing.  The Complaint and the demand letter gave reasonable notice of Plaintiff's patents and of the manner they were alleged to be infringed.  If true (and for the present purposes the allegations must be regarded as true), it is plausible, given that Plaintiff's patents are entitled to a presumption of validity under 35 U.S.C. § 282(a), that Defendants have been willfully infringing since they received such notices and have continued this conduct for months thereafter.

Furthermore, FAC ¶ 55 alleges that Plaintiff does not compete with Defendants, does not practice under the particular claims asserted against MM, and accordingly does not have an adequate preliminary injunction remedy against the alleged willful infringement.

Defendant's motion is not based on any insufficiency of the allegations that MM's infringement has been willful since it was notified of its infringement in April.  Rather, MM makes a legal argument, based on an asserted *per se* "rule" that a willful infringement claim based on knowledge acquired on filing of the action is simply barred unless the plaintiff also moves for a preliminary injunction – whether the failure to have so moved has anything to do with the merits or not.

The short answer to this contention is that there is no such *per se* rule.

MM's position purports to be based on the Federal Circuit's holding in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc).

*Seagate* was an en banc decision on a mandamus petition from a district court order to compel discovery of the defendant's trial counsel, concerning post-filing advice to the defendant that might be relevant to its alleged continuing willful infringement.  The court cited numerous difficulties with allowing

29

discovery to routinely extend to trial counsel in cases alleging willful infringement. The court's resolution began by modifying the substantive law of willful infringement – itself a landmark ruling – by holding that willful infringement requires a showing, by clear and convincing evidence, of infringing conduct, that if not actually intentional, rises to at least the level of reckless disregard for patent rights (the prior law imposed a lower negligence standard).  497 F.3d at 1371. Since conduct rising to the level of recklessness also ordinarily should entitle the plaintiff to injunctive relief, the *Seagate* opinion implies that failure to seek a preliminary injunction will often indicate that the level of culpable conduct involved may be insufficient to support a claim for willful infringement under the court's heightened standard.  *Seagate*, however, did not purport to address all facts and circumstances in advance or to promulgate a blanket rule of pleading such as that advocated by MM, that a preliminary injunction motion is ***always*** necessary.

The language of *Seagate* on which MM relies must be read in its entirety in order to appreciate what it does and does not say in its holding:

> [O]utweighing any benefit of extending waiver to trial counsel is the realization that ***in ordinary circumstances***, willfulness will depend on an infringer's prelitigation conduct.  It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement.  Fed. R. Civ. Pro. 8, 11(b).[1]  So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.  By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which ***generally*** provides an

---

[1]   The original complaint herein alleged willfulness, but only prospectively.  The FAC, as noted, alleges willfulness beginning in the April 2014 timeframe.

adequate remedy for combating post-filing willful infringement.  *See* 35 U.S.C. § 283; *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1350 (Fed. Cir. 2001).  A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.  Similarly, if a patentee attempts to secure injunctive relief but fails, *it is likely* the infringement did not rise to the level of recklessness.

We fully recognize that an accused infringer may avoid a preliminary injunction by showing only a substantial question as to invalidity, as opposed to the higher clear and convincing standard required to prevail on the merits.  *Amazon.com*, 239 F.3d at 1359 ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial.  The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself.").  However, this lessened showing simply accords with the requirement that recklessness must be shown to recover enhanced damages.  A substantial question about invalidity or infringement *is likely sufficient* not only to avoid a preliminary injunction, but also a charge of willfulness based on post-filing conduct.

We also recognize that in *some cases* a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced.  *In that event, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case*.

Because willful infringement *in the main* must find its basis in prelitigation conduct, communications of trial counsel have little, if any, relevance warranting their disclosure . . .

497 F.3d at 1374 (emphasis added).  Taken in its entirety, it can be understood that, having ratcheted up the standard for willfulness from a negligence to a recklessness standard, the court was saying that opinions of trial counsel, who are engaged only after an action commences, will be relevant only to post-filing willfulness.  Thus, if the defendant's post-filing conduct is not sufficient to warrant preliminary injunctive relief (which would cut off a willful infringement claim

31

before substantial additional damages accrued), it most likely would not rise to the level of recklessness, thereby obviating the need to inquire into the defendant's state of mind after the filing of the action, and obviating the need to take discovery of trial counsel.

