

One Newark Center, 19th Floor
Newark, New Jersey 07102
Tel: 973.690.5400 Fax: 973.466.2761
www.rwmlegal.com

February 23, 2016

**Via ECF**

The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re**:  *WAG Acquisitions L.L.C. v. MultiMedia, LLC, et al.* (**14-cv-02340**);
*WAG Acquisitions L.L.C. v. WMM LLC, et al.* (**14-cv-02345**);
*WAG Acquisitions L.L.C. v. Flying Crocodile, et al.*, (**14-cv-02674**);
*WAG Acquisitions L.L.C. v. Gattyan Group S.a.r.l, et al.* (**14-cv-02832**);
*WAG Acquisitions L.L.C. v. FriendFinder Networks Inc., et al.* (**14-cv-03456**);
*WAG Acquisitions L.L.C. v. Vubeology, Inc., et al.* (**14-cv-04531**); and
*WAG Acquisitions L.L.C. v. WebPower, Inc., et al.* (**15-cv-03581**)

Dear Judge Hammer,

On behalf of Plaintiff WAG Acquisition, L.L.C. ("WAG") and the Defendants who have appeared in the above-captioned cases ("Defendants") (collectively, "the Parties"), we submit this revised, joint letter regarding the Parties' proposed Discovery Confidentiality Order (D.I. 78-1 in 14-cv-02340)[1] (hereafter, "DCO"), pursuant to the Court's Orders (*e.g.*, D.I. 80 and 82).

The parties have met and conferred regarding the disputed provisions, but are unable to resolve their differences in two sections of the DCO (¶¶ 6(h) and 21).[2] We are providing here a brief summary of the Parties' positions to frame the issues for Your Honor:

**Defendants' Position as to Confidential Material Access (DCO ¶ 6(h))**

Appendix S to the Local Rules is insufficient in view of the unique facts of this case. WAG has already admitted that its Executive Management consists of two individuals - William A. Grywalski and Harry Emerson. Both Messrs. Grywalski and Emerson are also involved with patent prosecution and in particular, are involved with prosecuting a pending application related to the patents-in-suit. WAG seeks to give these same two Executives access to Defendants' Confidential information in this litigation. The unique facts of this case require: 1) excluding Executives from the class of persons to whom Confidential Materials may be disclosed; and 2) triggering a prosecution bar for persons to whom Confidential Materials have been disclosed.

---

[1] Citations herein are to the Docket in 14-cv-02340, unless otherwise noted.
[2] The Parties agree to submit the requisite attorney declaration pursuant to Local Rule 5.3(b) once the disputed issues have been resolved.

**Hon. Michael A. Hammer, U.S.M.J.**
February 23, 2016
Page 2

Under WAG's version of the DCO, WAG's Executives will be able to view information that falls within the Appendix S definition of Confidential Material, which includes, *inter alia*, "competitively sensitive technical" information. *See* DCO ¶ 1 ("competitively sensitive technical, marketing, financial, sales or other confidential business information"). Those same Executives are actively making decisions about patent claims in a pending application that shares the same specification as the patents asserted in this litigation. Thus, the risk that WAG will use its knowledge of Defendants' Confidential information, to draft patent claims to encompass Defendants'—or a third party's—existing and future technology, is quite high. This is true even if such use is inadvertent. Defendants' concern was validated during the Parties' most-recent meet and confer, during which Defendants asked WAG if they would covenant not to sue Defendants on the pending patent application if it issued as a patent. <u>WAG vehemently refused</u>, signaling that it at least has not foreclosed the possibility of such future litigation.

WAG cannot—and respectfully should not be permitted to—have it both ways. Preventing WAG's Executives from viewing Confidential Materials, and holding that Confidential Materials trigger the prosecution bar, will best serve to protect Defendants (and any third parties) from such risk, while not prejudicing WAG's ability to prosecute its case or patent applications. Moreover, because "Confidential" Material encompasses Rule 26(c)(1)(G), WAG's Executives also potentially could review "trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Civ. P. 26(c)(1)(G). This is problematic (and prejudicial) because, *inter alia*, it creates the risk of inadvertent disclosure and improper use, *e.g.*, in the present litigation and against possible future targets, by decision-makers with a personal stake in the "economic destiny" of the suits.

