**Lewis | Baach pllc**
**Kaufmann Middlemiss**
THE NEW YORK OFFICE OF LEWIS BAACH PLLC

July 28, 2016

**VIA ECF**

The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re**:  *WAG Acquisition, L.L.C. v. MultiMedia, LLC, et al.* **(14-cv-02340)**;
*WAG Acquisition, L.L.C. v. WMM LLC, et al.* **(14-cv-02345)**;
*WAG Acquisition, L.L.C. v. Flying Crocodile, et al.* **(14-cv-02674)**;
*WAG Acquisition, L.L.C. v. Gattyan Group S.a.r.l, et al.* **(14-cv-02832)**;
*WAG Acquisition, L.L.C. v. FriendFinder Networks Inc., et al.* **(14-cv-03456)**;
*WAG Acquisition, L.L.C. v. Vubeology, Inc., et al.* **(14-cv-04531)**; and
*WAG Acquisition, L.L.C. v. WebPower, Inc., et al.* **(15-cv-03581)**

**Plaintiff's Request to Limit Number of Asserted Prior Art References**

Dear Judge Hammer:

Pursuant to the Court's Text Order of July 15, 2016 (Dkt. No. 101), the parties have continued to meet and confer, but have been unable to reach agreement. The parties outline their positions below.

**Plaintiff's Position**

WAG has offered a substantial further reduction of the patent claims it is asserting in this case, and has offered to accept Defendants' own formulation of how they would reduce their prior art references. Defendants are conditioning their prior art reference proposal on the demand that WAG must *further* reduce its number of asserted claims, thereby eviscerating its case. Thus, there is unfortunately no agreement. A copy of the email chain reflecting the parties' exchange of positions is attached hereto as Exhibit A.



WAG's previous reduction in asserted claims, and its proposed further reduction in claims, are both well within any norms that have been cited by either side for the number of claims that may be asserted prior to a *Markman* claim construction ruling. WAG can make no further reduction in its asserted claims at this early stage and, as will be addressed, should not be required to do so.

The fact that Defendants are unwilling to accept their own proposal as to prior art references reflects inexplicable intransigence in WAG's view. WAG asks the Court to accept WAG's proposal as to the reduction in asserted claims that it is prepared to make, and to impose an appropriate limit on the number of Defendants' prior art references asserted herein, using Defendants' own proposed numbers for those references.

**Asserted Claims**

These cases started with four patents having a total of 71 claims. In January, at an early stage of this case, Defendants aggressively pursued an application to the Court to require WAG to cut back the number of these claims. Although the Local Rules do not limit the number of asserted claims, WAG voluntarily limited the claims, to a maximum of 21 per case and 11 per patent, for a total of 24 claims across all seven cases.

These numbers were quite reasonable. Indeed, they were not objected to until WAG made the present application to limit Defendants' prior art references. Nevertheless, in order to facilitate possible agreement and further streamline the proceedings, WAG has now proposed a further reduction in claims to the following:

| Deft\Patent | '141 | '011 | '611 | '839 | Tot. |
|---|---|---|---|---|---|
| Multi Media | 10,14,15,17,21,24 (6) | 1,4 (2) | | | 8 |
| Data Conversions | 10,14,15,18,20,24 (6) | 1,4 (2) | | | 8 |
| Flying Croc. | 5,8,14,15,17,21,24,28 (8) | 1,4 (2) | 1,3,8,9,15 (5) | 2,5 (2) | 17 |
| Gattyan | 5,8,14,15,17,21,24,28 (8) | 1,4 (2) | 1,3,8,9,15 (5) | 2,5 (2) | 17 |
| Friendfinder | 10,14,15,17,21,24 (6) | 1,4 (2) | 1,3,8,9,15 (5) | 2,5 (2) | 15 |
| Vubeology | 10,14,15,18,20,24 (6) | 1,4 (2) | | | 8 |
| Webpower | 10,14,15,17,21,24 (6) | 1,4 (2) | 1,3,8,9,15 (5) | 2,5 (2) | 15 |



The foregoing reflects a total of 19 claims across all seven cases, with a maximum of 17 claims per case, and as few as two claims per patent.

