Justin T. Quinn
**ROBINSON MILLER LLC**
One Newark Center, 19th Floor
Newark, New Jersey 07102
973-690-5400
jquinn@rwmlegal.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAG Acquisition, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> Multi Media, L.L.C., *et al*., <br><br> Defendants. | Civil Action No. 2:14-cv-02340 (ES)(MAH) |
| WAG Acquisition, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> Data Conversions, Inc., *et al*., <br><br> Defendants. | Civil Action No. 2:14-cv-02345 (ES)(MAH) |

WAG Acquisition, L.L.C.,

     Plaintiff,

v.

Flying Crocodile, Inc., *et al*.,

       Defendants.

Civil Action No. 2:14-cv-02674 (ES)(MAH)

---

WAG Acquisition, L.L.C.,

     Plaintiff,

v.

Gattyán Group S.à r.l., *et al*.,

       Defendants.

Civil Action No. 2:14-cv-02832 (ES) (MAH)

---

WAG Acquisition, L.L.C.,

     Plaintiff,

v.

FriendFinder Networks Inc., *et al*.,

       Defendants.

Civil Action No. 2:14-cv-03456 (ES)(MAH)

---

WAG Acquisition, L.L.C.,

     Plaintiff,

v.

Vubeology, Inc., *et al*.,

       Defendants.

Civil Action No.2:14-cv-04531 (ES)(MAH)

WAG Acquisition, L.L.C.,

       Plaintiff,

v.

WebPower, Inc., d/b/a WP Associates

*et al*.,

          Defendants.

Civil Action No.2:15-cv-03581
(ES)(MAH)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE IN VIEW OF THE SUPREME COURT'S *TC HEARTLAND* DECISION

# **TABLE OF CONTENTS**

I.     Introduction........................................................................................1

II.    Procedural Posture ...........................................................................3

III.   Argument ...........................................................................................5

      A.     Legal Standard.........................................................................5

      B.     Venue Is Improper In the District of New Jersey. ...............9

            1.     Multi Media (Case No. 14-cv-02340)........................10

            2.     WMM (Case No. 14-cv-02345)...................................10

            3.     ICF Defendants (Case No. 14-cv-02674). .................11

            4.     Docler Media (Case No. 14-cv-02832)......................12

            5.     FriendFinder and StreamRay (Case No. 14-cv-03456). ...........13

            6.     Vubeology, Inc. (Case No. 14-cv-04531).................14

            7.     WebPower (Case No. 15-cv-03581). .........................15

      C.     28 U.S.C. § 1406(a) Requires Dismissal for Improper Venue, or Transfer. .........................................................16

      D.     Defendants Have Not Waived Their Improper Venue Defense. ........17

            1.     The Intervening-Change-In-Law Exception............17

            2.     Prior to *TC Heartland*, A Corporate Defendant Was Deemed to "Reside" Anywhere It Was Subject to Personal Jurisdiction. .............................................20

3.      An Improper Venue Defense Was Contrary to *VE Holding* and Then-Existing Jurisprudence in the District of New Jersey. .............................................................23

4.      Any Reliance on *Cobalt Boats* Should Be Rejected, as Recent Decisions Confirm that *TC Heartland* Abrogated Nearly 30 Years of Patent Venue Law. ....................................27

E.   Request to Transfer the Action Against Duodecad Luxembourg For Convenience and in the Interest of Justice. ............33

IV.   Conclusion ......................................................................................36

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Old English, Inc. v. Uwajimaya, Inc.*,
Civil Action No. 11-1239, 2012 U.S. Dist. LEXIS 116261 (D.N.J.
Aug. 16, 2012) ........................................................................................35

*Amax, Inc. v. ACCO Brands Corp.*,
2017 WL 2818986 (D. Mass. June 29, 2017).............................................30, 32

*Atl. Coast Demolition & Recycling, Inc. v. Bd. Of Chosen Freeholders
of Atl. Cnty.*,
112 F.3d 652 (3d Cir. 1997) ...............................................................7

*Ballard Med. Products v. Concord Laboratories, Inc.*,
700 F. Supp. 796 (D. Del. 1988)...........................................................8

*Bennett v. City of Holyoke*,
362 F.3d 1 (1st Cir. 2004)...............................................................19, 20

*Century Wrecker Corp. v. Vulcan Equipment Co., Ltd.*,
733 F. Supp. 1170 (E.D. Tenn. 1989)....................................................22

*Cobalt Boats LLC v. Sea Ray Boats, Inc.*,
No. 2:15-cv-00021-HCM-LRL, 2017 WL 2556679 (E.D. Va. June
7, 2017) .........................................................................*passim*

*In re Cordis Corp.*,
769 F.2d 733 (Fed. Cir. 1985) .......................................................8, 9

*In re: Cray Inc.*,
Fed. Cir. No. 17-00129, ECF Dkt. 2-1 .............................................9

*Curtis Pub. Co. v. Butts*,
388 U.S. 130 (1967)........................................................................19

*DUSA Pharm., Inc. v. River's Edge Pharm., LLC*,
No. 06-1843, 2006 WL 1320049 (D.N.J. May 15, 2006) .............................6, 25

iii

*Elbit Sys. Land v. Hughes Network Sys., LLC*,
    No. 2:15-cv-37, 2017 U.S. Dist. LEXIS 94495, 2017 WL 2651618
    (E.D. Tex. June 20, 2017) .............................................................................30, 32

*Engel v. CBS Inc.*,
    886 F. Supp. 728 (C.D. Cal. 1995) ...................................................................19

*Fourco Glass Co. v. Transmirra Products Corp.*,
    353 U.S. 222 (1957) .................................................................................*passim*

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
    843 F.3d 958 (D.C. Cir. 2016) ...........................................................................18

*Glater v. Eli Lilly & Co.*,
    712 F.2d 735 (1st Cir. 1983) ..............................................................................18

*Goffe v. Blake*,
    605 F. Supp. 1151 (D. Del. Mar. 27, 1985) ......................................................17

*Hand Held Products, Inc. v. Code Corp.*,
    No. 17-167, 2017 WL 3085859 (D.S.C. July 18, 2017) ..........................2, 30, 33

*Harper v. VA Dept. of Taxation*,
    509 U.S. 86 (1993) ..........................................................................................2, 7

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) .....................................................................26, 27

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
    590 F.3d 87 (2d Cir. 2009) ..........................................................................20, 27

*Holland v. Big River Minerals Corp.*,
    181 F.3d 597 (4th Cir. 1999) ..............................................................................18

*Holzsager v. Valley Hospital*,
    646 F.2d 792 (2d Cir. 1981) .................................................................18, 19, 27

*iLife Techs. Inc. v. Nintendo of Am.*,
    No. 3:13-cv-04987 (N.D. Tex. June 27, 2017) ............................................30, 32

*Infogation Corp. v. HTC Corp.*,
    No. 16-cv-01902, 2017 WL 2869717 (S.D. Cal. July 5, 2017) ....................29, 33

*Jakimas v. Hoffmann-La Roche, Inc.*,
 485 F.3d 770 (3d Cir. 2007) ...................................................................7

*Johnson Gas Appliance Co. v. VE Holding Corp.*,
 No. 90-1186, 111 S. Ct. 1315 (Mar. 18, 1991)...............................22, 25

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995) ...........................................................35, 36

*Laguna Constr. Co., Inc. v. Carter*,
 828 F.3d 1364 (Fed. Cir. 2016) .........................................................20

*Landmark Networks, LLC v. Valve Corp.*,
 No. 16-cv-1382 (E.D. Tex. May 30, 2017) ..........................................2

*Leroy v. Great W. United Corp.*,
 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) .........................34

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ..........................34

*M & R Marking Systems, Inc. v. Top Stamp, Inc.*,
 No. 96-828, 1996 WL 805485 (D.N.J. Nov. 20, 1996).................7, 26

*MAGICorp. v. Kinetic Presentations, Inc.*,
 718 F. Supp. 334 (D.N.J. 1989).....................................................5, 8, 9

*Master Cutlery, Inc. v. Panther Trading Co., Inc.*,
 No. 12-4493, 2012 WL 6597056 (D.N.J. Dec. 17, 2012) ........6, 25, 37

*McGinley v. Luv N' Care, Ltd.*,
 No. 16-cv-00283 (W.D. Mo. June 23, 2017)......................................2

*Memon v. Thompson*,
 2014 WL 6471636 (D.N.J. Nov. 18, 2014) .........................................7

*Navico, Inc. v. Garmin Int'l, Inc.*,
 No. 16-cv-190, 2017 WL 2957882 (E.D. Tex. July 11, 2017)....29, 33

*NeuroRepair, Inc. v. Nath Law Grp.*,
 781 F.3d 1340 (Fed. Cir. 2015) ...........................................................7