Under *Seagate*, it is clear that a complaint for willful infringement must allege knowledge of the patents in question as a basis for asserting willful infringement, and at least a reckless level of disregard for what the patents cover. MM's motion does not question that these aspects are sufficiently pleaded.

Rather, MM asserts that a willful infringement claim is barred outright under *Seagate* unless the plaintiff has made a preliminary injunction motion – even if such a motion would be futile for reasons other than likelihood of success on the merits.

Plaintiff respectfully submits that, while *Seagate* addresses the substantive law for what constitutes willful infringement, the standards for what constitutes a proper pleading of willful infringement must still be based on *Twombly* and *Iqbal*. At the end of the day, the standard applicable under those Supreme Court decisions is a plausibility standard.

The substantive considerations set forth in *Seagate* imply that not moving for a preliminary injunction ***may*** be inconsistent with the assertion that the defendant's conduct is egregious to the extent required for substantive willfulness. But whether this is in fact so depends on the facts and circumstances and cannot simply be taken as given.

As the court in *Seagate* recognized in the passage quoted above, the unavailability of preliminary injunctive relief may solely concern factors ***other than*** likelihood of success on the merits.  ***In such a case, the failure of the plaintiff to have moved for a preliminary injunction does not make the allegation of willful infringement any less plausible***.  Under *Twombly* and *Iqbal*, if the allegations of willful infringement are sufficiently plausible on the merits (as they clearly are here), the pleading should be allowed.  Interposing an additional requirement of also moving for a preliminary injunction that is likely to be denied is adding a new pleading requirement on top of *Twombly* and *Iqbal* – which those authorities do not contemplate.  *Seagate*, which does not address pleading requirements at all, surely does not affect the Supreme Court's prior holding in *Twombly*, or suggest that a departure is necessary from the Court's later decision in *Iqbal*.  Where, as here, the complaint alleges facts under which willful infringement meeting the substantive requirements of *Seagate* is plausible, that should be the end of the pleading inquiry.

Numerous cases are in accord with the foregoing argument, and hold that *Seagate* does not alter the standards for pleading.  The courts in these cases have declined to adopt a *per se* rule requiring a preliminary injunction motion regardless of the circumstances.  For example, the case of *Englishtown, Inc. v. Rosetta Stone Inc.*, 962 F. Supp. 2d 355 (D. Mass. 2013) is directly on point.  Before the court was a motion to amend the complaint to add a claim of continued willful infringement based on post-filing conduct.  *Id.* at 358.  The plaintiff did not compete with the defendant and no longer practiced the patents there in suit, and it

did not move for a preliminary injunction.  The defendant took the position that MM takes herein, *i.e*., that such a willful infringement claim was untenable because the plaintiff had not moved for a preliminary injunction.  *Id*. at 359.

The court characterized as "dictum" the defendant's asserted interpretation that *Seagate* imposes a *per se* injunction rule.  *Id*. at 358.  In rejecting this argument – identical to MM's argument herein – the court permitted an amendment to add a claim for willful infringement.  Citing *Dataquill Ltd. v. High Tech Computer Corp*., 887 F. Supp. 2d 999 (S.D. Cal. 2011), the court declined under these circumstances to require the plaintiff to seek a preliminary injunction claim in order to assert a claim for willful infringement based on post-filing conduct because "requiring it to seek a preliminary injunction would be a waste of this Court's time and resources."  *Englishtown*, 962 F. Supp. 2d at 359.

The *Dataquill* decision, relied upon in *Englishtown*, exhaustively analyzed *Seagate* and concluded that the fact that the plaintiff had not sought a preliminary injunction was not a bar to a willful infringement claim and did not preclude such a claim in the case before it, where there were strong contentions of willful conduct but a showing of irreparable harm was unlikely.  *Dataquill Ltd*., 887 F. Supp. 2d at 1016-18.  The court stated:

> HTC [the defendant] relies on the Federal Circuit's language in *Seagate*. HTC argues that in *Seagate*, the Federal Circuit recognized that 'in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced. ***In that event***, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case.' *Seagate*, 497 F.3d at 1374 (emphasis added). HTC argues that this language implies that even though a patentee might

34

think that he will be denied a preliminary injunction, the patentee should still request the injunction, and only after the Court denies the injunction, should the Court determine whether the patentee may proceed on its willfulness claims.  However, the Court declines to read *Seagate* in such a narrow manner as to require all patentees seeking claims for post-filing willful infringement to file motions for preliminary injunctions in every situation no matter how frivolous they may be.