Exclusion is the only sufficient means by which to protect Confidential information. It is inadequate for WAG's Executives to merely sign a non-disclosure agreement, because the promise to not disclose the information will not safeguard the information; Messrs. Grywalski and Emerson will remember such Confidential information outside of the litigation context, such as when they are engaged in activities related to the pending patent application. Courts have agreed that individuals in these circumstances should be precluded from viewing Confidential information. *See Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*, 237 F.R.D. 405, 410–11 (N.D. Ill. 2006) ("manifestly impossible" for an executive "to perform the mental gymnastics of putting the information out of his consciousness and making competitive decisions independent of that information") (internal citations omitted);[3] *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 501 (W.D. Va. 2014) (same); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, No. 07-346, 2008 U.S. Dist. LEXIS 107096, at *24 (E.D. Tex. Mar. 14, 2008) ("Defendants'

---

[3] For this reason too, WAG's retreat to ¶ 5 of the DCO (information learned in this lawsuit shall be used "solely" for this action) is unavailing.

**Hon. Michael A. Hammer, U.S.M.J.**
February 23, 2016
Page 3

confidential information could be of value to an entity such as Sales Tech, whose business model hinges on the ability to acquire intellectual property and enforce it against other entities ….").

Moreover, there is no compelling reason for WAG's Executives to review Confidential Materials as these are set forth in Appendix S. Instead, such information can be presented by WAG's counsel to its Executives, thus permitting the Executives to make informed and necessary litigation decisions. WAG can "develop [its] strategy using litigation counsel and outside experts to review information marked confidential . . . and present it in a non-confidential manner to the client for decision-making purposes." *McAirlaids*, 299 F.R.D. at 501. Excluding WAG's Executives from reviewing Confidential Materials will not prejudice WAG in its prosecution of this case, or its patent application. Defendants' proposal averts the significant risk that Confidential Materials of Defendants, or an unwitting third party, are improperly disclosed.

WAG misapprehends the thrust of the relevant case law, which permits disclosures to responsible executives, but requires an individual analysis of those persons' roles in litigation and prosecution. Exclusion of individuals is proper where access to such materials would create an unacceptable risk of inadvertent disclosure. *See McAirlaids*, 299 F.R.D. at 501 ("McAirlaids asks the Court to allow disclosure of Kimberly-Clark's confidential information directly to its competitive decision-makers, including its president, owner and patent-holder, and chief operating officer. McAirlaids' proposal would create exactly the unacceptable opportunity for inadvertent disclosure warned against in *U.S. Steel*."); *Autotech Techs.*, 237 F.R.D. at 408 ("proper analysis requires a careful and comprehensive inquiry into in-house counsel's actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor that enhances the risk of inadvertent disclosure.").

### Defendants' Position as to triggering the Prosecution Bar (DCO ¶ 21)

"Confidential" Material should trigger the prosecution bar set forth in ¶ 21 of the DCO. WAG has a pending patent application in the same family as the patents-in-suit. Under the guideposts provided by the Federal Circuit in the *Deutsche* decision, the role WAG's Executives play in that prosecution favors triggering the prosecution bar upon review of Confidential Materials, which under Appendix S includes "competitively sensitive technical" information. WAG's Executives "mak[e] strategic decisions on the type and scope of patent protection," such that there is a high risk of inadvertent disclosure. *In re Deutsche Bank Trust Company Americas*, 605 F.3d 1373, 1378–80 (Fed. Cir. 2010).

WAG's Document Requests seek technical information that falls within the Confidential Materials category, including, *inter alia*, "all documents concerning noninfringing alternatives to provide the functionality of the systems and methods claimed in the Patents-in-Suit"; and "all

documents referring or relating to any technical advantages, benefits, needs, or features of the services of the Accused Domains or the Servers including, but not limited to documents concerning solicitations, proposals, advertising, marketing, or promotion of the Accused Domains related to such technical advantages, features, needs, or benefits." *E.g.*, Plaintiff's First Set of Requests for Production of Documents (Nos. 1–38) to Defendant Multi Media, LLC. Such information should trigger the prosecution bar in order to safeguard Defendants' (and third parties') Confidential Material. As pointed out, when Defendants offered to drop the prosecution bar if WAG stipulated to a covenant not to sue on the pending patent application, WAG refused.

Thus, there is a real and substantial risk that WAG could potentially use Confidential Material in a new or pending patent application. Courts have acknowledged the seriousness of these situations and authorized prosecution bars in such instances. *See, e.g.*, *Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, No. 89-484, 1990 U.S. Dist. LEXIS 14075, at *7 (D. Del. Oct. 12, 1990) ("[T]he risk is high that [in-house technical] personnel would be unable to separate any applications or methods gained from review of samples in this case from those they may develop in the future from their own ideas."); *ST Sales*, 2008 U.S. Dist. LEXIS 107096, at *20 ("Courts have continuously determined that attempting to compartmentalize knowledge is an exercise in futility."); *Supernus Pharm., Inc. v. Actavis, Inc.*, No. 13-4740, D.I. 57 (D.N.J. Jan. 10, 2014) (noting appropriateness of prosecution bar "after evidence was presented that a specific attorney acted as plaintiff's outside litigation counsel and patent prosecution counsel").