**Prior Art References**

WAG has offered to accept the following limitations of prior art references:

- Patents to be grouped in two "Groups"
    - "Group 1" – the '141 and '011 patents
    - "Group 2" – the '611 and '839 patents
- No more than 35 references per patent group.
- No more than 40 unique references total per case.
- No case may rely on, or incorporate by reference, any additional prior art references from another case.

The substance of the foregoing is copied from Defendants' own offer of Tuesday, July 26, except insofar as Defendants' offer was tied to an even further reduction of WAG's asserted claims (to which WAG cannot agree).

**Reservations**

WAG seeks to reserve, in accordance with applicable caselaw, the right to seek leave to add additional claims upon a showing that the additional claims present unique issues as a result of future developments, such as the Court's claim constructions or subsequent validity rulings.

Defendants seek to reserve the right to amend invalidity contentions for good cause and consistent with Local Patent Rule 3.7.

WAG is agreeable to both reservations; Defendants, by contrast, will only accept their own reservation.

**Status of Discussions**

WAG has offered the claim and prior art limitations set out above. Defendants rejected this offer on the basis of demanding yet a further claim reduction, to a total of not more than four claims per patent and a maximum of 12



claims in any case – which WAG considers a completely unworkable number that would deprive it of substantive rights.

Furthermore, WAG asked Defendants for their best and final proposal as to the number of prior art references they would agree to if required to accept WAG's proposed set of claims. Defendants have failed to respond to WAG's specific request that they provide this proposal.

**Propriety of WAG's Claim Selection**

The number of claims in WAG's proposal is within all applicable norms for limitations imposed prior to a *Markman* ruling and completion of discovery. In the parties' prior joint letter on June 23, and during argument on July 15, WAG relied in part on the Federal Circuit Advisory Council's model order and the Eastern District of Texas' standing order (the "Example Orders"), which provide for limitations of 10 claims per patent and 32 claims total. WAG's proposal has a maximum of 8 claims per patent and 17 claims total per case – entirely within these limits.

WAG has asked Defendants to cite a single case where a Court, prior to both a *Markman* claim construction order and completion of fact discovery, has ordered a plaintiff to reduce its number of asserted claims to the extreme low level 12 in total demanded herein by the Defendants. Defendants have not cited any such case, and WAG is aware of no such case anywhere in the country.

Moreover, it would be improper for the Court to *require* WAG to further limit its claims to the extent demanded by Defendants, under the present circumstances and current phase of these cases. Requiring a patent plaintiff to elect claims violates due process if a non-elected claim presents a unique legal issue and the patent owner objects, in the district court, to the deprivation of its right to adjudication of that issue. *Nuance Communications, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1376 (Fed. Cir. 2016); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011); *Gentherm Canada, Ltd v. IGB Auto., Ltd*, No. 13-11536, 2016 WL 1170801, at *2 (E.D. Mich. Mar. 25, 2016).



The patent claims that WAG is proposing to assert are each unique in their own right. The independent claims in this set are mostly differentiated by each having a different set of limitations, which could lead to different results as to both infringement and validity, and could therefore be crucial to enforcing WAG's rights. The remaining independent claims reflect the same technical features, but are expressed alternatively as claims for "methods," "systems," or software recorded on computer media. These latter claims differ as to, *e.g.*, who may be the infringer, and thus affect issues of direct, induced, or contributory infringement. Requiring WAG to further limit its claims at this juncture would deprive WAG of valid infringement claims against certain defendants and/or accused instrumentalities, and therefore put WAG in the position of forfeiting valuable property rights. Defendants have not contested the uniqueness of the claims, and in fact have argued on the very basis of that differentiation among claims for an abnormal expansion of the number of permitted references. WAG asserts that being required to reduce its claims further in this case would be unworkable, and is prepared to demonstrate this to the Court, claim-by-claim, should it be necessary.

In sum, WAG submits that there is no legal basis to require WAG at this stage of the matter to further reduce the claims it is asserting.