*Olberding v. Illinois Central*,
   346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953)....................................................33

*OptoLum, Inc. v. Cree, Inc.*,
   No. 16-03828, 2017 WL 3130642 (D. Ariz. July 24, 2017) ......................*passim*

*Raytheon Co. v. Cray, Inc.*,
   No. 15-cv-01554, 2017 WL 2813896 (E.D. Tex. June 29, 2017) .................9, 28

*Reckitt Benckiser Pharm. Inc. v. Biodelivery Sciences Int'l, Inc.*,
   No. 14-5892, 2015 WL 4461511 (D.N.J. July 21, 2015) ..............................6, 25

*Reebok Int'l Ltd. v. TRB Acquisitions, LLC*,
   No. 3:16-cv-1618, 2017 WL 3016034 (D. Or. July 14, 2017) ..........................29

*Refined Recommendation Corp. v. Netflix, Inc.*,
   Civil Action No. 07-CV-04981, 2008 U.S. Dist. LEXIS 11541
   (D.N.J. Feb. 14, 2008) ...............................................................................35, 37

*Regents of Univ. of California v. Eli Lilly & Co.*,
   734 F. Supp. 911 (N.D. Cal. 1990)...................................................................22

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   719 F.3d 1305 (Fed. Cir. 2013) (en banc) ........................................................26

*Saint Lawrence Communications LLC v. HTC Corp.*,
   2016 WL 1077950 (E.D. Tex. Mar. 18, 2016) ..................................................24

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*
   170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (Bryson, J., sitting by
   designation)........................................................................................................24

*In re Sea Ray Boats, Inc.*,
   No. 2017-124, 2017 WL 2577399 (Fed. Cir. June 9, 2017)
   (Newman, J. dissenting)....................................................................29, 30, 33

*In re TC Heartland LLC*,
   821 F.3d 1338 (Fed. Cir. 2016) ..................................................................23, 27

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017)...............................................................................*passim*

vi

*Telebrands Corp. v. Martfive, LLC*,
 No. 13-3374, 2013 WL 4675558 (D.N.J. Aug. 30, 2013)........................6, 25, 37

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
 917 F.2d 1574 (Fed. Cir. 1990), *cert. denied*, 111 S. Ct. 1315
 (1991) ..........................................................................................*passim*

*VP Intellectual Properties, LLC v. Imtec Corp.*,
 No. 99-3136, 1999 WL 1125204 (D.N.J. Dec. 9, 1999) ................................6, 25

*Vulcan Equip. Co., v. Century Wrecker Corp.*,
 1991 WL 11176416 (U.S.) (denied petition for writ of certiorari at
 111 S. Ct. 1587) ................................................................................24

*W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*,
 236 U.S. 723 (1915).............................................................................9

*Warner-Lambert Co. v. C.B. Fleet Co., Inc.*,
 583 F. Supp. 519 (D.N.J. 1984) ............................................................8

*Weiss v. Nat'l Westminster Bank PLC*,
 176 F. Supp. 3d 264 (E.D.N.Y. 2016) ....................................................20

*Westech Aerosol Corp. v. 3M Co.*,
 No. 3:17-cv-05067, 2017 WL 2671297 (W.D. Wash. June 21,
 2017) ..........................................................................................*passim*

*Zeneca Ltd. v. Mylan Pharm., Inc.*,
 No. Civ. A. S 96-1736, 1996 WL 925640 (D. Md. Jan. 6, 1996) ....................19

**Statutes and Court Rules**

28 U.S.C. § 1391 ..................................................................................*passim*

28 U.S.C. § 1391(a) ..............................................................................23

28 U.S.C. § 1391(c) ..............................................................................*passim*

28 U.S.C. § 1400(b) ..............................................................................*passim*

28 U.S.C. § 1404(a) ..............................................................................34, 35

28 U.S.C. § 1406....................................................................................1, 3

28 U.S.C. § 1406(a) ........................................................................5, 17, 38

Act of Mar. 3, 1897, ch. 395, 29 Stat. 695............................................21

Fed. R. Civ. P. 12(b)(3)................................................................1, 5, 18

Fed. R. Civ. P. 12(h) ....................................................................18, 27

Fed. R. Civ. P. 12(h)(1)........................................................................18

Federal Courts Jurisdiction and Venue Clarification Act of 2011, §
     202, 125 Stat. 763 ......................................................................23

Judicial Improvements and Access to Justice Act, § 1013(a), 102 Stat.
     4669...............................................................................................21

## Other Authorities

R. Davis, *Lawmakers Slam "Reprehensible" New Gilstrap Venue
     Rules*, Law 360 (July 13, 2017) ...............................................9

## I.      INTRODUCTION

Defendants in the above-captioned cases respectfully submit this brief in support of their Joint Motion to Dismiss, or in the Alternative, Motion to Transfer Venue in View of the Supreme Court's decision in *TC Heartland*, and pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §§ 1400(b), 1406.

The patent venue statute, 28 U.S.C. § 1400(b), provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  For nearly thirty years, federal courts applied the general venue statute's residence standard—that a corporate defendant "resides" wherever a corporation is subject to personal jurisdiction—to Section 1400(b).  *See, e.g.*, *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990) (applying 28 U.S.C. § 1391(c)'s residency provision to the patent venue statute), *cert. denied*, 111 S. Ct. 1315 (1991).  Accordingly, at the time WAG filed these cases, venue in a patent infringement action was proper wherever the corporate defendant was subject to personal jurisdiction.

On May 22, 2017, the Supreme Court substantially restricted venue options in patent infringement actions, abrogating nearly thirty years of patent venue jurisprudence first announced by the Federal Circuit in *VE Holding*.  *See TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).  Now,

1

"[a]s applied to domestic corporations, <u>reside[nce]' in § 1400(b) refers only to the State of incorporation</u>." *Id.* at 1521 (emphasis added).

Because the Supreme Court announced a new principle of federal venue law, the *TC Heartland* decision applies retroactively. *See Harper v. VA Dept. of Taxation*, 509 U.S. 86, 97 (1993) (when the Supreme Court applies "a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review"). Thus, for all existing and future patent infringement actions, venue is proper only where: (1) the corporate defendant is incorporated; or (2) where the corporate defendant has committed acts of infringement <u>and</u> has a regular and established place of business. Importantly, courts have begun to transfer cases pursuant to *TC Heartland*. *See OptoLum, Inc. v. Cree, Inc.*, No. 16-03828, 2017 WL 3130642 (D. Ariz. July 24, 2017); *Hand Held Products, Inc. v. Code Corp.*, No. 17-167, 2017 WL 3085859 (D.S.C. July 18, 2017); *McGinley v. Luv N' Care, Ltd.*, No. 16-cv-00283, ECF Dkt. 63 (W.D. Mo. June 23, 2017); *Landmark Networks, LLC v. Valve Corp.*, No. 16-cv-1382, ECF Dkt. 41, 43 (E.D. Tex. May 30, 2017).[1]  And, myriad district courts are newly entertaining venue motions.

---

[1] *See* Declaration of Justin T. Quinn ("Quinn Decl."), Exs. A-B for copies of the *McGinley* and *Landmark Networks* transfer orders.

By virtue of the Supreme Court's supervening decision in *TC Heartland*, venue in the District of New Jersey is now improper.   Defendants are not incorporated in New Jersey, nor do they have a regular or established place of business within this judicial district.   Because WAG cannot establish that venue is proper in the District of New Jersey, Defendants respectfully request that the Court grant Defendants' Joint Motion to Dismiss, or in the Alternative, to Transfer Venue pursuant to 28 U.S.C. §§ 1400(b) and 1406.

## II.      PROCEDURAL POSTURE

Since March 2014, WAG has filed over seven actions alleging various theories of patent infringement against a plethora of parties, including still unnamed defendants known only as "John Does 1-20" (the "WAG actions").   (*See* No. 14-cv-02340, ECF Dkt. 72-1 at 6.)

On January 12, 2015, Defendants moved to dismiss the WAG actions on various grounds.   (*See* No. 14-cv-02340, ECF Dkt. 48, at 1-70.)   At oral argument, the Court recognized the patent eligibility problems of WAG's patents, and expressed other concerns relating to invalidity and infringement, but felt these "good arguments" on liability should be decided at claim construction and/or summary judgment:

> I really do think that some of these issues are best left for summary judgment. <u>Some of these issues are best left after claim construction</u>.
>
> *             *             *

3

So my issue is, you are citing it to hold something at an MTD stage when the argument and <u>the problems that the language may inevitably present for the plaintiff at a later stage</u> when we are talking about <u>indefiniteness</u> is not ripe for this Court's consideration at this juncture.