*Id.* at 1017 (citations omitted).  The court held that the plaintiff's claim for willful infringement was "not barred as a matter of law because it did not seek a preliminary injunction in this case."  *Id.*  For additional post-*Seagate* cases similarly permitting a claim for willful infringement despite the plaintiff having made no preliminary injunction motion, see *Trustees of Univ. of Penn. v. St. Jude Children's Research Hosp.*, 982 F. Supp. 2d 518, 529-30 (E.D. Pa. 2013); *Astrazeneca AB v. Apotex Corp.*, Nos. 01 Civ. 9351, M-21-81 (BSJ), 2010 WL 2541180 (S.D.N.Y. June 9, 2010); *Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc.*, No. 9:08-CV-171, 2009 WL 9091275 (E.D. Tex. Sept. 2, 2009); *St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.,* Civ. Act. No. 08-371-JJF-LFS, 2009 WL 163812, at *1 (D. Del. June 10, 2009); *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 592 F. Supp. 2d 1208, 1227 (N.D. Cal. 2008).

Defendant waits until the end of its discussion of the willful infringement allegation to come to grips with the factor that the parties here do not compete.  *See* MM Br. at 9.  First, MM incorrectly claims that this assertion "contradicts [Plaintiff's] prior position on this point.[2]

---

[2] MM erroneously claims that Plaintiff's allegations are "inconsistent."  Plaintiff alleges (FAC ¶ 12) that it "has actively practiced technology ***taught*** in the patents-in-suit, from [their development] to the present" and later (FAC ¶ 55) that it "does not currently practice ***the claims alleged herein to be infringed***"

35

MM then makes another argument that was specifically rejected by *Dataquill* – that Plaintiff could nevertheless seek "an injunction" – though the cases it cites for this proposition (MM Br. at 10, n. 9) concern **permanent** injunctions.  Each injunction case, of course, whether for a preliminary or permanent injunction, is decided on its own facts and circumstances.

MM cites one authority for the proposition that it "is of no consequence" that Plaintiff "may have had difficulty proving irreparable harm" – dropping another misleading footnote about the alleged (but nonexistent) "inconsistency" concerning Plaintiff's clear allegation that it does not compete with defendant. MM Br. at 10-11 & n. 10.

The sole authority that MM cites on this point is *McRO, Inc. v. Namco Bandai Games Am., Inc*., No. CV 12-10322 GW (FFMx), 2013 WL 8540289 (C.D.

---

(emphasis added).  MM's counsel should know better than to equate "teachings" with "claims."  It is elementary that "teachings" are the content of the written disclosure found in the patent specification (*e.g.*, *Discovision Assocs. v. Disc Mfg., Inc*., 25 F. Supp. 2d 301, 345 (D. Del. 1998), whereas the "claims" are "the numbered paragraphs at the end of a patent's specification that provide the "metes and bounds" of exclusive legal right conferred by the patent (*e.g.*, *Sule v. Kloehn Co., Ltd.*, 149 F. Supp. 2d 115, 119 (D.N.J. 2001)). Plaintiff's patents-in-suit "teach" a multitude of novel techniques – some of which Plaintiff actively practices.  These techniques, while ***disclosed*** in the patents-in-suit, are ***claimed*** in ***other*** patents in the "patent family" (*i.e.*, patents based on the same written disclosure and priority of filing) that are owned by Plaintiff.  However, the Defendants in this particular action are accused under particular ***claims*** that Plaintiff does not happen to practice at this time.  There is no "inconsistency" in Plaintiff's allegations.  Defendant also invokes a slur, stating at footnote 8 of its brief that "[i]t remains unclear whether Plaintiff is simply a nonpracticing entity."  A quick look at Plaintiff's web site (www.surfernetwork.com) puts this speculation to rest.  Plaintiff operates a real business.