### **WAG's Position**

Despite the Court's February 16, 2016 Order (*e.g.*, D.I. 80 in 02:14-cv-02340), Defendants have neither moved from their position nor provided any explanation of what they believe makes this case so different from any others that the Court's standard two-level Discovery Confidentiality Order ("Appendix S") would not be adequate in this case. Plaintiff believes that Appendix S, as written, reflects a proper balance between protecting the parties' valuable information while avoiding unduly harsh and burdensome restrictions. Defendants have not changed their position at all. Therefore, the authorities to which Plaintiff cites in the parties' prior joint letter with regard to the balancing reflected in Appendix S (*e.g.*, D.I. 78 in 02:14-cv-02340), remain equally pertinent here.

Of course, each case has its particular circumstances. In view of those, Plaintiff has accepted many of Defendants' proposed additions to Appendix S. For example, Plaintiff has agreed to provide enhanced protection for Source Code, by establishing a third (higher) level of protection for the most critical technical information and to provide that this information can only be accessed at Defendants' counsels' offices on computers disconnected from any network. Plaintiff has also agreed to include a "patent prosecution bar," based on the principle that an attorney who has reviewed an accused infringer's highly confidential technical information should

**Hon. Michael A. Hammer, U.S.M.J.**
February 23, 2016
Page 5

be excluded for some time from drafting patents that could later be used against the accused infringer.

The remaining two issues concern (1) whether, contrary to Appendix S, access to *all* designated material (at *any* level, including the lowest) must be limited to attorneys only; and (2) the "trigger" for the prosecution bar – whether the prosecution bar should be broadly triggered by any confidential information, even business information in the lowest (CONFIDENTIAL) category, or whether a more tailored approach (as Plaintiff advocates) is appropriate.

Defendants' intransigence as to these two remaining points is surprising. Plaintiff believes that both points go far beyond what is necessary to protect Defendants' interests, and would be unduly burdensome for the Plaintiff.

### ¶ 6(h) - pertaining to disclosure of Confidential Material to Executives

Defendants continue to take the position that all material designated as CONFIDENTIAL should effectively be treated as "attorneys' eyes only" material and kept from being disclosed, or discussed, with Plaintiff's executives. There is no basis for that position and it is in direct contrast to Appendix S, which allows access to CONFIDENTIAL material to a party's "executives who are required to participate in decisions with reference to this lawsuit." Defendants' position would in effect make Plaintiff a spectator to its own lawsuit.

### ¶ 21 - pertaining to Prosecution Bar as to Confidential Material

Appendix S does not include a patent prosecution bar. Plaintiff is nevertheless willing to accommodate Defendants' concerns and add a patent prosecution bar, but only if the triggering of the bar is appropriately tailored to the disclosure of information that could be relevant to the prosecution of Plaintiff's patents.

Defendants' insistence on triggering the bar based on the disclosure of *any* CONFIDENTIAL material is an overreach. This could prevent a person who reviews mere CONFIDENTIAL material, such as a business plan, from participating in the prosecution of a patent in which his or her participation is important. That is a draconian restriction. If a Defendant, in good faith, believes that the disclosure or use of any information is "highly likely to cause significant harm" to it, then, by the already agreed terms of the DCO, that Defendant can solve this problem by designating that information at the higher level of "ATTORNEYS' EYES ONLY."

Defendants' proposed lowering of this bar to broadly cover any and all CONFIDENTIAL information goes beyond what is necessary to protect their interests and unduly burdens the Plaintiff. The Federal Circuit has already spoken to this point in the *Deutsche Bank* case ("financial data and other sensitive business information, even if deemed confidential, would not normally be

**Hon. Michael A. Hammer, U.S.M.J.**
February 23, 2016
Page 6

relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar"). Plaintiff previously provided the pertinent authorities and page cites in the parties' prior joint letter.

\* \* \* \* \*

The Parties respectfully request the opportunity to submit formal briefing on these discrete topics if the Court requires it. The Parties also request a hearing to address these disputed issues at the Court's convenience. We appreciate the Court's courtesies and consideration.

Respectfully,

s/ Justin T. Quinn
Justin T. Quinn

cc:   All counsel of record (*via* ECF)