A corollary of the foregoing is WAG's proper reservation of its right to reinstate claims later on a showing of good cause if circumstances so require. *See, e.g.*, *Certusview Techs., LLC v. S&N Locating Servs., LLC*, 2014 U.S. Dist. LEXIS 141013 (E.D. Va. Sept. 30, 2014) at *10 (post-*Markman* decision), (*citing In re Katz Call Processing Litigation*, 639 F.3d 1303, 1312 (Fed. Cir. 2011)). This caselaw is clear on this right and WAG cited the *Katz* authority in writing to Defendants, who have nevertheless persisted in contesting the propriety of this reservation. Defendants' opposition to this reservation is unreasonable, and contrary to their own desire for a corresponding reservation in their favor.

**Number of Prior Art References**

WAG need not argue this issue any further insofar as it has said it would accept Defendants' proposal set forth above of 35 references per "Group" and 40



total per case.[1] Although this is effectively *triple* the norm per patent, and Defendants ultimately refused to adopt *their own* proposal, conditioning it on further reduction in WAG's claims, WAG remains willing to accept this formula.

Defendants will say they have moved in these discussions, but merely backing off from a preposterous opening position in which Defendants asserted as many as 613 references, is not enough. It is easy initially to come down from an overly inflated starting position, but if that still leaves the party in question at a substantial multiple of the norm, the movement clearly was not sufficient.

Accordingly, WAG requests an order limiting the prior art references in Defendants' invalidity contentions to 35 references for each of the two specified "Groups" and 40 unique references total per case, with the Defendants not to rely on, or incorporate by reference, any additional prior art references from one case into another. WAG will limit its claims as stated above (no more than 8 claims per patent and 17 per case). Both sides would reserve their respective rights as to subsequent developments, as stated above, to assert additional claims or prior art references, for good cause.

---

[1] Defendants have argued against limitations on prior art prior to a *Markman* ruling on the basis that there is no express limit on prior art references in the Local Patent Rules. This however did not faze the Defendants when they argued for limitations on WAG's asserted claims in January, which are similarly not expressly limited by the Local Patent Rules. As with the imbalance on the reservation of rights, Defendants have taken a one-sided approach to this issue.



**Defendants' Position**

This issue is critically important to Defendants.  In any patent litigation, a defendant relies on prior art as part of its 35 U.S.C. § 102 (anticipation) and § 103 (obviousness) defenses, pursuant to 35 U.S.C. § 282(b).  A forced reduction of prior art – at this early stage – provides WAG with an unfair advantage not contemplated by precedent or the Local Patent Rules, and prejudices Defendants.  In fact, the Local Patent Rules and the Joint Discovery Plan (negotiated in January) require WAG to respond to Defendants' invalidity contentions without any reduction of prior art.

Even so, after WAG decreased its claims to 24 in its infringement contentions in March, Defendants in June reduced their prior art references from over 600 to approximately 45-50.  And then as a sign of further good faith, and prior to the meet and confer, the Flying Crocodile and Vubeology defendants limited their references from over 90 per patent to 40-50 per patent to align with the other defendants.  Thus, **Defendants have already limited or reduced their references twice in this case** and should not be required to engage in a third reduction at such an early stage when no judicial precedent requires them to do so.

At the meet and confers, the parties exchanged several offers, but have reached an impasse.  The following table summarizes the Parties' closest positions.

| **Defendants' Offer** | **WAG's Offer** |
|---|---|
| • Prior Art References<br>　○ 35 references per Patent Group[2] and no more than 40 unique references total per case.<br><br>• Claim Reduction<br>　○ MultiMedia: reduce from 9 to 6 ('141 patent: 4; and '011 patent: 2)<br><br>　○ WMM: reduce from 9 to 6 ('141 patent: 4; and '011 patent: 2) | • Prior Art References<br>　○ 35 references per Patent Group and no more than 40 unique references total per case.<br><br>• Claim Reduction<br>　○ MultiMedia: reduce from 9 to 8 ('141 patent: 6; and '011 patent: 2)<br><br>　○ WMM: reduce from 9 to 8 ('141 patent: 6; and '011 patent: 2) |

---

[2] The "patent groups" are divided as follows: Patent Group 1 = the '141 and the '011; and Patent Group 2 = the '611 and the '839.