\*                    \*                    \*

THE COURT: How can you say that to me? <u>All of these arguments say to me that we are going to have very good arguments at a later point in time.</u>

\*                    \*                    \*

I am not saying that a fight for another day, you may prevail when we are dealing with obviousness, when we are dealing with other issues that are possibly, based on what I read today, <u>potentially a problem for the plaintiff</u>.

(*See* July 29, 2015 Transcript of MTD at 9:23-10:1, 54:22-55:2, 95:25-96:2, 126:23-127:2 (emphases added).)  On September 10, 2015, the Court denied Defendants' motion to dismiss, stating *inter alia*, "that claim construction is necessary in this case before [the Court] can determine whether WAG's patents are invalid under § 101." (*See* No. 14-cv-02340, ECF Dkt. 61 at 12.)

On September 29, 2016, the Court bifurcated liability and damages discovery. (*See* No. 14-cv-02340, ECF Dkt. 107.)  The parties completed liability-related fact discovery on June 30, 2016 pursuant to the Amended Discovery Plan.  (*See* No. 14-cv-02340, ECF Dkt. 139.)  Although liability-related fact discovery has concluded, the WAG Actions remain in a relatively early stage of litigation: the parties' Joint Claim Construction and Prehearing Statement has not been submitted, *Markman*

4

briefing has yet to commence and the Court has not yet undertaken claim construction activities. Indeed, pending IPR decisions due at the end of December and early January may invalidate ten of WAG's asserted claims. Additionally, the liability expert phase has not started, no damages discovery has taken place, there are no motions for summary judgment pending, and no trial date has been set.

## III.   ARGUMENT

### A.   __Legal Standard__.

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss a case for "improper venue." Plaintiff bears the burden of establishing proper venue. *See MAGICorp. v. Kinetic Presentations, Inc.*, 718 F. Supp. 334, 339 (D.N.J. 1989). Upon a finding of improper venue, the district court is required to either dismiss or transfer the case to another court:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a) (emphasis added). Section 1406(a) uses the mandatory language "shall dismiss", and therefore, a district court must either dismiss or transfer a case filed in an improper venue.

The patent venue statute, 28 U.S.C. § 1400(b), provides two avenues for determining the proper venue in a patent infringement action. First, venue is proper in any "judicial district where the defendant resides". 28 U.S.C. § 1400(b).

5

Significantly, when these patent infringement lawsuits commenced in 2014 and 2015, the Federal Circuit and the District of New Jersey consistently held that a domestic corporation was deemed to "reside" in any judicial district in which the defendant was subject to personal jurisdiction and sold an allegedly infringing product. *See, e.g., VE Holding*, 917 F.2d at 1578 (applying 28 U.S.C. § 1391(c)'s residency provision to the patent venue statute); *supra* at 1; *Reckitt Benckiser Pharm. Inc. v. Biodelivery Sciences Int'l, Inc.*, No. 14-5892, 2015 WL 4461511 at *3 (D.N.J. July 21, 2015) (adopting *VE Holding*); *Telebrands Corp. v. Martfive, LLC*, No. 13-3374, 2013 WL 4675558, at *4 (D.N.J. Aug. 30, 2013) (citing *VE Holding* and noting that the Federal Circuit has interpreted the patent venue statute "as conferring nationwide jurisdiction as Section 1391 defines where a defendant resides for venue purposes as where he is subject to a court's personal jurisdiction").[2]  Following *TC Hedecartland*, however, a domestic corporation's "residence" now is defined exclusively as the State of incorporation.  137 S. Ct. at 1521.

---

[2] *See also Master Cutlery, Inc. v. Panther Trading Co., Inc.*, No. 12-4493, 2012 WL 6597056, at *2 (D.N.J. Dec. 17, 2012) (same); *DUSA Pharm., Inc. v. River's Edge Pharm., LLC*, No. 06-1843, 2006 WL 1320049 at *2 n.1 (D.N.J. May 15, 2006) (adopting *VE Holding* for the proposition that the 1988 amendments to 28 U.S.C. § 1391(c) apply to the patent venue statute); *VP Intellectual Properties, LLC v. Imtec Corp.*, No. 99-3136, 1999 WL 1125204 (D.N.J. Dec. 9, 1999) (adopting *VE Holding* and holding that Sec. 1391(c)'s residence standard applies to the patent venue statute); *M & R Marking Systems, Inc. v. Top Stamp, Inc.*, No. 96-828, 1996 WL 805485, at *8-9 (D.N.J. Nov. 20, 1996).

Importantly, *TC Heartland* applies retroactively to the WAG Actions.   When the Supreme Court applies "a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and <u>must be given full retroactive effect in all cases still open on direct review</u> and as to all events, regardless of whether such events predate or postdate the announcement of the rule." *See Harper*, 509 U.S. at 97 (emphasis added); *supra* at 2.   The Federal Circuit and Third Circuit have followed the *Harper* decision and consistently recognized that a new principle of law will be applied retroactively.  *See, e.g.*, *NeuroRepair, Inc. v. Nath Law Grp.*, 781 F.3d 1340, 1344 (Fed. Cir. 2015) (adopting *Harper* even though the "events in the present matter transpired prior to the decision"); *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 781 n.18 (3d Cir. 2007) ("We see no reason in this case to depart from the general rule of retroactive application."); *Atl. Coast Demolition & Recycling, Inc. v. Bd. Of Chosen Freeholders of Atl. Cnty.*, 112 F.3d 652, 672 (3d Cir. 1997); *Memon v. Thompson*, 2014 WL 6471636, at *3 (D.N.J. Nov. 18, 2014) (noting that in *Harper*, "the Supreme Court's latest retroactivity jurisprudence has overruled *Chevron Oil*'s equitable balancing test as the determinant of whether a new principle of law will be applied retroactively").

Venue also is proper in any judicial district "where the defendant has committed acts of infringement <u>and</u> has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added).   In evaluating this second prong of

§ 1400(b), the Federal Circuit and district courts within this Circuit have consistently looked at whether the corporate defendant has a "permanent and continuous presence" in the judicial district. *See, e.g.*, *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985); *MAGICorp.*, 718 F. Supp. at 340-41 (finding improper venue in spite of defendant's lease of office space in the district, as plaintiff failed to prove that "defendant engages in a substantial part of its ordinary business in a continuous manner in the district"); *Ballard Med. Products v. Concord Laboratories, Inc.*, 700 F. Supp. 796, 800 (D. Del. 1988) (noting that the "majority of courts have found that the physical location over which defendant exercises control and where defendant engages in a substantial part of its ordinary business in a continuous manner is sufficient to find a regular and established place of business"); *Warner-Lambert Co. v. C.B. Fleet Co., Inc.*, 583 F. Supp. 519, 521-526 (D.N.J. 1984) (finding improper venue in spite of presence of three sales representatives working out of their own homes in New Jersey).

For instance in *MAGICorp.*, the District of New Jersey found improper venue even though the corporate defendant leased office space in New Jersey, because the defendant's ordinary business—e.g., collecting payments, consummating sales, shipping orders, processing warranty work, and customer assistance—was conducted outside of the judicial district. 718 F. Supp. at 341. Thus, the patent venue statute is not satisfied merely where a corporate defendant is "doing business."

8

*Id.* at 340 ("This prong of the venue test, however, requires greater contacts than were necessary under the "doing business" test formerly articulated in the generic venue statute, 28 U.S.C. § 1391(c)."); *see also W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723, 725 (1915) (holding that a satellite office paid for by the corporate defendant and occupied by a single employee is not a "regular and established place of business").[3]

## B.   Venue Is Improper In the District of New Jersey.

WAG cannot satisfy either prong of § 1400(b). Because a corporation's residence for purposes of the patent venue statute is its place of incorporation, *see TC Heartland*, 137 S. Ct. at 1521, WAG cannot meet the first prong of § 1400(b) as none of the Defendants are incorporated in New Jersey. *See infra* Secs. III.B.1-7. The second prong of § 1400(b) is equally problematic for WAG. As demonstrated

---

[3] Defendants are aware of the recent decision in *Raytheon Co. v. Cray, Inc.*, No. 15-cv-01554, 2017 WL 2813896 (E.D. Tex. June 29, 2017), purporting to create a 4-part test for evaluating "regular and established place of business." Judge Gilstrap's 4-part test, which includes an analysis of "sales revenue" generated in the judicial district, is contrary to the Federal Circuit's *In re Cordis Corp.* decision. Commentators have already called into question the correctness of Judge Gilstrap's analysis. *See* R. Davis, *Lawmakers Slam "Reprehensible" New Gilstrap Venue Rules*, Law360 (July 13, 2017). House Judiciary Committee Chairman Bob Goodlatte, R-Va, stated: "Unfortunately, one judge in [the Eastern District of Texas] has already re-interpreted both the law and the unanimous Supreme Court decision to keep as many patent cases as possible in his district in defiance of the Supreme Court and congressional intent." *Id.* Cray petitioned the Federal Circuit on July 17 for a writ of mandamus to transfer the case (*In re: Cray Inc.*, Fed. Cir. No. 17-00129, ECF Dkt. 2-1), and Raytheon's response is due on July 31.