Cal. July 11, 2013).  Plaintiff's position is that the *McRO* decision, which is squarely at odds with the other decisions cited above, is incorrect.  While *McRO* seeks to follow the literal language of *Seagate*, it fails to recognize that *Seagate* is a case about discovery and substantive law, not pleading standards.  *McRO*'s over-application of the dictum of *Seagate* results in a *per se* rule that is inconsistent with the Supreme Court's decisions in *Twombly* and *Iqbal*.  According to the reasoning in *McRO*, a complaint that plausibly alleges willful infringement in accordance with the recklessness standard of *Seagate* itself, must nevertheless be dismissed because it does not meet the alleged additional *procedural* requirement to have pointlessly pursued a preliminary injunction where the inability to establish irreparable harm is apparent.  But as reviewed at length above, *Seagate*, read in its entirely, does ***not*** hold that there is any such requirement; and *Twombly* and *Iqbal* are authoritative on the controlling legal standard for pleading willfulness.

*Trustees of Univ. of Penn.* further confirms that the established pleading principles, rather than a further heightened standard, apply:

> Courts applying *Seagate* in the motion to dismiss context have not treated it as establishing a heightened pleading standard, but have instead found it to be an explanation of the elements of the cause of action of willful infringement.  Under this reading, a plaintiff states a claim for willful infringement if it pleads sufficient factual matter, accepted as true, to allow us to "draw the reasonable inference that the defendant is liable."

982 F. Supp. 2d at 529-30.

*Affinity Labs* is another example that plausibility remains the proper pleading standard for willful infringement, post-*Seagate*.  As in the cases discussed above, the court in *Affinity Labs* ruled that "no *per se* rule exists" and that "a

37

willful infringement claim cannot be based on alleged conduct after the filing of the lawsuit if the patentee does not file for a preliminary injunction." The court, however, went on to explain:

> Defendants do not suggest that the facts alleged by Affinity Labs in its second amended complaint do not state a claim for willfulness; they merely contend that Affinity Labs cannot raise a willfulness claim based solely on post-filing conduct without first seeking a preliminary injunction. For the reasons discussed above, the court rejects this argument. Accepting the facts pled in Affinity Labs's complaint as true, the complaint states a claim to relief that is plausible on its face. Defendants' motion to dismiss for failure to state a claim is denied.

2009 WL 9091275, at *4.

The facts alleged in the present case must be taken as true for purposes of this motion. Those facts plausibly allege that Defendants' continuing infringement since being notified of Plaintiff's patents has been willful. Under *Englishtown*, *Dataquill*, *Trustees of Univ. of Penn.*, *Affinity Labs*, and the multitude of other cases discussed above, such a plausible allegation is sufficient support for a claim of willful infringement. Accordingly, MM's motion to dismiss Plaintiff's willful infringement claim must be denied.

## CONCLUSION

For the reasons stated herein, MM's motion to dismiss for failure to state claims on which relief may be granted should be denied. Alternatively, if the Court finds that any part of the motion has merit, WAG requests that it be given the right to replead in order to cure whatever defect in pleading is identified.

Dated: July 21, 2014                 Respectfully submitted,

                                       RONALD ABRAMSON
                                       DAVID G. LISTON
                                       LEWIS BAACH pllc
                                       The Chrysler Building
                                       405 Lexington Avenue
                                       New York, NY 10174

                                       By: s/ <u>Ronald Abramson</u>
                                             Ronald Abramson
                                       Tel: (212) 822-0163

                                       By: s/ <u>David G. Liston</u>
                                             David G. Liston
                                       Tel: (212) 822-0160
                                       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On this 21st day of July, 2014, I certify that I served upon counsel for Defendant Multi Media, LLC a copy of the foregoing Brief in Opposition to Defendant's Motion For Partial Dismissal via the Court's ECF filing system.

Dated: July 21, 2014

                                       s/ <u>Ronald Abramson</u>
                                       Ronald Abramson
                                       **LEWIS BAACH pllc**
                                       The Chrysler Building
                                       405 Lexington Avenue
                                       New York, NY 10174
                                       Tel: (212) 826-7001