| | |
|---|---|
| o  FF/SR: reduce from 17 to 12 ('141 patent: 4; '011 patent: 2; '611 patent: 4; and '839 patent: 2) | o  FF/SR: reduce from 17 to 15 ('141 patent: 6; '011 patent: 2; '611 patent: 5; and '839 patent: 2) |
| o  WebPower: reduce from 17 to 12 ('141 patent: 4; '011 patent: 2; '611 patent: 4; and '839 patent: 2) | o  WebPower: reduce from 17 to 15 ('141 patent: 6; '011 patent: 2; '611 patent: 5; and '839 patent: 2) |
| o  Flying Crocodile: reduce from 21 to 12 ('141 patent: 4; '011 patent: 2; '611 patent: 4; and '839 patent: 2) | o  Flying Crocodile: reduce from 21 to 17 ('141 patent: 8; '011 patent: 2; '611 patent: 5; and '839 patent: 2) |
| o  Gattyan: reduce from 21 to 12 ('141 patent: 4; '011 patent: 2; '611 patent: 4; and '839 patent: 2) | o  Gattyan: reduce from 21 to 17 ('141 patent: 8; '011 patent: 2; '611 patent: 5; and '839 patent: 2) |
| o  Vubeology: reduce from 13 to 6 ('141 patent: 4; and '011 patent: 2) | o  Vubeology: reduce from 13 to 8 ('141 patent: 6; and '011 patent: 2) |
| • WAG **cannot** reserve the right to bring back claims. | • WAG reserves the right to bring back claims. |
| • No incorporation of another defendant's references.[3] | • No incorporation of another defendant's references. |

Defendants' reduction of prior art references are well below any limits outlined by courts. WAG and Defendants reached agreement on this number, but were unable to do the same for the reduction of asserted claims, and WAG's reservation of rights to later institute any dropped claims. The deadlock is because WAG continues to miss the point that the **number and scope of claims drives the**

---

[3] Defendants' offer is conditioned on WAG identifying the claims it is dropping, because this will impact which references Defendants proceed with at this stage.



**number of claim terms needing construction**. Courts recognize that efficiencies are gained from decreasing asserted claims – not prior art references. Several of WAG's asserted claims are lengthy and contain numerous elements and limitations. It is foreseeable that many of these claim terms will need to be construed, as the Court recently remarked: "21 claims is a lot for a court to digest with any alacrity in a Markman hearing."

Defendants believe their offer is reasonable in light of precedent and their actions taken to date. For the following reasons, Defendants respectfully request that the Court enter an order adopting in full Defendants' offer (*as identified in Defendants' table above*).

> A. **Further limiting Defendants' prior art references before claim construction is prejudicial**

This case is at an early stage, and the parties have not yet conducted claim construction. Many courts thus reject the notion of limiting prior art references as premature, and because of potential prejudice to a defendant's ability to develop its defenses. *See Krausz Indus. v. Smith-Blair, Inc.*, No. 12-570, 2016 U.S. Dist. LEXIS 52293, at *14 (E.D.N.C. Apr. 19, 2016) (references should not be limited before trial or dispositive motions); *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-3792, 2012 U.S. Dist. LEXIS 117370, at *5 (N.D. Cal. Aug. 20, 2012) (Grewal, M.J.) (premature to limit prior art references before "expert discovery and dispositive motion practice"); *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 2841, at *7 (D. Del. Jan. 6, 2015).

Specifically, a claim construction decision will inform the meaning of the claims and thus, the relevance of Defendants' prior art references. Requiring Defendants to drop references now without that information prejudices Defendants, because those foregone references could turn out to be viable once claim construction is conducted. *See MyMedicalRecords, Inc. v. Walgreen Co.*, No. 13-631, 2014 U.S. Dist. LEXIS 88289, at *3 (C.D. Cal. Jun. 27, 2014) (holding claim construction process will influence defendant's invalidity theories,



and thus it would be prejudicial for defendants to reduce the prior art references before then).[4]

### B. Defendants have made a reasonable offer of compromise – WAG has not

Despite no court requiring defendants to reduce prior art references at such an early stage, Defendants have offered to make a **third prior art reduction** to 35 per Patent Group, and no more than 40 references total. This provides WAG with significant efficiencies. Moreover, given that Defendants' prior art references substantially overlap, WAG's complaint of excess work is unavailing. As a further good faith attempt to resolve this gridlock, Defendants offered to forego their incorporation by reference of another Defendant's prior art references – further lessening WAG's burden.