below and in the supporting Declarations filed with this Motion, none of the Defendants maintain a "regular and established place of business" in New Jersey. *Id.*

### 1.    Multi Media (Case No. 14-cv-02340).

Multi Media, LLC ("Multi Media") is a California limited liability company and maintains a regular and established place of business in Irvine, CA. *See* Declaration of Pooya Woodcock at ¶¶ 6-7. The Declaration of Pooya Woodcock, submitted in support of this motion, establishes that Multi Media does not have a permanent and continuous presence in this judicial district. Indeed, Multi Media does not: (1) own or lease office space in New Jersey; (2) own or lease any other types of property (e.g., servers, storage facilities, motor vehicles, etc.) in New Jersey; or (3) maintain business records in New Jersey. Woodcock Decl. at ¶¶ 8-11. In addition, Multi Media's employees do not work or reside within the judicial district. *Id.* at ¶ 12. Not surprisingly, neither Plaintiff's Complaint nor Amended Complaint alleges or implies that Multi Media has a regular and established place of business within the District of New Jersey. *See* No. 14-cv-02340, ECF Dkt. 1 and 24.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in the District of New Jersey for Multi Media. The Central District of California is the proper venue for this action.

### 2.    WMM (Case No. 14-cv-02345).

All of the defendants that have appeared in Case No. 14-cv-02345—i.e., WMM, LLC and WMM Holdings, LLC ("WMM")—are incorporated in the State of Nevada. WMM Holdings, LLC maintains regular and established places of business in California and Charlotte, North Carolina. *See* Declaration of William Raines at ¶¶ 7-11. The Declaration of William Raines, submitted in support of this motion, establishes that WMM does not have a permanent and continuous presence in this judicial district. Indeed, WMM does not: (1) own or lease office space in New Jersey; (2) own or lease any other types of property (e.g., servers, storage facilities, motor vehicles, etc.) in New Jersey; or (3) maintain business records in New Jersey. Raines Decl. at ¶¶ 12-15. In addition, WMM's employees do not work or reside within the judicial district. *Id.* at ¶ 15. Not surprisingly, neither Plaintiff's Complaint nor Amended Complaint alleges or implies that WMM has a regular and established place of business within the District of New Jersey. *See* No. 14-cv-02345, ECF Dkt. Nos. 1 and 15.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in the District of New Jersey for WMM. The District of Nevada is a proper venue for this action.

### 3.   ICF Defendants (Case No. 14-cv-02674).

All of the Defendants that have appeared in Case No. 14-cv-02674—i.e., ICF Technology, Inc., Accretive Technology Group, Inc., and Riser Apps, LLC

(hereinafter, the "ICF Defendants")—are incorporated in the State of Washington and maintain a regular and established place of business in Seattle, Washington. *See* 14-cv-02674, ECF Dkt. 49 at ¶¶ 4-6; Declaration of Shawn Boday at ¶¶ 3-5. The Declaration of Shawn Boday, which is submitted with this Motion, establishes that the ICF Defendants do not have a "permanent and continuous presence" in the New Jersey judicial district. For instance, the ICF Defendants have never: (1) had an office in New Jersey or a mailing address within the State; (2) registered to conduct business in the State of New Jersey; (3) had a registered agent in the State of New Jersey; and (4) maintained records in New Jersey. Boday Decl. at ¶¶ 6-8. In addition, the ICF Defendants' employees do not work or reside within the judicial district. *Id.* at ¶ 9. Rather, the vast majority of ICF Defendants' employees work and reside in the State of Washington. *Id.* Not surprisingly, neither Plaintiff's Complaint nor Amended Complaint alleges or implies that the ICF Defendants have a regular and established place of business within the District of New Jersey. *See* 14-cv-02674, ECF Dkt. 1 and 10.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in the District of New Jersey for the ICF Defendants. The Western District of Washington is the only proper venue for this action.

### 4.   <u>Docler Media (Case No. 14-cv-02832)</u>.

12

Defendant Docler Media LLC (formerly Duodecad IT Services USA LLC) ("Docler Media") is a California corporation and maintains a regular and established place of business in Beverly Hills, CA. *See* 14-cv-02832, ECF Dkt. No. 61 at ¶4. The Declaration of Balazs Sipocz, submitted in support of this motion, establishes that Docler Media does not have a "permanent and continuous presence" in the New Jersey judicial district. Indeed, Docler Media does not: (1) own or lease office space in New Jersey; (2) own or lease any other types of property (e.g., servers, storage facilities, motor vehicles, etc.) in New Jersey; or (3) maintain records in New Jersey. Sipocz Decl. at ¶¶ 10-12. In addition, Docler Media's employees do not work or reside within the judicial district. Rather, the vast majority of Docler Media's employees reside in the State of California. Neither Plaintiff's Complaint nor Amended Complaint alleges or implies that Docler Media has a regular and established place of business within the District of New Jersey. *See* 14-cv-02832, ECF Dkt. Nos. 1 and 24.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in the District of New Jersey for Docler Media. The Central District of California is the proper venue for this action.

### 5. FriendFinder and StreamRay (Case No. 14-cv-03456).

All of the defendants that have appeared in Case No. 14-cv-03456—i.e., FriendFinder Networks Inc. and Streamray Inc. (collectively, "FriendFinder")—are

incorporated in the States of Delaware and Nevada, respectively, have their principle places of business in California, and maintain regular and established places of business in Campbell, California.  *See* Declaration of Ezra Shashoua at ¶¶ 5-6; 11-12.  The Declaration of Ezra Shashoua, submitted in support of this motion, establishes that FriendFinder does not have a permanent and continuous presence in this judicial district.  Indeed, FriendFinder does not own or lease office space in New Jersey nor does it maintain business records in New Jersey.  Shashoua Decl. at ¶¶ 7-9, 14-17.  In addition, FriendFinder's employees do not work or reside within this judicial district.  *Id.* at ¶¶ 10, 16.  Not surprisingly, neither Plaintiff's Complaint nor First Amended Complaint alleges or implies that FriendFinder has a regular and established place of business within the District of New Jersey.  *See* 14-cv-03456, ECF Dkt. No. 137-1.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in the District of New Jersey.  The Northern District of California is the proper venue for this action.

### 6.    Vubeology, Inc. (Case No. 14-cv-04531).

Defendant Vubeology, Inc., which is now known as StreamMe, Inc., is a Nevada corporation with its principal place of business in Austin, Texas.  *See* 14-cv-04531, ECF Dkt. 1 at ¶ 2; Boday Decl. at ¶ 10.  The Declaration of Shawn Boday, which is submitted with this Motion, establishes that Vubeology does not have a

14

"permanent and continuous presence" in the New Jersey judicial district.   For

instance, Vubeology has never: (1) had an office in New Jersey or a mailing address

within the State; (2) registered to conduct business in New Jersey; (3) had a

registered agent in New Jersey; and (4) maintained records in New Jersey.   Boday

Decl. at ¶¶ 11-13.   In addition, Vubeology's employees do not work or reside within

the judicial district.   *Id.* at ¶ 14.   Rather, the vast majority of Vubeology's employees

work and reside in the State of Texas.   *Id.*   Not surprisingly, Plaintiff's Complaint

does not allege or imply that Vubeology has a regular and established place of

business within the District of New Jersey.   *See* 14-cv-04531, ECF Dkt. 1 at ¶¶ 2, 5.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in

the District of New Jersey for Vubeology.   The District of Nevada and the Western

District of Texas are the only proper venues for this action.

### 7.   WebPower (Case No. 15-cv-03581).

WebPower, Inc. ("WebPower") is incorporated in Florida and maintains a

regular and established place of business in Palm Beach Gardens, Florida.   *See* 15-

cv-03581, ECF Dkt. No. 24 at ¶ 2; Declaration of Mark Albers at ¶ 6-8.   The

Declaration of Mark Albers, submitted in support of this motion, establishes that

WebPower does not have a permanent and continuous presence in this judicial

district.   Indeed, WebPower does not: (1) own or lease office space in New Jersey;

(2) own or lease any other types of property (e.g., servers, storage facilities, motor

vehicles, etc.) in New Jersey; or (3) maintain business records in New Jersey.  Albers Decl. at ¶¶ 9-12.  In addition, WebPower's employees do not work or reside within the judicial district.  *Id.* at ¶ 13.  Not surprisingly, Plaintiff's Complaint does not allege or imply that WebPower has a regular and established place of business within the District of New Jersey.  *See* 15-cv-03581, ECF Dkt. No. 1.