As a benchmark for the Court, Defendants' reduction of prior art is well below any limits placed in other cases:

- **15 prior art references per independent claim.** *Unwired Planet LLC v. Google Inc.*, No. 3:12-CV-0504-MMD (VPC), 2013 U.S. Dist. LEXIS 146766, at *15 (D. Nev. Oct. 10, 2013).

- **27 references per independent claim.** *MyMedicalRecords*, 2014 U.S. Dist. LEXIS 88289, at *5-6 (C.D. Cal. June 27, 2014).

- **No limit on prior art references**. *Intellectual Ventures*, 2015 U.S. Dist. LEXIS 2841, at *7 (D. Del. Jan. 6, 2015).

Extrapolating from these cases to WAG's assertion of at least 11 independent claims (claims 1, 10, 19, and 24 of the '141 Patent; claim 1 of the '011 Patent; and claims 1, 3, 8, 9, 14, and 15 from the '611 Patent), Defendants would be entitled – just for the independent claims – to between **165** (15×11) **to 297** (27×11) **prior art references**. Defendants' proposed prior art reference number is reasonable.

---

[4] Defendants reserve the right to seek leave from the Court to amend its invalidity contentions after a claim construction decision.



This is further apparent from the face of the asserted patents. For example, during the prosecution of the '839 Patent, WAG cited approximately 150 references[5] to the Patent Office as potentially material to the pending claims. But now, after choosing to sue in this forum, with its Local Patent Rules, and agreeing to the Joint Discovery Plan, WAG cries foul when faced with responding to only a fraction of that many references.[6]

WAG's proposal is not acceptable to the Defendants: WAG is nominally reducing its asserted claims, while reserving the right to reinstitute claims at a later date. WAG reasons that it wants to see how claim construction plays out, and due process requires it be allowed to reinstitute claims later. WAG's proposition is unavailing.

First, WAG advised the Court and Defendants in January (and then again at the meet and confer last week) that many of the claims have the same or very similar scope:

> **For every claim**, there's actually three – three different variations: a method, a system, and recorded software. **And they're substantiate- -- they're substantially the same**.

---

[5] Several of the references in Defendants' contentions were included in the 150 references WAG cited to the examiner. Thus, only a limited number of prior art references are potentially new to WAG.

[6] In context, this reduced number of references is reasonable even for a single patent. This Court recently granted an opposed request for a one-week extension to respond to invalidity contentions in which 90 prior art references were asserted against two patents. *See Dexcel Pharma Techs. Ltd., et al. v. Dr. Reddy's Labs Ltd., et al.*, Civil Action No. 15-8042 (SDW) (LDW) (D.N.J. April 22, 2016), attached at Exhibit B. The plaintiff in *Dexcel* did not raise a dispute as to the number of prior art references asserted, but rather, requested an extension of time to respond to the 90 prior art references due to religious observance. Here, Defendants offered WAG an extension of time to respond to Defendants' invalidity contentions, which WAG has had since June 9, 2016, but WAG declined, in lieu of raising the issue to the Court.



Dkt. No. 77, at 22:2–7 (emphasis added). For instance, the '611 Patent has six independent claims and the '141 Patent has four independent claims with "substantially the same" scope, according to WAG. Thus, WAG's argument about claim construction and due process is undermined given the admittedly overlapping claims.

Second, WAG's reservation of rights to reinstitute claims makes its offer illusory, and is incongruent with its duty to litigate a case efficiently. The Parties should not conduct claim construction and fact discovery only to see WAG a year or so later reinstitute the same claims it dropped now, causing the Parties to redo the entire process.[7]

Third, the Court has expressed concern at this stage with the number of asserted claims, because this will impact the number of terms to be construed by the Court. *See* Jul. 15, 2016 Tr., at 68:13-20; 69:22-70:2 ("21 claims is a lot for a court to digest with any alacrity in a Markman hearing" and that "although the plaintiff did reduce the number of claims to 24, **I still regard that, though, in the grand scheme of things as a significant number of claims**.") (emphasis added); *see also DCG Sys.*, 2012 U.S. Dist. LEXIS 117370, at *5 ("While a reduction in the number of claims provides obvious efficiencies to decide infringement and invalidity issues, **similar efficiencies are not created by reducing the number of prior art references**.") (emphasis added). Thus, to the extent the Court adopts Defendants' offer, they cannot select the specific 35 references per Patent Group until WAG identifies the actual claims it is dropping. This is so because the specific claim(s) dropped by WAG will impact which references Defendants proceed with at this stage, *i.e.*, certain references apply to certain claims.[8]