In light of *TC Heartland* and consistent with § 1400(b), venue is not proper in the District of New Jersey for WebPower.  The Southern District of Florida is the proper venue for this action.

## C.    <u>28 U.S.C. § 1406(a) Requires Dismissal for Improper Venue, or Transfer</u>.

Because WAG cannot satisfy its burden of showing that the Defendants reside or have a "regular and established place of business in New Jersey," venue in this judicial district is improper.  These cases must be dismissed or, in the alternative, transferred.  *See* 28 U.S.C. § 1406(a) (the district court "*shall* dismiss, or if it be in the interest of justice, transfer").  Defendants recognize that the litigations have been pending in this district for more than 2-3 years, but that does not alter the venue analysis where, as here, dismissal for improper venue is required.  Alternatively, a transfer is permissible if it is "in the interests of justice."  Indeed, the length of pendency does not change the conclusion that these matters must be dismissed or transferred. *See, e.g.*, *Goffe v. Blake*, 605 F. Supp. 1151, 1160 n.8 (D. Del. Mar. 27,

1985) (transferring a 1.5 year old case that was still in its preliminary stages in the "interest of justice"). Like *Goffe*, these cases are still in their preliminary stages. The Joint Claim Construction and Prehearing Statement has not been submitted, *Markman* briefing has not begun, the Court has not yet undertaken claim construction activities, there has been no damages discovery, there are no motions for summary judgment pending and no trial date has been set. Thus, these cases should be dismissed pursuant to § 1406(a), or at least transferred.

### D.    **Defendants Have Not Waived Their Improper Venue Defense**.

WAG will likely argue that Defendants waived an improper venue defense under Fed. R. Civ. P. 12(h) because that defense was not raised either before or in the Defendants' first responsive pleadings. WAG is wrong. Defendants cannot waive an improper venue defense that did not exist under—and was directly contrary to—controlling Federal Circuit precedent and decisions of this Court at the time they filed their answers to the complaint.

### 1.    **The Intervening-Change-In-Law Exception.**

Defendants recognize that the defense of improper venue must be brought in the first defensive action—*i.e*., in the answer or in a motion to dismiss, or it may be deemed waived. *See* Fed. R. Civ. P. 12(b)(3) and (h)(1). Numerous courts have recognized an exception to this general rule, however, in situations where the

defense that was not timely raised was not "then available."  *See, e.g.*, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016) (holding that a defense is "available" unless "its legal basis did not exist at the time of the answer or pre-answer motion, or the complaint does not contain facts sufficient to indicate that a defense was possible"); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) ("[D]efendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move."); *Holzsager v. Valley Hospital*, 646 F.2d 792, 796 (2d Cir. 1981) ("[A] party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made.").  Further, the United States Supreme Court has held that an effective waiver must be one of a "known right or privilege."  *Curtis Pub. Co. v. Butts,* 388 U.S. 130, 143–45 (1967); *Holzsager*, 646 F.2d at 796.

The "not then available" exception will excuse a party from failing seasonably to have raised a defense if:

1. At the time of the procedural default, a prior authoritative decision indicated that the defense was unavailable; and

2. The defense became available thereafter by way of supervening authority (such as an overruling of the prior decision or a legislative clarification).

*See Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004); *see also Curtis Pub.,* 388 U.S. at 143–45 (holding "the mere failure to interpose such a defense prior to

18

the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground"); *Zeneca Ltd. v. Mylan Pharm., Inc.*, No. Civ. A. S 96-1736, 1996 WL 925640, at *7 (D. Md. Jan. 6, 1996) (holding that defendant did not waive personal jurisdiction where defense was supported by recent decision); *Engel v. CBS Inc.*, 886 F. Supp. 728, 729-30 (C.D. Cal. 1995) ("Defendants cannot be faulted for not having raised a defense that they did not know was available to them" under the governing statute at the time). Stated differently, courts will excuse a party for failing to raise a defense when the defense, if timely asserted, would have been futile under binding precedent. *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (holding that defendant did not waive personal jurisdiction where defense was "directly contrary to controlling precedent in this Circuit"); *Bennett*, 362 F.3d at 7; *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 272-74 (E.D.N.Y. 2016) (holding that personal jurisdiction defense not waived where the defense was asserted promptly after announcement of Supreme Court decision and the district court found an earlier assertion of the defense would have been contrary to controlling precedent in the Circuit). The "intervening change in the law and failure to prophesy a reversal of established adverse precedent" exception to the waiver rule follows from the definition of waiver: "an intentional relinquishment or abandonment of a known right." *Laguna Constr. Co., Inc. v. Carter*, 828 F.3d 1364, 1372 (Fed. Cir. 2016).

19

### 2. Prior to *TC Heartland*, A Corporate Defendant Was Deemed to "Reside" Anywhere It Was Subject to Personal Jurisdiction.

A brief overview of the patent venue statute, the general venue statute, and federal jurisprudence interpreting these statutes is useful in providing context to the *TC Heartland* decision and demonstrating why Defendants have not waived the improper venue defense.

As discussed above, the patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *see also* Act of Mar. 3, 1897, ch. 395, 29 Stat. 695 (predecessor to Section 1400(b)).  When the patent venue statute was recodified as § 1400(b) in 1948, Congress also enacted the general venue statute, 28 U.S.C. § 1391.   The general venue statute provides the following definition of "residence" for a corporate defendant:

> [a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

28 U.S.C. § 1391(c) (1952 ed.).

In *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957), the Supreme Court held that the term "resides" in the patent venue statute refers to

20

the state in which the domestic corporation is incorporated.  The *Fourco* Court declined to apply the general venue statute, 28 U.S.C. § 1391(c), to § 1400(b).

That jurisprudence remained unchanged for more than thirty years.  *See TC Heartland*, 2017 WL 2216934, at *6.  In 1988, Congress amended the general venue statute to provide as follows: "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction."  *See* Judicial Improvements and Access to Justice Act, § 1013(a), 102 Stat. 4669 (emphasis added).  The general venue statue is codified in chapter 87 of title 28, and thus, "this chapter" encompasses §§ 1391 through 1412.

In *VE Holding*, the Federal Circuit interpreted the 1988 amendments as establishing the definition of "residency" for all other venue statutes under the same "chapter".  917 F.2d at 1579-80.  The Federal Circuit described the *VE Holding* case as one of "first impression," as the Supreme Court had not interpreted the impact of the 1988 amendments on § 1400(b).  *See id.* at 1575.[4]  Because § 1400(b) fell within the relevant chapter, the Federal Circuit concluded that § 1391(c), "on its face," "clearly applies to § 1400(b), and thus redefines the meaning of the term 'resides' in that section."  *Id.* at 1578.  Thus, under *VE Holding*, the first test for venue in a patent

---

[4] The Supreme Court's decision in *Fourco*, which was issued in 1957, did not evaluate the impact of the 1988 amendments on § 1400(b).

infringement action was "whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced."[5]  *Id.* at 1584 (citing 28 U.S.C. §§ 1391(c) & 1400(b) (1988)).  In 1991, the Supreme Court denied a petition for certiorari and declined to review the Federal Circuit's opinion in *VE Holding*. *Johnson Gas Appliance Co. v. VE Holding Corp.*, No. 90-1186, 111 S. Ct. 1315 (Mar. 18, 1991).

In 2011, Congress adopted the current version of § 1391.  *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, § 202, 125 Stat. 763.  Section 1391(a) now provides that, "[e]xcept as otherwise provided by law," "<u>this section shall govern the venue of all civil actions</u> brought in district courts of the United States."  (emphasis added).  Congress also amended § 1391(c)'s "residency" definition to provide that "<u>[f]or all venue purposes,</u>" certain entities, "whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  (emphasis added).  In *In re TC Heartland LLC*, 821

---

[5] *See also Regents of Univ. of California v. Eli Lilly & Co.*, 734 F. Supp. 911, 912-914 (N.D. Cal. 1990) (questioning whether *Fourco* remains good law and ultimately holding that § 1391(c)'s residency definition applies to the patent venue statute); *Century Wrecker Corp. v. Vulcan Equipment Co., Ltd.*, 733 F. Supp. 1170, 1174 (E.D. Tenn. 1989) (holding that venue in a patent infringement action is proper where a corporate defendant is subject to personal jurisdiction).

F.3d 1338, 1342 (Fed. Cir. 2016), the Federal Circuit reaffirmed *VE Holding*, holding that the 2011 amendments provided no basis to reconsider its prior decision.[6]

### 3.   An Improper Venue Defense Was Contrary to *VE Holding* and Then-Existing Jurisprudence in the District of New Jersey.