### C. Courts have rejected the "Model Order"

Citing no legal support for its application, WAG argues that it should be entitled to relief regarding reduction of prior art references because WAG is

---

[7] If a court permitted such an action, Defendants should have the opportunity to redo invalidity contentions regarding the new claims.

[8] The selection of references is also impacted by the priority date of the claims, which is contested by Defendants. If the claims are determined to have a later date, then Defendants may select other prior art references.



asserting 24 claims in its infringement contentions from the approximately 60 claims in its patents. WAG, however, relies on an unadopted and non-precedential Model Order of the Federal Circuit Bar Association ("Model Order"). That Model Order received significant criticism, and was removed shortly after it was posted. *See, e.g.*, *Altera Corp. v. PACT XPP Techs., AG*, No. 14-cv-02868-JD, 2015 U.S. Dist. LEXIS 80703, at *8 n.2 (N.D. Cal. June 19, 2015) (The court did not impose a 12 reference limit because "[t]he Federal Circuit Advisory Council's Model Order was previously posted on the Federal Circuit's website, but was later taken down to make clear that **neither the court nor the advisory council "sponsor[s] or endorse[s]" the order.**") (emphasis added); *see also Krausz Indus.*, 2016 U.S. Dist. LEXIS 52293, at *12 (Motion to limit prior art references and combination was denied because the Model Order "has not been endorsed by the Federal Circuit," and that limitations on prior art references is proper only in more advanced stages of litigation.).

WAG also ignores that in response to its 24 asserted claims, Defendants voluntarily reduced their prior art references from over 600 to approximately 45-50 and then again prior to the meet and confer. Thus, Defendants have already significantly reduced their cited prior art.

### D. WAG's responses to invalidity contentions are necessary for claim construction

Despite the foregoing implications, WAG believes that the Parties can proceed to claim construction without WAG's responses to Defendants' invalidity contentions – a **requirement** of L. Pat. R. 3.4A.[9] WAG has provided no basis for its assertion.[10]

---

[9] This requirement, added as part of the 2011 Amendments, "mandates that the patent holder respond in kind to invalidity contentions [in order to] provide parity between the parties and serve to focus the invalidity challenge." Report of the Local Patent Rules Committee.

[10] WAG admitted during a meet and confer that despite already having over a month, it has not started substantially drafting its responses to the invalidity contentions.



To the contrary, black letter law requires that the same claim construction be used for both non-infringement and invalidity. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses. A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.") (internal citations and quotations omitted); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1286 (Fed. Cir. 2015) ("claims are construed the same way for validity as for infringement").

Thus, statements by WAG on invalidity could impact the construction given to a term. For example, WAG in its L. Pat. R. 3.4A responses to invalidity contentions, may limit the meaning of certain claim terms to distinguish prior art (just as with statements during prosecution known as prosecution disclaimer), thereby potentially impacting claim constructions. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (distinguishing prior art results in disclaimer of claim scope); *Aylus Networks, Inc. v. Apple Inc.*, 2016 U.S. Dist. LEXIS 7299, at *14 (N.D. Cal. Jan. 21, 2016) (same). Also, in distinguishing prior art, WAG may focus on certain terms and thus highlight the dispositive nature of those terms needing construction. Finally, WAG's responses will be compared to WAG's deficient infringement contentions[11] to determine any inconsistencies between WAG's infringement contentions and validity positions. This will further focus the construction of claim terms and add efficiencies to these actions.

\* \* \* \* \*

WAG and the Defendants appreciate the Court's courtesies and consideration.

Respectfully,

*/s/ Ronald Abramson*

Ronald Abramson

cc: Counsel of Record (via ECF)

---

[11] As previewed to the Court at the July 15 hearing, WAG has serious deficiencies in its infringement contentions.