WAG will undoubtedly argue that *Fourco* remained "good law"—and that Defendants were free to disregard *VE Holding* and assert an improper venue defense—at the time the first responsive pleading was filed.  Although *Fourco* was never explicitly overruled, *VE Holding* was the applicable "established precedent" when the Defendants answered WAG's complaint in 2014 and 2015.  Raising improper venue in the face of *VE Holding* might have engendered Rule 11 allegations.[7]

During the 27 years following *VE Holding*, many parties challenged the decision and all were unsuccessful.  *See, e.g.*, *TC Heartland*, 137 S. Ct. at 1517 ("Relying on Circuit precedent, the District Court rejected [the defendant's]

---

[6] *See also In re TC Heartland LLC*, 821 F.3d 1338, 1342 (Fed. Cir. 2016) (explaining that the Supreme Court's decision in *Fourco* was "no longer the law" because Congress had made the definition of corporate residence applicable to patent cases through the 1988 amendments).

[7] *See, e.g.*, *OptoLum*, 2017 WL 3130642, at *4 (noting that an improper venue challenge prior to *TC Heartland* "certainly would have been deemed meritless by the Court"); *Westech Aerosol Corp. v. 3M Co.*, No. 3:17-cv-05067, 2017 WL 2671297 (W.D. Wash. June 21, 2017) ("For the first time in 27 years, a defendant may argue credibly that venue is improper in a judicial district where it is subject to a court's personal jurisdiction but where it is not incorporated and has no regular and established place of business.").

23

arguments, and the Federal Circuit denied a petition for a writ of mandamus."); *Vulcan Equip. Co., v. Century Wrecker Corp.*, 1991 WL 11176416 (U.S.) (denied petition for writ of certiorari at 111 S. Ct. 1587); *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.* 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (Bryson, J., sitting by designation) (rejecting argument challenging *VE Holding*); *Saint Lawrence Communications LLC v. HTC Corp.*, 2016 WL 1077950, at *3 (E.D. Tex. Mar. 18, 2016) ("The recent congressional changes to § 1391 do not disturb the Federal Circuit's findings in *VE Holding*").  Indeed, as noted above, the Supreme Court denied Johnson Gas Appliance's petition for writ of certiorari on the *VE Holding* decision.  *See Johnson Gas Appliance Co. v. VE Holding Corp.*, No. 90-1186, 111 S. Ct. 1315 (Mar. 18, 1991).

Moreover, the District of New Jersey likewise followed *VE Holding* and held that the general venue statute's residence standard—that a corporate defendant "resides" wherever a corporation is subject to personal jurisdiction—applies to Section 1400(b).  *See, e.g.*, *Reckitt Benckiser Pharm. Inc. v. Biodelivery Sciences Int'l, Inc.*, No. 14-5892, 2015 WL 4461511 at *3 (D.N.J. July 21, 2015) (adopting *VE Holding*); *Telebrands Corp. v. Martfive, LLC*, No. 13-3374, 2013 WL 4675558, at *4 (D.N.J. Aug. 30, 2013) (citing *VE Holding* and noting that the Federal Circuit has interpreted the patent venue statute "as conferring nationwide jurisdiction as Section 1391 defines where a defendant resides for venue purposes as where he is

24

subject to a court's personal jurisdiction"); *Master Cutlery, Inc. v. Panther Trading Co., Inc.*, No. 12-4493, 2012 WL 6597056, at *2 (D.N.J. Dec. 17, 2012) (same); *DUSA Pharm., Inc. v. River's Edge Pharm., LLC*, No. CIV 06-1843, 2006 WL 1320049 at *2 n.1 (D.N.J. May 15, 2006) (adopting *VE Holding* for the proposition that the 1988 amendments to 28 U.S.C. § 1391(c) apply to the patent venue statute); *VP Intellectual Properties, LLC v. Imtec Corp.*, No. CIV A 99-3136, 1999 WL 1125204 (D.N.J. Dec. 9, 1999) (adopting *VE Holding* and holding that Sec. 1391(c)'s residence standard applies to the patent venue statute).  In a 1996 decision, the District of New Jersey stated that pre-1988 jurisprudence related to § 1400(b) was of "historical interest only":

> However, the 1988 amendment of 28 U.S.C. § 1391(c) allowing suits against a corporation to be brought in any district in which personal jurisdiction can be obtained over the corporation, changed the once exclusive nature of 28 U.S.C. § 1400(b). As Wright and Miller's Federal Practice and Procedure note in the most recent supplement, "All of what is said in the main volume may, for practical purposes, now be considered of historical interest only ... the 1988 amendment of 28 U.S.C.A. § 1391(c) ... applies to patent-infringement cases just as to others." Wright and Miller, § 3823.

*M & R Marking Sys., Inc. v. Top Stamp, Inc.*, No. CIV. 96-828(WGB), 1996 WL 805485, at *9 (D.N.J. Nov. 20, 1996) (emphasis added).

That the Supreme Court decided—nearly 30 years after *VE Holding*—that the Federal Circuit erred, does not mean that district courts and litigants were free to disregard *VE Holding* along the way:

> A district judge may not respectfully (or disrespectfully) disagree with
> his learned colleagues on his own court of appeals who have ruled on
> a controlling legal issue.... Binding authority within this regime
> cannot be considered and cast aside; it is not merely evidence of what
> the law is. Rather, caselaw on point *is* the law. If a court must decide
> an issue governed by a prior opinion that constitutes binding
> authority, the later court is bound to reach the same result, even if it
> considers the rule unwise or incorrect. Binding authority must be
> followed unless and until overruled by a body competent to do so.

*Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) (emphasis in original).

"Panel opinions are, of course, opinions of the court and may only be changed by

the court sitting en banc." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305,

1316 (Fed. Cir. 2013) (en banc). A court "may not any more disregard the earlier

panel's opinion than it may disregard a ruling of the Supreme Court." *Hart*, 266

F.3d at 1171.

Thus, prior to the Supreme Court's decision in *TC Heartland* in May 2017,

the issue of venue in patent cases was "firmly resolved by *VE Holding*, a settled

precedent for over 25 years." *In re TC Heartland*, 821 F.3d at 1341. Rule 12(h)

does not preclude Defendants from bringing the instant venue challenge, which was

not available to Defendants (and directly contrary to existing, binding precedent) at

the time of Defendants' answers and motion to dismiss. The "doctrine

of waiver demands conscientiousness, not clairvoyance, from parties." *Hawknet*,

590 F.3d at 91-92. Defendants cannot waive a right (or defense) that was not

available to them under then-existing law. *See Holzsager*, 646 F.2d at 796.

26

4.  **Any Reliance on _Cobalt Boats_ Should Be Rejected, as Recent Decisions Confirm that _TC Heartland_ Abrogated Nearly 30 Years of Patent Venue Law.**

WAG also will undoubtedly rely upon _Cobalt Boats LLC v. Sea Ray Boats, Inc._, No. 2:15-cv-00021-HCM-LRL, 2017 WL 2556679 (E.D. Va. June 7, 2017), for the proposition that _TC Heartland_ merely established that (a) the Federal Circuit erred when it held in _VE Holding_ that the 1988 amendments to 28 U.S.C. § 1391 had overruled the Supreme Court's 1957 decision in _Fourco Glass Co. v. Transmirra Prods. Corp._, 353 U.S. 222 (1957), and thus, (b) _Fourco_ has been the law all along. Although thus far, a panel of the Federal Circuit has declined to take the extraordinary step of reversing _Cobalt Boats_ via mandamus,[8] Judge Newman's dissent calls into question the correctness of the underlying waiver analysis in _Cobalt Boats_:

> When a court is confronted with a change in the law, the judicial role is to comply with the change. There is little doubt that the Court's decision in _TC Heartland LLC v. Kraft Foods Grp. Brands LLC_, —— U.S. ——, 137 S.Ct. 1514, —— L.Ed.2d —— (2017), _was a change in the law of venue_, and the district court states that under _Fourco Glass Co. v. Transmirra Prods. Corp._, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), venue is proper in Virginia. The issue of proper forum following the return to _Fourco_ requires our resolution.
>
> This court must ensure the Court's decision in _TC Heartland_ is properly applied to the facts of this case. Determination of the forum is appropriate before expenditure of the major resources of a two-week jury trial. Here, the district court issued its opinion on the denial

---

[8] _But see supra_, n.4 (ordering response to mandamus petition, suggesting Federal Circuit will take issue up under _Cray_).

of the motion to transfer venue less than a week prior to trial, and the defendant has requested the time needed for due consideration of its transfer motion. It is clear that if the trial commences next Monday as scheduled, the landscape will have changed dramatically—without a stay, the event will be over, and an opportunity for this court to determine whether the district court's decision was in compliance with the venue requirements revived by TC Heartland may have harsh consequences. *See Olberding v. Illinois Central,* 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39 (1953) (reversing verdict for plaintiff after jury trial in an improper venue); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 41, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ("reversal with new trial is required [where] venue is precluded by the governing statute" (citing *Olberding*))*; Leroy v. Great W. United Corp.,* 443 U.S. 173, 181, 184 & n. 18, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) (citing *Olberding* and reversing declaratory judgment for improper venue).

Of course, there are arguments on both sides, for the Virginia court has already invested in full pretrial proceedings. However, it is at trial that the purposes and policy of proper venue become dominant. The processes of law are designed not for the convenience of judges, but as safeguards to litigants and warders of justice. *See* Leroy, 443 U.S. at 183–84, 99 S.Ct. 2710 ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."). Here, where the change of law brings the propriety of the current venue directly into question, this defendant is entitled to consideration of its request. Legitimate questions have been raised; they warrant an answer for these disputants, before, not after, trial.

*In re Sea Ray Boats, Inc.*, No. 2017-124, 2017 WL 2577399, at *1–2 (Fed. Cir. June 9, 2017) (Newman, J. dissenting) (emphases added).  In any event, *Cobalt Boats* is readily distinguishable.  The *Cobalt Boats* litigation was much further along than the instant actions—the parties had completed a Markman hearing, fully litigated motions for summary judgment and in limine, and jury trial was scheduled for a

28

mere five days after the court's ruling.  Additionally, the district court's analysis did

not include consideration of whether the Eastern District of Virginia repeatedly

adopted and endorsed *VE Holding* in the intervening decades before the *TC*

*Heartland* decision, as is the case in this District.[9]

Recent decisions support Defendants' motion and request for transfer.  *See,*

*e.g.*, *OptoLum, Inc.*, 2017 WL 3130642; *Westech Aerosol Corp. v. 3M Co.*, No. 3:17-

cv-05067, 2017 WL 2671297 (W.D. Wash. June 21, 2017); Quinn Decl., Exs. A-B.

For instance, in *Westech Aerosol*, the Western District of Washington held that

defendants did not waive their venue challenge by omitting it from responsive

pleadings and an earlier motion to dismiss filed prior to the *TC Heartland* decision.

The *Westech Aerosol* court recognized that *TC Heartland* changed patent venue law:

---

[9] Defendants are aware of other venue decisions relying on *Cobalt Boats.  See Reebok Int'l Ltd. v. TRB Acquisitions, LLC*, No. 3:16-cv-1618, 2017 WL 3016034 (D. Or. July 14, 2017); *Navico, Inc. v. Garmin Int'l, Inc.*, No. 16-cv-190, 2017 WL 2957882 (E.D. Tex. July 11, 2017); *Infogation Corp. v. HTC Corp.*, No. 16-cv-01902, 2017 WL 2869717 (S.D. Cal. July 5, 2017); *Amax, Inc. v. ACCO Brands Corp.*, 2017 WL 2818986 (D. Mass. June 29, 2017); *Elbit Sys. Land v. Hughes Network Sys., LLC*, No. 2:15-cv-37, 2017 U.S. Dist. LEXIS 94495 (E.D. Tex. June 20, 2017); *iLife Techs. Inc. v. Nintendo of Am.*, No. 3:13-cv-04987, Docket No. 245 (N.D. Tex. June 27, 2017).  None of these ill-advised decisions are from this District.  Indeed, the court should reject these non-binding decisions for the same reasons that it should disregard *Cobalt Boats*.  In any event, better reasoned opinions from other jurisdictions have found that defendants did not waive a venue challenge because of the sea change in the law.  *See OptoLum*, 2017 WL 3130642; *Westech Aerosol*, 2017 WL 2671297; *Hand Held Products, Inc. v. The Code Corp.*, No. 2:17-167 (D.S.C. July 18, 2017).  *See also In re Sea Ray Boats, Inc.*, 2017 WL 2577399 (Newman, J. dissenting).

> <u>TC Heartland abrogated approximately 27 years of patent law precedent.</u> The Supreme Court announced in *Fourco* that for patent law, a domestic corporation "resides" only in its state of incorporation. *See* 353 U.S. at 229. It rejected the argument that § 1400 incorporates the broader definition of corporate "residence" contained in § 1391. *See id.* After Congress amended § 1391, however, the Federal Circuit concluded in *VE Holdings* that § 1391 "clearly applies to § 1400(b), and thus redefines the meaning of the term 'resides.' " 917 F.2d at 1578. It redefined a defendant's venue in cases of alleged patent infringement as "any judicial district [where the] defendant is subject to the court's personal jurisdiction." 917 F.2d at 1578–80 (referencing 28 U.S.C. § 1391(c)(2)). <u>The Supreme Court denied *certiorari*, allowing the Federal Circuit's decision to stand, and district courts have since had to follow it—until now.</u>

*Id.* at *2 (emphasis added).  The *Westech Aerosol* court flatly rejected plaintiff's waiver argument, explaining that defendants could not waive a defense that was unavailable prior to *TC Heartland*:

> *TC Heartland* changed the venue landscape. <u>For the first time in 27 years, a defendant may argue *credibly* that venue is improper in a judicial district where it is subject to a court's personal jurisdiction but where it is not incorporated and has no regular and established place of business</u>. Defendants could not have reasonably anticipated this sea change, and so did not waive the defense of improper venue by omitting it from their initial pleading and motions.

*Id.* (emphasis added).  The district court therefore permitted the defendant to amend its motion to dismiss to add a venue defense.

Similarly, in *OptoLum, Inc. v. Cree, Inc.*, the District of Arizona rejected the argument advanced in *Cobalt Boats*—i.e., that defendant waived an improper venue defense because "*Fourco* has always governed venue in patent cases despite *VE Holding*." 2017 WL 3130642, at *3.  The district court rightly recognized that such

30

an argument ignored the fact that "courts throughout the country consistently applied

*VE Holding* in patent litigation for nearly 30 years." *Id.* Given the long-standing

reliance on *VE Holding*, the district court described as follows the "harsh reality"

facing defendants prior to the *TC Heartland* decision:

> Because *VE Holding* was binding on lower courts, any motion by
> Cree to dismiss for improper venue before *TC Heartland* likely would
> have been opposed by OptoLum and certainly would have been
> deemed meritless by the Court. *See Elbit Sys.*, 2017 WL 2651618, at
> *20. Cree, of course, could have incurred the time and expense of
> appealing to the Federal Circuit and losing, *see In re TC Heartland*,
> 821 F.3d 1338 (Fed. Cir. 2016), and then filing a petition with the
> Supreme Court in the hope that it would grant certiorari and
> reverse *VE Holding*. But the Court does not find that this potentially
> lengthy and expensive litigation strategy, with the mere possibility
> that *VE Holding* might be overturned, rendered the defense of
> improper venue "available" to Cree when it filed its answer and initial
> motion to dismiss.

*Id.* at *4 (emphasis added). Put simply, "it was not, 'for all practical purposes,'

possible for [defendant] to assert the defense of improper venue in light of the

binding nature of *VE Holding* and its presence on the venue landscape for the past

few decades." *Id.* at *5.

The *OptoLum* court also noted that the procedural posture of the case, which

was "closer to *Westech* than the host of cases finding waiver", supported its ultimate

conclusion that the improper venue defense was not waived. *Id.* Notably, in each

of the cases finding waiver, the defendant sought to raise the venue defense "late in

the litigation"—i.e., on the eve of trial or post-*Markman*. *Id.*, comparing *Westech*

*Aerosol*, 2017 WL 2671297 (venue challenge made early in the case), and distinguishing *Cobalt Boats*, 2017 WL 2556679, at *2 (weeks before trial); *Elbit Systems*, 2017 WL 2651618, at *19 (less than two months before trial); *iLife Techs.*, 2017 WL 2778006, at *1 (three months before trial); *Amax, Inc.*, 2017 WL 2818986, at *1 (transfer sought post-summary judgment); *Infogation Corp.*, 2017 WL 2869717, at *3 (after court's issuance of claim construction order); *Navico*, 2017 WL 2957882, at *1 (after claim construction and two months before trial).

Moreover, the *OptoLum* and *Westech Aerosol* decisions are consistent with the recent transfer order in *Hand Held Products, Inc. v. Code Corp*, No. 2:17-167, 2017 WL 3085859 (D.S.C. July 18, 2017).   There, the district court rejected plaintiff's reliance on *Cobalt Boats*, ultimately finding that plaintiff would not be prejudiced by litigating the case in the proper venue.   *Id.* at *3 ("It would be inequitable to deny Code the opportunity to seek proper venue, where no prejudice results to Plaintiff, simply because Code . . . reasonably relied on what nearly every litigant thought was binding precedent governing patent litigation venue for the past 27 years.").

Here, WAG will not be prejudiced by litigating these matters in their respective, proper venues.  Although liability-related fact discovery has concluded, these cases remain in an early stage of litigation, and trial, where "the purposes and policy of proper venue become dominant" (*Sea Ray*, No. 2017-124, 2017 WL

2577399, at \*2, Newman, J. dissenting; *supra* at 31) has not even been scheduled. And, the fact discovery taken to-date can be used seamlessly in the transferee venue. Litigation in the improper venue will only result in a waste of judicial resources and prejudice to the parties. *See Olberding v. Illinois Central,* 346 U.S. 338, 340, 74 S. Ct. 83, 98 L. Ed. 39 (1953) (reversing verdict for plaintiff after jury trial in an improper venue); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 41, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998) ("reversal with new trial is required [where] venue is precluded by the governing statute" (citing *Olberding*))*; Leroy v. Great W. United Corp.,* 443 U.S. 173, 181, 184 & n. 18, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979) (citing *Olberding* and reversing declaratory judgment for improper venue).

## E.   **Request to Transfer the Action Against Duodecad Luxembourg For Convenience and in the Interest of Justice.**

Defendant Duodecad Luxembourg is a Luxembourg entity and a party to Case No. 14-cv-02832. Duodecad Luxembourg acknowledges that *TC Heartland* does not address venue in patent actions against foreign corporations.[10]  As discussed above, however, *TC Heartland* effectively mandates that the action against Duodecad Luxembourg's only remaining co-defendant, Docler Media (a related

---

[10]  *See TC Heartland*, 2017 WL 2216934 at fn. 2 ("The parties dispute the implications of petitioner's argument for foreign corporations. We do not here address that question . . .").

company), be transferred to the Central District of California ("CDCA").  In light of this, Duodecad Luxembourg requests a transfer of the claims against it to the same venue, for convenience and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

Section §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  This Court should transfer the action against Duodecad Luxembourg to CDCA because (a) the action could have been brought in that district and (b) considerations of convenience and justice strongly favor transfer.  *Refined Recommendation Corp. v. Netflix, Inc.*, Civil Action No. 07-CV-04981, 2008 U.S. Dist. LEXIS 11541, at *6-7 (D.N.J. Feb. 14, 2008).

Plaintiff has not disputed that it could have brought an action against Duodecad Luxembourg in CDCA.  Plaintiff presumably would assert the same grounds for venue and personal jurisdiction over Duodecad Luxembourg in CDCA as it has in this District.

Additionally, considerations of convenience and justice favor transfer of the claims against Duodecad Luxembourg to CDCA, if the claims against Docler Media are transferred to that jurisdiction.  In evaluating a motion to transfer venue, this Court must consider whether private and public factors favor the transfer.  *See Allied Old English, Inc. v. Uwajimaya, Inc.*, Civil Action No. 11-1239, 2012 U.S. Dist.

34

LEXIS 116261, at *6 (D.N.J. Aug. 16, 2012).  These public factors include, among
other things, practical considerations that could make the trial easy, expeditious or
inexpensive.  *See*, *e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.
1995) (citations omitted).  Private factors include (1) plaintiff's original choice of
forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience
of the parties as indicated by their relative physical and financial condition; (5) the
convenience of the witnesses to the extent that the witnesses may be unavailable for
trial in one of the fora; and (6) the location of books and records to the extent that
the files cannot be produced in the alternative forum.  *Id.*

Here, the most significant consideration is the impending potential transfer of
Plaintiff's claims against Docler Media to CDCA.  If such transfer were to occur,
this would greatly favor transfer of the action against Duodecad Luxembourg as
well, because the resources of the Court and the parties would best be served by
litigation of the claims against these related defendants in a single forum.  Because
venue as to Docler Media is only proper in CDCA, that District would be the most
appropriate venue (indeed the only viable venue) in which to continue the litigation
as to both parties.  If the claims against Duodecad Luxembourg and Docler Media
are severed, both courts will be burdened with litigating nearly identical actions,
with the same facts, witnesses, documents and evidence—an unnecessary waste of
resources.

Nor does WAG's original choice of this District outweigh the benefits of a transfer to CDCA.   Although a plaintiff's choice of forum is a meaningful consideration, this factor is of less significance in appropriate circumstances.  *See*, *e.g.*, *Refined Recommendation Corp. v. Netflix, Inc.*, C.A. No. 07-cv-04981, 2008 U.S. Dist. LEXIS 11541, at *7 (D.N.J. Feb. 14, 2008).  Here, WAG likely would not have pursued its claims against Duodecad Luxembourg in this District had *TC Heartland* been in effect at the time it filed its Complaint, because to do so would have required it to pursue a separate and duplicative action against Docler Media in CDCA.  Because WAG likely would not have chosen this District as its original forum under current Supreme Court precedent, its choice of this District should not be entitled to weight.

None of the other public and private interest factors outweigh the cost and inconvenience of what would be needlessly duplicative litigation.   Accordingly, Duodecad Luxembourg respectfully requests a transfer of this action to the same forum as that required for the claims against Docler Media—the United States District Court for the Central District of California.

## IV.    CONCLUSION

When WAG instituted these patent infringement actions, venue arguably was not improper in the District of New Jersey under controlling and long-standing Federal Circuit precedent.  *See, e.g.*, *VE Holding*, 917 F.2d 1574; *Telebrands Corp.*,

2013 WL 4675558, at *4; *Master Cutlery*, 2012 WL 6597056, at *2.  By abrogating

*VE Holding*, however, the Supreme Court profoundly altered the law of venue in

patent infringement cases.  Under *TC Heartland* and 28 U.S.C. § 1400(b), venue is

not proper in the District of New Jersey.  None of the Defendants in the WAG

Actions are incorporated in New Jersey, nor do they have "a regular and established

place of business" within the District of New Jersey.  Pursuant to 28 U.S.C.

§ 1406(a), these cases must be transferred to the proper venues or dismissed.


Dated:  July 28, 2017                Respectfully submitted,


                                     s/ Justin T. Quinn
                                     Justin T. Quinn
                                     **ROBINSON MILLER LLC**
                                     One Newark Center
                                     Newark, NJ 07102
                                     Telephone No.: (973) 690-5400
                                     Facsimile No.: (973) 466-2760
                                     JQuinn@rwmlegal.com

                                     *Attorneys for Defendants FriendFinder Networks*
                                     *Inc., Streamray Inc., Multi Media, LLC, WMM, LLC*
                                     *and WMM Holdings, LLC, WebPower, Accretive*
                                     *Technology Group, Inc., ICF Technology Group,*
                                     *Inc., Riser Apps, LLC, Duodecad IT Services*
                                     *Luxembourg S.à r.l. and Docler Media LLC*

Frank M. Gasparo (*Pro Hac Vice*)
Ralph A. Dengler (*Pro Hac Vice*)
Todd M. Nosher
Andrew P. MacArthur
Gianna E. Cricco-Lizza
**VENABLE LLP**
1270 Avenue of the Americas
New York, New York 10020
Telephone No.:  (212) 307-5500
Facsimile No.:  (212) 307-5598
FMGasparo@venable.com
RADengler@venable.com
TMNosher@venable.com
APMacArthur@Venable.com
GECricco-Lizza@Venable.com

*Attorneys for Defendants FriendFinder Networks
Inc., Streamray Inc., Multi Media, LLC, WMM,
LLC, WMM Holdings, LLC, and WebPower Inc.*

Brian G. Bodine (*Pro Hac Vice*)
Steven B. Winters (*Pro Hac Vice*)
Jennifer K. Sheffield (*Pro Hac Vice*)
Adriane M. Scola (*Pro Hac Vice*)
LANE POWELL PC
1420 Fifth Ave., Suite 4200
Seattle, WA 98111-9402
Telephone: (206) 223-7000
bodineb@lanepowell.com
winterss@lanepowell.com
sheffieldj@lanepowell.com
scolaa@lanepowell.com

*Attorneys for Defendants Accretive Technology
Group, Inc., ICF Technology, Inc., Riser Apps
LLC, and Vubeology, Inc.*

38

Kevin O'Brien (*Pro Hac Vice*)
Richard V. Wells (*Pro Hac Vice*)
**BAKER & McKENZIE, LLP**
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Telephone No.:  (202) 835-6143
Facsimile No.:  (202) 416-7143
Kevin.O'Brien@bakermckenzie.com
Richard.Wells@bakermckenzie.com

*Attorneys for Defendants Duodecad IT Services*
*Luxembourg S.à r.l. and Docler Media LLC*