FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WAG ACQUISITION, L.L.C., | : | Civil Action No. 14-2340 (ES) (MAH) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| MULTI MEDIA, L.L.C., et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
| WAG ACQUISITION, L.L.C., | : | Civil Action No. 14-2345 (ES) (MAH) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| DATA CONVERSIONS, INC., et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
| WAG ACQUISITION, L.L.C., | : | Civil Action No. 14-2674 (ES) (MAH) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| FLYING CROCODILE, INC., et al., | : |  |
|  | : | **REPORT AND RECOMMENDATION** |
| Defendants. | : |  |

| | | |
|---|---|---|
| WAG ACQUISITION, L.L.C., | : | Civil Action No. 14-2832 (ES) (MAH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GATTYÁN GROUP S.à.r.l., et al., | : | |
| | : | |
| Defendants. | : | |
| WAG ACQUISITION, L.L.C., | : | Civil Action No. 14-3456 (ES) (MAH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FRIENDFINDER NETWORKS INC., et al., | : | |
| | : | |
| Defendants. | : | |
| WAG ACQUISITION, L.L.C., | : | Civil Action No. 14-4531 (ES) (MAH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VUBEOLOGY, INC., et al., | : | |
| | : | |
| Defendants. | : | |

—————————————————————— :
                                              :
**WAG ACQUISITION, L.L.C.,**              :        **Civil Action No. 15-3581 (ES) (MAH)**
                                              :
              **Plaintiff,**              :
                                              :
         **v.**                           :
                                              :
**WEBPOWER, INC., et al.,**               :
                                              :
              **Defendants.**             :
—————————————————————— :

## I.   INTRODUCTION

This matter comes before the Court by way of Defendants' motions to dismiss for lack of

subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, to dismiss or

transfer for improper venue under the patent venue statute, 28 U.S.C. § 1400(b), D.E. 162. [1]

WAG Acquisition, LLC ("WAG") opposes the motions.  Also before the Court is WAG's cross-

motion to dismiss Defendant Docler Media, LLC as a Defendant without prejudice, D.E. 152,

which Defendants Docler Media LLC and Duodecad IT Services Luxembourg S.a r.l oppose,

D.E. 154. [2]  The Honorable Esther Salas, U.S.D.J., referred these motions to the Undersigned for

a Report and Recommendation.  The Court heard oral argument on the motions on March 28,

2018.

For the reasons set forth below, the Undersigned respectfully recommends that the

District Court: (i) deny Defendants' motions to dismiss for lack of subject matter jurisdiction; (ii)

---

[1]  For ease of reference, all citations will be to the documents in the lead case, *WAG Acquisition,
LLC v. Multi-Media, LLC*, Civil Action No. 14-2340 (ES), unless noted otherwise.

[2]  All references to this motion and the documents pertaining thereto relate to *WAG Acquisition,
LLC v.* G*attyán Group S.à.r.l.*, Civil Action No. 14-2832 (ES).

deny Defendants' motions to dismiss for improper venue; (iii) grant Defendants' motions to transfer venue as to *WAG v. Multi-Media, LLC* (Civ. No. 14-2340); *WAG v. Data Conversions, Inc.* (Civ. No. 14-2345); *WAG v. Flying Crocodile, Inc.* (Civ. No. 14-2674); *WAG v. FriendFinder Networks, Inc.* (Civ. No. 14-3456); *WAG v. Vubeology, Inc.* (Civ. No. 14-4531); and *WAG v. WebPower, Inc.* (Civ. No. 15-3581); (iv) grant WAG's cross-motion to dismiss Defendant Docler Media, LLC as a Defendant without prejudice; and (v) deny Defendants' motion to transfer venue as to Defendant Duodecad IT Services Luxembourg S.a r.l (Civ. No. 14-2832).

## II.  BACKGROUND

WAG is the owner of patents that provide Internet streaming services.  WAG provides these streaming services to radio stations, in order to allow those radio stations to re-broadcast, or stream, their live programming over the Internet.  *See*, *e.g.*, *WAG Acquisition, LLC v. Multi-Media, LLC*, Civil Action No. 14-2340 (ES), Amended Complaint, June 2, 2014, D.E. 24, at 3-5. In these lawsuits, which were commenced between April 2014 and May 2015, WAG alleges that Defendants operate live adult web-cam Internet sites for paying customers, and that those websites, by streaming media over the Internet, infringe certain claims in four of WAG's patents. *Id.* at 10.  The relevant patents are: (1) U.S. Patent No. 8,122,141 ('141 patent); (2) U.S. Patent No. 8,327,011 ('011 patent); (3) U.S. Patent No. 8,185,611 ('611 patent); and (4) U.S. Patent No. 8,364,839 ('839 patent).  *Id.* at 8.

In anticipation of these and other lawsuits that WAG has initiated or might initiate against alleged infringers, WAG entered into certain litigation funding agreements with Woodsford Litigation Funding (US) Limited ("WLF").  These agreements include: (1) an Operating Agreement Amendment ("OAA"), dated February 27, 2012, attached as Exh. 16 to Defendants'

motion to dismiss; (2) an Amended and Restated Investment Agreement ("ARIA"), dated April 3, 2013, and amended and restated on February 14, 2014, attached as Exh. 12 to Defendants' motion to dismiss; and (3) a First Lien Security Agreement ("FLSA"), dated April 3, 2013, attached as Exh. 20 to Defendants' motion to dismiss.

WLF is a corporation both registered and incorporated in England and Wales under company number 8261160. It has a registered office of Monmouth House, 87-93 Westbourne Grove, London W2 4UL. ARIA, Exh. 12, ¶ 1. Pursuant to an Option Agreement dated February 27, 2012, WLF's parent company obtained a ███████ membership interest in WAG which was transferred to WLF on April 3, 2013, via an Assignment and Assumption Agreement and Consent. ARIA, Exh. 12, § C.

Unlike much of the caselaw on which the parties rely for the pending motions challenging standing, WLF is not a licensee or assignee of the patents-in-suit. WLF does not practice the patents-in-suit. Nonetheless, WLF has certain authority concerning the patents, and particularly any litigation involving them. The Operating Amendment Agreement established an advisory board of directors for the litigation. The advisory board consists of four members: (a) two for WAG--William A. Grywalski and Harry E. Emerson; and (b) two for WLF. OAA, Exh. 16, § 3. The advisory board does not actually meet. Instead, all communications pass through WAG's counsel, Lewis, Baach, Kauffmann Middlemiss PLLC. *See*, *e.g.*, Grywalski Dep., Exh. 23, at 152:4-152:9, 155:18-156:25. ████████████████████████ ████████████████ OAA, Exh. 16, § 3.

Under the agreements, WAG retains the following rights: (1) WAG holds legal title to the patents, *see*, *generally*, ARIA, Exh. 12, OAA, Exh. 16, and FLSA, Exh. 20; (2) ████████ ████████████████████████████████████████

5

As a member of WAG, █████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████ WLF, as a member of WAG, ██████████████████████████████

███████████████████████████████████████████████████



WAG gave WLF a security interest

To protect WLF's investment,

## III.   DISCUSSION

### A.   STANDING

Defendants assert by virtue of WAG's agreements with WLF, WAG surrendered all of its substantial rights in the patents-in-suit to WLF, and therefore lacks constitutional and prudential standing to bring these actions.  Accordingly, Defendants contend that the District Court must dismiss these actions pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  WAG argues that the agreements were simply litigation funding agreements which gave WLF certain rights as a secured party, but did not transfer any substantial rights in the patents.  WAG's Opp'n to Defendants' Motion, Dec. 19, 2017, D.E. 165, at 1-3.

Accordingly, WAG maintains that it has both constitutional and prudential standing to bring the instant action.[3]  *Id.*

### 1.  LEGAL STANDARD

To have constitutional standing to bring an action, a party must meet the requirements of Article III.  *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990).  This requirement adheres in every federal action, including patent infringement actions.  *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005).  Article III standing requires that (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted).  Standing must be present when the action is brought, and the plaintiff bears the burden of demonstrating that standing exists.  *Sicom*, 427 F.3d at 975-76.

In addition to constitutional standing, and of particular importance in patent cases, is whether the plaintiff has prudential standing to bring the action.  *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) ("In addition to the three-prong Article III standing test delineated in *Lujan*, standing doctrine embraces judicially self-imposed limits, known as prudential limits, on the exercise of jurisdiction.").  This requirement exists because "[t]he actual or threatened injury required by Article III may exist solely by virtue

---

[3]  At oral argument, WAG stated that it does not seek to add WLF as a plaintiff, either through amendment pursuant to Fed. R. Civ. P. 15 or as an indispensable party under Fed. R. Civ. P. 19, should the Court determine that WAG lacks standing.

of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)). Prudential standing in a patent infringement action flows from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. A patentee includes not only the person to whom the patent was issued, but also successors in title to the patentee. 35 U.S.C. § 100(d). These provisions of the Patent Act require that the party holding legal title to the patent be the one to bring suit for patent infringement. *Sicom*, 427 F.3d at 976.

A patent "is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA*, 944 F.2d 870, 875 (Fed. Cir. 1991). A fundamental right of a patent is exclusivity, specifically the patentee's right to "exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." *Morrow v. Mircosoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (citing 35 U.S.C. §§ 154, 271). "Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights." *Id.* (citing *Lujan*, 504 U.S. at 560–61). At that point, "[t]he party holding the exclusionary rights to the patent suffers legal injury in fact under the statute." *Id.*

When analyzing standing in patent infringement actions, there are generally three categories of plaintiffs: "[1] those that can sue in their own name alone; [2] those that can sue as long as the patent owner is joined in the suit; and [3] those that cannot even participate as a party to an infringement suit." *Morrow*, 499 F.3d at 1339. For standing purposes, the owner of a patent may convey its ownership interest in that patent if it transfers all of the substantial rights in the patent to the transferee. *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir.

2007).  Where all substantial rights in a patent are transferred, the transferee steps into the shoes

of the patentee and can sue in its own name.  *Id.*  In *Alfred E. Mann Foundation for Scientific*

*Research v. Cochlear Corp.,* the Federal Circuit instructed:

> When a sufficiently large portion of this bundle of rights is held by one individual, we
> refer to that individual as the owner of the patent, and that individual is permitted to sue
> for infringement in his own name. When a plaintiff lacking a sufficiently large portion of
> rights brings suit, that plaintiff does not have standing to sue on his own, and the suit
> must be dismissed, or additional holders of rights under the patent must be joined as
> parties to the suit, as appropriate given the plaintiff's status as either an exclusive or a
> nonexclusive licensee.

604 F.3d 1354, 1361 (Fed. Cir. 2010).

    "To determine whether a license agreement has conveyed all substantial rights in a

patent, and is thus tantamount to an assignment, [a court] must ascertain the intention of the

parties and examine the substance of what was granted.  In doing so, it is helpful to look at what

rights were retained by the grantor."  *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378

(Fed. Cir. 2000).  *See also Intellectual Property Dev., Inc.,* 248 F.3d at 1342 ("To determine

whether a patent transfer agreement conveys all substantial rights under a patent to a transferee

or fewer than all of those rights, a court must assess the substance of the rights involved and the

intention of the parties involved." (citing *Vaupel Textilmaschinen KG*, 944 F.2d at 875)).

    "A party that is neither the legal owner of the patent nor the transferee of all substantial

rights in the patent still has standing to sue for infringement if that party has a legally protected

interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from an

act of infringement."  *Propat Int'l Corp.*, 473 F.3d at 1193 (citing *Intellectual Prop. Dev.*, 248

F.3d at 1345-46).  Generally, an exclusive licensee has such an interest.  But to satisfy prudential

standing considerations, the exclusive licensee may need to join the patent owner in any action

brought against the alleged infringer.  *Id.  See also Intellectual Prop. Dev.*, 248 F.3d at 1348

("As a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the *Lujan* requirements."). Conversely, a bare licensee, one who has been promised by the patentee that it will not be sued for any infringing activities, lacks standing to sue third parties for infringing activities. *Propat Int'l Corp.,* 473 F.3d at 1193. Because the bare licensee lacks standing to sue, even joining the patent owner as a party to the litigation likely would not cure the standing issue. *Id.* at 1193-94.

### 2. ANALYSIS

Defendants contend that WAG does not have constitutional standing to bring the instant actions because WAG no longer holds the exclusionary rights in the patents, and therefore, has not suffered constitutional injury in fact. Defendants' Brief in Support of Motion to Dismiss, D.E. 163, Nov. 22, 2017, at 13. Defendants also argue that if this Court finds that WAG has constitutional standing to bring this action, it nonetheless lacks prudential standing because WAG does not hold all substantial rights in the patent. *Id.* at 25. Defendants maintain that as a prudential matter, WLF should have been named as a party to these actions and because it was not, the Court must dismiss these actions. *Id.*

In determining whether WAG has suffered an injury in fact--the first *Lujan* factor--this Court must examine whether WAG transferred all substantial rights in the patents to WLF such that WAG is no longer the patentee that is injured by an act of infringement. Accordingly, the Court must first assess the rights that WAG retained and the rights it transferred to WLF under the terms of the ARIA, FLSA, and OAA.

11

Under the agreements, and as noted earlier, WAG retains the following rights:

(1) WAG holds legal title to the patents.  ARIA, Exh. 12, OAA, Exh. 16; and FLSA, Exh. 20;

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████

WLF has the following rights under the agreements:

(1) WLF retains a ███ membership interest in WAG.  ARIA, Exh. 12, § C;

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████



This matter is distinguishable from much of the caselaw on which the parties rely. Most of those cases involved licensing agreements between the patent owner and a licensee, where some right to practice under the patents, or to assign or license the patents, was transferred to the licensee. The agreements between WAG and WLF are not licensing agreements, and WLF is not afforded any independent rights under the patents at all. Rather, the crux of the issue currently before the Court is what rights were transferred from WAG to WLF as a result of the financing and operating agreements.

The Federal Circuit has instructed that a paramount consideration is which party retains the right to bring litigation to enforce the patent-in-suit. *Alfred E. Mann Foundation for Scientific Research*, 604 F.3d at 1361 ("Frequently, though, the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration. . . . Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee."). Another key factor for the Court to examine in

determining whether all substantial rights in the patents have been transferred is "the exclusive

right to make, use, and sell products or services under the patent." *Id.* at 1360. The Federal

Circuit also has considered the following rights in determining whether all substantial rights in

the patent have been transferred:

> the scope of the licensee's right to sublicense, the nature of license
> provisions regarding the reversion of rights to the licensor
> following breaches of the license agreement, the right of the
> licensor to receive a portion of the recovery in infringement suits
> brought by the licensee, the duration of the license rights granted to
> the licensee, the ability of the licensor to supervise and control the
> licensee's activities, the obligation of the licensor to continue
> paying patent maintenance fees, and the nature of any limits on the
> licensee's right to assign its interests in the patent.

*Id.* at 1360-61. *See also Speedplay, Inc. v. Bishop*, 211 F.3d 1245, 1251-52 (Fed. Cir. 2000)

(holding that an agreement transferring exclusive right to manufacture and distribute products

covered under patent constituted assignment of all substantial rights, despite assignors' retention

of right to sue alleged infringer, where assignee could grant sublicense to alleged infringer).

    In this case, ███████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

Another significant factor in determining who holds substantial rights in the patent is the right to exclude, *i.e.*, "the exclusive right to make, use, and sell products or services under the patent." *Alfred E. Mann Foundation for Scientific Research*, 604 F.3d at 1360.  In this case,

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████.  WAG, as the owner of the patents and holder of legal title to them, has the right to exclude others from making, selling and using the patents.  The ARIA, for example, contains no provision for WLF to practice the patents.  *See generally*, ARIA, Exh. 12.  Therefore, because WAG retains the exclusionary rights in the patents, this factor weighs in favor of the Court finding that WAG has not transferred all substantial rights in the patents.

Two other important rights for the Court to consider are the rights to assign and license,

████████████████████████████████████████████████

██████████████████████████████████████████

The Federal Circuit has found that restrictions on the rights to assign and license may evidence the transfer of all substantial rights in the patent.  *See Intellectual Prop. Dev.*, 248 F.3d at 1343-44; *Speedplay, Inc.*, 211 F.3d at 1251-52.  However, the Federal Circuit also has determined that where restrictions on the rights to assign and license are, themselves, limited by a requirement that the transferor and transferee consent to the assignment or license, and the required consent cannot be unreasonably withheld, such a restriction is not significantly restrictive of the transferor's rights in the patent.  In *Speedplay*, for example, the inventor of

15

bicycle pedals, Richard Bryne, entered into agreements with Speedplay whereby Speedplay was granted a license for a bicycle-pedal patent (the '778 patent), in exchange for common stock grants to Bryne and Steven Zoumaras.  In patent-infringement litigation between Speedplay and a competitor, Bebob Inc., Bebob challenged Speedplay's standing to enforce the '778 patent and other patents.  The Federal Circuit rejected Bebop's challenge.  The Federal Circuit noted that Speedplay alone could enforce the '778 patent.  *Speedplay*, 211 F.3d at 1251.  The Federal Circuit acknowledged that Bryne and Zoumaras could initiate litigation in their own name, if Speedplay failed to address infringement within three months, but noted that Bryne and Zoumaras had no role in infringement litigation initiated by Speedplay.  *Id.*  Moreover, if Byrne and Zoumaras sued a third party for infringement, Speedplay could grant that third party a "royalty-free sublicense[,]" thereby rendering Bryne's and Zoumaras's right to sue "nugatory." *Id.*  Therefore, the Federal Circuit concluded, "Speedplay . . . controls enforcement of the '778 patent for all practical purposes."  *Id.*

The *Speedplay* court also rejected Bebop's argument that limits on Speedplay's ability to assign its license significantly curtailed Speedplay's patent rights.  The court noted that the agreement between Speedplay and Bryne/Zoumaras prohibited Bryne and Zoumaras from unreasonably withholding consent.  *Id.*  The court held that such a provision merely "protected the licensor's consideration, which consisted in part of an ongoing royalty stream."  *Id.* at 1252 (citing *Vaupel*, 944 F.2d at 875).  *See also Intellectual Prop. Dev.*, 248 F.3d at 1343.

As in *Speedplay*, ███████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████     Thus, this factor also weighs in favor of a conclusion that WAG has not transferred all

substantial rights in the patents to WLF.

The Federal Circuit's decision in *Alfred E. Mann Foundation For Scientific Research* is

instructive.  That case raised the question of whether "the patent owner transferred away

sufficient rights to divest it of any right to sue."  *Id.* at 1359.  The Alfred E. Mann Foundation

("Mann") granted an exclusive license for cochlear implants to Advanced Bionics ("Advanced").

Later, Mann sued Cochlear Corporation ("Cochlear") for patent infringement.  Cochlear argued

that Mann lacked standing because Mann had granted an exclusive license in the patents-in-suit

to Advanced.  While in this case only WAG can initiate suit, the agreement between Mann and

Advanced allowed Advanced, on notice to Mann, an absolute right to initiate infringement

litigation.  *Id.* at 1361.  If Advanced declined to sue, Mann could initiate or decline litigation.  *Id.*

Once Advanced or Mann initiated litigation, that party had to consult with the other before it

could settle.  *Id.*  But the filing party enjoyed unfettered discretion on all litigation decisions,

including any final settlement decision.  *Id.*  The Federal Circuit concluded that although Mann's

rights to sue were secondary to Advanced's, Mann's rights nonetheless were sufficient for Mann

to qualify as the owner of the patents.  *Id.* at 1362 ("Once its right to sue an infringer activates,

[Mann] can decide whether or not to bring suit . . . what damages to seek . . . whether to settle the

litigation, and the terms on which the litigation will be settled.").

Advanced's rights equaled or exceeded those of WLF here. For example, Advanced had the exclusive right to make, use, and sell the patents for their full term. *Id.* at 1357. Advanced also had the right to grant sublicenses with pass-through royalties. *Id.* at 1357-58. Nonetheless, the Federal Circuit determined that Mann had retained sufficient rights to confer standing because of Mann's secondary right to sue and control the litigation it initiated. *Id.* at 1363.

The Court is not persuaded by Defendants' contention that WLF suffers the legal injury that would entitle it to be a party to this suit. ███████████████████████ ████████████████████████. As such, the Court struggles to understand how WLF would suffer "legal injury in fact under the statute" if a third party infringed the the patents-in-suit. *Morrow*, 499 F.3d at 1339 (citing 35 U.S.C. §§ 154, 271). ████████████ ████████████████████████████████████████

"implicit in the right to exclude is the right to waive that right." *Morrow*, 499 F.3d at 1342; *see also Prima Tek II*, 222 F.3d at 1379.



*See Speedplay, Inc.*, 211 F.3d at 1251-52. While the instant agreements lack the "unreasonably withheld" limitation in *Speedplay*, it seems evident that sending the decision to a third-party expert in the absence of consent serves a similar purpose.

Defendants also contend that the agreements between WAG and WLF might confer on WLF substantial rights in the patents if certain precedent actions occur.  Federal Circuit has instructed, however, that such contingencies do not confer exclusionary rights on a licensee. *Morrow*, 499 F.3d at 1343 ("whatever interests in the '647 patent may flow to GUCLT in the future are insufficient to convert its equitable future interests in the patent into full legal exclusionary interests as of the time this suit was initiated").[4]

Defendants recite several cases to support their argument that WAG does not retain sufficient rights in the patents to confer standing. Those cases, however, are distinguishable. In those cases, it was much less clear which entity held the substantial rights necessary to confer standing, particularly because they involved licensees. The Federal Circuit's decision in

---

[4] Similarly, Defendants' argument that WLF has obtained a substantial right in the patents because it received a ▇ interest in WAG fails for the reasons stated in *In re Google Litig.*, Civ. No. 08-CV-3172, 2010 WL 5211545 (N.D. Cal. Dec. 16, 2010). In *In re Google*, two parent companies entered into a purchase agreement regarding their respective rights to control their subsidiary, Software Rights Archive, LLC ("Software Rights"). 2010 WL 5211545, *1. Software Rights was the title owner of certain patents, and when it sued for infringement, the defendant moved to dismiss, claiming that the parent company held all substantial rights in the patents. *Id.* The court found:

> the mere fact that Software Rights Archive, LLC is the subsidiary of companies which exercise some or even significant control over it as the result of the corporate structure does not mean that Software Rights Archive LLC has transferred substantial patent rights to its parent companies. Software Rights Archive LLC holds all important rights in the asserted patents, and thus has standing in this case.

*Id.* at *3. For similar reasons, this Court is not persuaded that WLF's ▇ membership interest in WAG somehow transfers a controlling or ownership interest in the patents-in-suit to WLF.

19

*Intellectual Prop. Dev.* is one such example. In that case, CPL held a patent for wired broadcasting systems. During CPL's liquidation, Intellectual Property Development ("IPD") and CPL entered into an agreement whereby IPD obtained the exclusive license to make, use, and sell the inventions under the patent, as well as to sublicense the patent and to initiate infringement proceedings. 248 F.3d at 1336. However, IPD's license was subject to a nonexclusive license already granted to Cabletime. *Id.* at 1337. Also, CPL reserved the right to assign its interest in the agreement with IPD to a third party, and to block IPD from assigning its rights under the agreement. *Id.* Finally, the agreement contemplated that CPL might be a necessary party, in which case CPL had to consent to the litigation. *Id.* at 1344-45.

The Federal Circuit found that although IPD had the exclusive right to "make, use, and sell" the invention claimed in the patent-in-suit, and that right was "substantial," "every other pertinent factor weighs in favor of finding that the agreement is an exclusive license of fewer than all substantial rights in the [patent in suit]." *Id.* at 1344. However, the Federal Circuit looked to IPD's exclusive right to make, use, or sell the invention to determine that IPD had constitutional standing. The Federal Circuit reasoned that the alleged infringement injured IPD's exclusive right, the injury was "fairly traceable" to TCI's alleged infringement, and the injury was redressable under the Patent Act. *Id.* at 1347. The Federal Circuit also found that IPD properly joined CPL as a plaintiff. *Id.* at 1347-48 ("[U]nlike an assignee that may sue in its own name, an exclusive licensee having fewer than all substantial patent rights (that is not subject to an exception) that seeks to enforce its rights in a patent generally must sue jointly with the patent owner.") (citation omitted).

In *Sicom*, the Federal Circuit found that Canada did not convey all substantial rights in the patent to Sicom even though Sicom had the exclusive right to sue for commercial

infringement.  427 F.3d at 979-80.  The Federal Circuit agreed with the district court that

Canada's "restriction on Sicom's right to assign" was a "fatal reservation of rights by Canada."

*Id.* at 979.

In *Propat*, the agreement between Authentix, the holder of title to the patent, and Propat

conferred substantial rights on Propat.  Propat was responsible for bringing infringement actions,

licensing the patent, and enforcing existing licenses.  In return, Propat received a share of

licensing royalties and litigation proceeds.  Propat had to consult with Authentix before initiating

suit, but Authentix could "not unreasonably withhold or delay such approval."  *Propat Int'l*

*Corp.*, 473 F.3d at 1190.  Authentix also had to approve any assignment of rights by Propat.

The Federal Circuit concluded that Propat lacked standing, either by itself or with Authentix.  *Id.*

at 1190-91. Although Propat was responsible for licensing and infringement litigation, the

Federal Circuit noted that "[i]t has long been held that a 'right to sue' clause in a contract,

unaccompanied by the transfer of other incidents of ownership, does not constitute an assignment

of patent rights that entitles the transferee to sue in its own name."  *Id.* at 1192.  In short, the

Federal Circuit held that although Propat enjoyed "broad authority to act as Authentix's agent for

purposes of licensing and litigation," Propat's authority did not amount to ownership of the

patent.  *Id.*  The Federal Circuit emphasized that Authentix remained the patent owner, retained a

financial interest in proceeds from practicing the patent and infringement litigation, and retained

the "right to veto licensing and litigation decisions" that "constitutes a significant restriction on

Propat's interest in the patent[.]"  *Id.* at 1192.

The Federal Circuit also rejected the proposition that the addition of Authentix would

cure Propat's lack of standing.  Relying on *Crown Die & Tool Co. v. Nye Tool & Machine*

*Works*, 261 U.S. 24 (1923), the court found that Propat "lack[ed] important indicia of a true

ownership interest in the patent, such as the right to transfer its interest." *Propat Int'l Corp.*, 473 F.3d at 1194.  Indeed, Authentix could veto any transfer of interest "on any ground[,]" and had to approve any parties whom Propat sought to sue or license.  *Id.*

In the foregoing cases, no one party held all of the rights central to standing.[5]  In the instant case, however, WAG retains the most important rights in the patents.  WAG owns title to the patents. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████ In contrast to the cases discussed above, WLF holds none of the most important and substantial rights in the patents. █

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████. Therefore, the Court concludes that although the restrictions protect WLF's litigation-funding investment, they are not so restrictive as to compel the conclusion that WAG transferred substantial rights in the patents to WLF.

The Court's analysis of the parties' intentions when forming those agreements buttresses this conclusion.  *Prima Tek II*, 222 F.3d at 1378.  The record provides scant indicia that the

---

[5] Defendants' reliance on *Enhanced Security Research LLC v. Juniper Networks, Inc.*, Civ. No. 09-871, 2010 WL 2898298 (D. Del. July 20, 2010) is readily distinguishable.  In concluding that the plaintiff lacked standing, the district court there found a complete transfer of "all substantial rights" to the litigation funding company.  Enhanced had entered into an agreement with Security Research Holdings, a litigation investment and finance company.  The agreement gave Security Research Holdings the exclusive rights to sue for infringement and to transfer title or assign the patents-in-suit.  Although Enhanced retained legal title to the patents-in-suit and the right to practice them, only Security Research Holdings could enforce the patents through litigation and licensing.  *Id.* at *4.  Enhanced had no authority to initiate litigation to enforce the patents-in-suit, or to make licensing and assignment decisions.  Moreover, Enhanced's approval was not necessary for settlement.  Accordingly, the court determined that Enhanced had transferred "all substantial rights to the patents-in-suit[,]" and lacked constitutional standing.  *Id.* at *5.

parties intended to divide the rights in the patents themselves, much less that WLF would practice the patent. Instead, the parties' agreements plainly contemplated that WLF would act as a funding source for litigation on WAG's patents, in exchange for rights as a secured creditor to protect its investment and a share of any recovery. That is evident from the Amended and Restated Investment Agreement and First Lien Security Agreement. ███████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████

███████████████ That is fundamentally different than an intention to confer on WLF substantial rights in the patents themselves. *See*, *e.g.*, *Eidos Display, LLC v. AU Optronics Corp.*, Civ. No. 11-201, 2016 WL 6680578, at *5-6 (E.D. Tex. Nov. 14, 2016) ("a security interest in a patent without more does not generally pose a joinder issue because a security interest in and of itself does not ordinarily create ownership rights in the patent"); *City Bank & Trust Co. v. Otto Fabric, Inc.*, 83 B.R. 780, 782 (D. Kan. 1988) ("[G]rant of a security interest [in a patent] need not include the conveyance of title or ownership rights.").

The Court concludes that under the agreements between the parties, WAG retained all exclusionary and substantial rights in the patents such that WAG possesses constitutional standing to bring this action. Applying *Morrow*, WAG is in the first category of plaintiffs that can sue in their own name, and need not add WLF as a plaintiff. *See Morrow*, 499 F.3d at 1340. In fact, it is evident from the agreements between WAG and WLF that only WAG can initiate enforcement proceedings. Moreover, WAG has retained legal title to the patents. ████████████

█████████████████████████████████████

██████████   Because the Court finds that WAG has retained the requisite legal interest in the patents, it also finds that WAG has suffered a cognizable injury in fact.  Accordingly, WAG has satisfied the first prong of the constitutional standing inquiry.

Consideration of prudential concerns does not alter this analysis.  *Intellectual Prop. Dev.*, 248 F.3d at 1348 ("As a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the *Lujan* requirements.").  A core consideration in assessing prudential standing is whether a division of rights between the parties poses a risk of multiple lawsuits for the same infringement, or inconsistent liability.  *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007).  But the relationship between WAG and WLF does not give rise to this risk.  WAG holds legal title to the patents. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ .

*Eidos Display LLC v. AU Optronics Corporation,* Civ. No. 11-201, 2016 WL 6680578 (E.D. Tex. 2016) is instructive.  In that matter, Eidos Display had borrowed funds from Stairway Capital Management II L.P. (Stairway) to fund the enforcement of certain patents, including the patent-in-suit ('958 patent).  Eidos granted Stairway a security interest in the '958 patent, and obtained an insurance policy that named Stairway as the loss payee.  While Eidos Display was in arbitration proceedings with the insurer, Eidos Display settled its matter with AU Optronics Corporation.  Upon learning of the settlement, Stairway posited that its consent was required to effectuate any release that Eidos Display might provide to AU Optronics Corporation in settlement.  AU Optronics moved to join Stairway as a necessary party under Federal Rule of

Civil Procedure 19(a).  AU Optronics reasoned that Stairway's interest in the '958 patent deprived Eidos Display of settlement authority.  *Eidos Display*, 2016 WL 6680578, at *2-3.

The court construed Stairway's joinder motion as an implicit challenge to Eidos Display's prudential standing.  *Id.* at *3.  "[T]he central question," the court reasoned, "is whether joinder of Stairway is necessary to satisfy prudential standing concerns because patent owner Eidos transferred away sufficient rights in the '958 Patent to Stairway, precluding Eidos from bringing suit without Stairway as co-plaintiff."  *Id.*  The court determined that Stairway was not a necessary party under Rule 19.  The court reasoned that Stairway's security interest in the patent did not equate to an ownership interest in the patent, and that Stairway held no other substantial right in the patent, such as the right to sue or to license or sublicense the patent.  *Id.* at *5.  Finally, the court determined that even if Eidos Display lacked the authority to settle the action absent Stairway's involvement, Stairway's joinder was not necessary because settlement was not imminent.  *Id.* at *6.  The court instructed that if the parties reached agreement on settlement terms, they could then seek a declaration of the settling parties' rights.  *Id.*

Another factor in the prudential standing analysis is whether third parties have interests in the patent that are not represented in the litigation.  *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006) (citing *Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1314 (Fed. Cir. 2005)).  This factor serves two purposes.  First, it seeks to avoid "multiple suits and multiple liabilities against an alleged infringer for a single act of infringement."  *International Gameco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007) (citations omitted).  That risk is not acute in this case.  The agreements do not confer on WLF the right to initiate suit for infringement or to license the patents.  Given that

WAG is the sole owner of the patents-in-suit, and that only WAG can initiate litigation to enforce the patents, there is little if any risk of multiple liabilities for a single act of infringement.

The second purpose of this consideration is whether the third party has interests that are unprotected in the litigation. The agreements between WAG and WLF point to no such interest. WLF's interest is purely financial—in short, if the infringement litigation yields an award to WAG, WLF is remunerated. In that regard, WAG's and WLF's interests are aligned. Accordingly, the Court concludes that Defendants' arguments concerning prudential standing are unpersuasive.

The Court now considers the remaining factors under the *Lujan* test to determine whether WAG has constitutional standing to bring this action. The Court concludes that WAG satisfies the second prong of the *Lujan* inquiry, in that WAG has adequately alleged that its injury is causally related to the allegedly infringing conduct of Defendants. The Amended Complaints allege that the Defendants used WAG's patented technology to stream media content over the Internet to customers who paid Defendants for this service, and that Defendants did so without approval from, or compensation to, WAG. *See*, *e.g.*, *WAG Acquisition, LLC v. Multi-Media, LLC*, Civil Action No. 14-2340 (ES), Amended Complaint, June 2, 2014, D.E. 24, at 3-5. As a result, WAG claims that Defendants infringed numerous claims in WAG's '141, '011, '611, and '839 Patents, without remuneration to, or the consent of, WAG. *Id.* This injury is "fairly traceable" so as to satisfy the causal connection required by *Lujan*.

The Court also finds that WAG has satisfied the third prong of the *Lujan* test for constitutional standing. WAG's injury is redressable because if it is successful in this litigation against Defendants, WAG can recover damages and prevent Defendants from the alleged continuing infringement. Accordingly, the Court finds that WAG satisfies all three prongs of the

26

*Lujan* standing test, and that WAG has both prudential and constitutional standing in this litigation. Thus, Defendants' motion to dismiss for lack of subject matter jurisdiction should fail.

### B. Venue

Defendants also argue that venue is no longer proper in the District of New Jersey following the United States Supreme Court's decision in *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1517 (2017). WAG does not contend that Defendants waived the right to challenge venue under Federal Rule of Civil Procedure 12(h). Instead, WAG asserts that under *In re Micron Tech, Inc.*, 875 F.3d 1091 (Fed. Cir. 2017), this Court should find that Defendants have forfeited their venue argument on other grounds. WAG's Opposition Brief, D.E. 165, Dec. 19, 2017, at 16.

### 1. Legal Standard

Pursuant to the patent venue statute, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In 1957, the United States Supreme Court held that § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)," which is the general venue statute. *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957). The *Fourco* Court also held that a domestic corporation "resides" only in its state of incorporation. *Id.* at 226.

In 1988, Congress amended § 1391(c). The amendment provided that "for purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Pub. L. No. 100-702, 102 Stat. 4642 (1988). *See also* 28 U.S.C. § 1391(c) (1988).

27

In light of this amendment, the Federal Circuit held that § 1391(c) prescribed the definition of "resides" in § 1400(b).  *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1585 (Fed. Cir. 1990), *abrogated by TC Heartland LLC v. Kraft Foods Group Brands*, 137 S. Ct. 1514 (2017).

In *TC Heartland*, the Supreme Court held that the 1988 amendments to § 1391(c) "did not modify the meaning of § 1400(b) as interpreted by *Fourco* . . . . [A] domestic corporation 'resides' only in the State of incorporation for purposes of the patent venue statute."  *TC Heartland*, 137 S. Ct. at 1517.  Therefore, following the ruling in *TC Heartland*, a patent infringement action against a domestic corporation may be brought in the judicial district where the defendant is incorporated, or in a district wherein the defendant has committed acts of infringement and has a regular and established place of business.[6]  *Id.*

Soon after *TC Heartland*, the Federal Circuit clarified what constitutes "a regular and established place of business" under § 1400(b).  *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).  *Cray* held that a "regular and established place of business" under § 1400(b) requires that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *Id.* at 1360.  The *Cray* court concluded that the fact that Cray had allowed two of its employees to work from their homes within the Eastern District of Texas did not confer venue within that district.  *Id.* at 1366.

---

[6]  The post-*TC Heartland* definition of "resides" also applies to limited liability companies.  *See*, *e.g.*, *Telebrands Corp. v. Seasonal Specialties, LLC*, No. 17-3390, 2017 U.S. Dist. LEXIS 143900 (D.N.J. Sep. 6, 2017) (granting motion to transfer venue by a limited liability company defendant); *Boston Sci. Corp. v. Cook Grp., Inc.*, No. 15-980, 2017 U.S. Dist. LEXIS 146126 (D. Del. Sept. 11, 2017) (granted post-*TC Heartland* motion to transfer for improper venue made by limited liability company defendant); *Maxchief Invs., Ltd. v. Plastic Dev. Grp.*, LLC, No. 16-63, 2017 U.S. Dist. LEXIS 128432 (E.D. Tenn. Aug. 14, 2017) (*TC Heartland* definition of "resides" applies to unincorporated associations like limited liability companies).

Under Rule 12(b)(3), a defendant objecting to venue may move to dismiss the action.

Rule 12(h)(1), however, governs whether a party waives the right to challenge venue.  Rule

12(h)(1) provides:

> (h)      Waiving and Preserving Certain Defenses
>
> (1)      When Some Are Waived.  A party waives any defense listed in Rule
>          12(b)(2)-(5) by:
>
>          (A)      omitting it from a motion in the circumstances described in Rule
>                   12(g)(2); or
>
>          (B)      failing to either:
>                   (i)      make it by motion under this rule; or
>                   (ii)     include it in a responsive pleading or in an amendment
>                            allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1).  Pursuant to Rule 12(g)(2), a party "must not make another motion

under this rule raising a defense or objection that was available to the party but omitted from its

earlier motion."  Fed. R. Civ. P. 12(g)(2).  Rule 12(g) "does not preclude the filing of a second

motion pursuant to Rule 12 where the defense or objection was not available at the time of the

filing of the initial motion."  *Jewett v. IDT Corp.*, Civ. No. 04-1454, 2008 WL 508486, at *2

(D.N.J. Feb. 20, 2008).  Because *TC Heartland* changed the meaning of "resides" under §

1400(b), any objection to venue based thereon did not exist before *TC Heartland*.  *In re Micron

Tech. Inc.,* 875 F.3d at 1101.

### 1. ANALYSIS

#### a. Defendants Do Not Reside in New Jersey and Do Not Have a "Regular and Established Place of Business" in New Jersey

The parties do not appear to dispute that for six of the seven cases currently before the Court, venue in the District of New Jersey is no longer proper under *TC Heartland*.[7]  Indeed, none of the Defendants is incorporated in New Jersey[8] and WAG does not allege otherwise in its Complaints.  WAG does not allege, nor does the record indicate, that any of the Defendants in the motions presently before the Court has a "regular and established place of business" in New Jersey.

---

[7]  The Court separately addresses below WAG's cross-motion to dismiss Docler Media LLC without prejudice as a Defendant, and whether the dismissal of Docler Media would render venue proper in this district.  *WAG Acquisition, LLC v. Gattyán Group S.à.r.l.*, Civil Action No. 14-2832 (ES), D.E. 152, Dec. 19, 2017 (cross-motion to dismiss).  Also, the Court will not address whether venue is proper in *WAG Acquisition, LLC v. Sobonito Investments, Ltd., et al.*, Civil Action No. 14-1661 (ES), which is the subject of a separate motion to dismiss for lack of personal jurisdiction pending before this Court.

[8]  Multi Media, LLC ("Multi Media") is a limited liability company formed under California law.  *WAG Acquisition, LLC v. Multi-Media, LLC*, Civil Action No. 14-2340 (ES), Declaration of Pooya Woodcock, at ¶ 6.  Defendants WMM, LLC and WMM Holdings, LLC (collectively "WMM") are limited liability companies formed under Nevada law. *WAG Acquisition, LLC v. Data Conversions, Inc.*, Civil Action No. 14-2345 (ES), Declaration of William Raines, at ¶¶ 8, 12.  Accretive Technology Group, Inc. and ICF Technology, Inc. are incorporated in the State of Washington and Riser Apps, LLC is a limited liability company formed under Washington law. *WAG Acquisition, LLC v. Flying Crocodile, Inc.*, Civil Action No. 14-2674 (ES), Declaration of Shawn Boday, at ¶¶ 3-4.  Docler Media is a limited liability company formed under California law.  *WAG Acquisition, LLC v. Gattyán Group S.à.r.l.*, Civil Action No. 14-2832 (ES), Declaration of Balazs Sipocz, at ¶ 3.  FriendFinder Networks, Inc. is incorporated in the State of Delaware and Streamray Inc. is incorporated in the State of Nevada.  *WAG Acquisition, LLC v. FriendFinder Networks, Inc.*, Civil Action No. 14-3456 (ES), Declaration of Ezra Shashoua, at ¶¶ 5-9.  Vubeology is incorporated in the State of Nevada.  *WAG Acquisition, LLC v. Vubeology, Inc.*, Civil Action No. 14-4531 (ES), Declaration of Shawn Boday, at ¶ 10.  WebPower, Inc. is incorporated in the State of Florida. *WAG Acquisition, LLC v. WebPower, Inc.*, Civil Action No. 15-3581 (ES), Declaration of Mark Albers, at ¶ 6.

### b. Defendants Did Not Waive or Forfeit the Venue Defense

WAG does not contend, nor could it based on *Micron*, that the venue challenge was available to Defendants pre-*TC Heartland* and that Defendants therefore waived it under Rule 12(h)(1). WAG's Brief in Opposition, Dec. 19, 2017, D.E. 165, at 16. *See also Micron*, 875 F.3d at 1099 ("That change of law, by severing § 1400(b) from § 1391(c), made available to Micron in this case the objection that it does not come within the meaning of 'resides' for purposes of venue under § 1400(b). That position was not available for the district court to adopt before the Court decided *TC Heartland*, because controlling precedent precluded disposition of the position."). Instead, WAG argues that this Court should find that Defendants have forfeited the venue defense based on other considerations contemplated by the court in *Micron*.

In *Micron*, the Federal Circuit found that Micron did not waive a venue challenge under Rule 12(h)(1) because the challenge was unavailable until after *TC Heartland*. *Micron*, 875 F.3d at 1101-02. But rather than dismiss or transfer the case, the Federal Circuit remanded for the district court to consider whether Micron had forfeited the venue challenge for reasons separate from Rule 12(h)(1) waiver. *Id.* Relying on *Dietz v. Bouldin, Inc.*, 136 S. Ct. 1885, 1891 (2016), the Federal Circuit allowed that Federal Rule of Civil Procedure 1[9] and the district court's inherent authority might supply a basis to find forfeiture. *Id.* at 1100-01. The Federal Circuit declined to "elaborat[e] on when such determinations may be soundly reached and what other considerations, if any, might be relevant within the *Dietz* framework." *Id.* at 1101. However, *Micron* noted that courts should consider, inter alia, (1) how much time elapsed between the

---

[9] Federal Rule of Civil Procedure 1 provides in pertinent part: "These rules shall govern the procedure in all civil actions and proceedings in the United States district courts . . . .They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

defense becoming available and the defendant mounting the venue challenge; (2) whether the case is close to trial; and (3) whether the defendant tactically deferred voicing a preference for a different venue, such that an earlier declaration likely would have altered the litigation. *Id.* at 1102.

Having determined that Defendants have not waived the venue challenge under Rule 12(h)(1), the Court must now consider whether, in light of *Micron*, the Defendants waived the venue challenge under the "less bright-line, more discretionary framework" under Rule 1 and the District Court's inherent powers. *Micron*, 875 F.3d at 1094. *See also Chamberlain Group, Inc. v. Techtronic Indus. Co.*, 315 F. Supp. 3d 977, 1008 (N.D. Ill. 2018). The Defendants point out that in the wake of *TC Heartland,* courts have transferred cases much older and farther along than the cases currently before the Court. Defendants' Brief in Support of Motion to Dismiss, Nov. 22, 2017, D.E. 162, at 37. But most of those decisions pre-dated *Micron* and therefore are of limited utility. For example, Defendants point out that in *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, No. 12-1200, 2017 U.S. Dist. LEXIS 123556 (D. Minn. Aug. 4, 2017), the district court transferred the matter despite it being five years old and having held hearings on *Markman* and summary judgment. *Id.* But that court had no opportunity to consider *Micron*, which had not yet issued. On a petition for mandamus, the Federal Circuit vacated and remanded the case to the district court to reconsider its decision in light of *Micron*. *In re: Cutsforth, Inc.,* Civ. No. 12-1200, 2017 WL 5907556 (Fed. Cir. Nov. 15, 2017). The Defendants' reliance on *Maxchief Invs. Ltd. v. Plastic Dev. Group*, Civ. No. 16-63, 2017 WL 3479504 (E.D. Tenn. Aug. 14, 2017) is similarly flawed. In *Maxchief Invs. Ltd.,* the district court found that *TC Heartland* represented an intervening change in the law and that defendants did not waive it under Rule 12(h). *Maxchief Invs. Ltd.*, 2017 WL 3479504, at *3. Given that *Micron* had not yet issued, the

court did not consider whether other factors under Rule 1 or otherwise might nonetheless
constitute waiver. *See also* Defendants' Brief in Support of Motion to Dismiss, Nov. 22, 2017,
D.E. 162, at 37 (discussing *Ironburg Inventions Ltd. v. Valve Corp.,* 2017 U.S. Dist. LEXIS
122219 (N.D. Ga. Aug. 3, 2017)).

 WAG urges the Court to find waiver for a variety of reasons. Principally, WAG argues
that most of these cases are four years old, they have been vigorously litigated, substantial
discovery has been taken on liability, and that "only a few steps remain until trial." WAG's
Brief in Opposition, Dec. 19, 2017, D.E. 165, at 18-19. Moreover, WAG contends transfer of
some or all of these seven cases would implicate many different courts with a replication of
resources. *Id.* at 18. WAG concedes that a *Markman* hearing has not yet been scheduled, but
contends that substantial claim construction activity has taken place. *Id.* WAG contends that for
all of these reasons, sending these cases to other courts will require duplication of effort, and in
any event, trial is near. *Id.* at 19.

 It is true that these cases have been extensively litigated. This Court and the District
Court have presided over myriad motions and discovery issues. There also were extensive
review proceedings before the Patent Trial and Appeal Board. However, WAG's suggestion that
"only a few steps remain until trial" is wholly unpersuasive, particularly when compared to
*Micron*. *Micron* referenced cases that were within two or three months of trial, and one case that
was less than two weeks from trial. *Micron*, 875 F.3d at 1102 n.4 (citing *In re Nintendo of Am.
Inc.*, Civ. No. 13-4987, 2017 WL 4581670 (Fed. Cir. July 26, 2017) (objection to venue made
less than three months before trial); *In re Techtronic Indus. N. Am., Inc.*, Civ. No. 17-125, 2017
WL 4685333, at *1 (Fed. Cir. July 25, 2017) (venue motion made less than two months before
trial); *In re Hughes Network Sys., LLC*, Civ. No. 17-130, 2017 WL 3167522, at *1 (Fed. Cir. July

24, 2017) (same); *In re Sea Ray Boats, Inc.*, 695 Fed. Appx. 543, 543–44 (Fed. Cir. 2017) (venue objection made two weeks before trial)).  The procedural posture of these cases is substantially different.  In this case, no *Markman* hearing has been scheduled and summary judgment motions have not been filed.

WAG also argues that Defendants waived the venue challenge because they tactically failed to raise it earlier in the litigation.  WAG argues that Defendants could have raised transfer for convenience nearly four years before the *TC Heartland* decision but chose not to.  WAG's Brief in Opposition, Dec. 19, 2017, D.E. 165, at 20.  WAG also argues that Defendants similarly said nothing during the pendency of *TC Heartland* even though the Supreme Court granted certiorari in December 2016.  *Id.*  WAG also points to a proposed amended pleading filed two days after the *TC Heartland* decision and which indicated that venue was proper in New Jersey. *Id.*

WAG's argument that the Defendants were dilatory taking action after *TC Heartland* issued is unpersuasive.  The Supreme Court issued its decision in *TC Heartland* on May 22, 2017.  Less than three weeks later, on June 12, 2017, the parties filed a joint letter informing the Court that the parties had contrary positions on whether venue was proper in New Jersey after *TC Heartland*, and whether Defendants should be permitted to move to dismiss or transfer venue.  *WAG Acquisition LLC v. MultiMedia LLC*, Civ. No. 14-2340, Joint Letter, June 12, 2017, D.E. 144.  The parties reported that they had met and conferred to try to resolve the matter informally, albeit unsuccessfully, and requested a conference with the Court.  The Defendants made clear they regarded venue in New Jersey as improper and sought leave to move for transfer or dismissal.  *Id.* at 5, 11.  Accordingly, the defense raised the venue challenge with both Plaintiff and the Court within three weeks of *TC Heartland*.  In view of the anticipated challenge

34

to standing based on WAG's and WLF's agreements, it was decided that the parties would brief all of the motions at the same time.  Order, Oct. 2, 2017, D.E. 147 (terminating venue motions and setting forth briefing schedule to address standing issue under Rule 12(b)(1) in addition to venue challenges).

WAG fails to cite any caselaw to support its position that delay of a month or less after *TC Heartland* constitutes an undue delay sufficient to find waiver.  This Court's own research discloses that where courts have rejected venue challenges due to undue delay in moving after *TC Heartland*, the delays usually were a matter of months.  *See, e.g., Red Carpet Studios v. Midwest Trading Group, Inc.*, Civ. No. 12-501, 2018 WL 4300544, at *2-3 (S.D. Ohio Sept. 10, 2018) (denying transfer motion where defendant moved six months after *TC Heartland* was decided) (citing *Intellectual Ventures II LLC v. FedEx Corp.*, Civ. No. 16-980, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) (denying venue motion based on delay of more than two months); *Kaist IP US LLC v. Samsung Elecs. Co.*, Civ. No. 16-1314, 2017 WL 7058227, at *2 (E.D. Tex. Dec. 18, 2017) (delays of four and five months warranted denial of venue challenge); *Akeso Health Sciences LLC v. Designs for Health Inc.*, Civ. No. 16-7749, 2018 WL 2558420, at *3 (denying venue motion where defendant did not move until seven months after *TC Heartland* and trial preparations were underway).[10]

---

[10]  As the court in *Red Carpet Studios* noted, in *National Prods., Inc. v. Arkon Resources, Inc.*, Civ. No. 15-1984, 2018 WL  1457254 (W.D. Wa. Mar. 23, 2018), the court found that defendants had not waived their venue challenge, despite that defendants did not move until six months after *TC Heartland*.  *National Prods. Inc.*, 2018 WL 1457254, at *5.  The *National Prods.* court characterized the six-month delay as "at best, on the outer edge of what might be a reasonable period of time for these motions."  *Id.*  But that court rested its decision on the fact that, as here, discovery was not complete, dispositive motions had not been filed, and the cases were not close to trial.  *Id.*

WAG also contends that transfer would cause it to suffer prejudice and inconvenience due in part to the age of the cases, the amount of work that has been done on them, and the fact that the judges of this Court have knowledge of the issues in these cases from managing them. But this argument is flawed for two reasons. First, WAG offers no reason why the extensive discovery conducted in these cases, and the litigation tasks completed thus far, somehow would be wasted following transfer. *See National Prods. Inc*., 2018 WL 1457254, at *5 (rejecting plaintiff's prejudice argument where defendants sought to transfer multiple cases still in discovery, in part because "[t]he court sees no reason why the work done so far by the parties will be wasted following transfer"). Moreover, the work completed thus far is qualitatively different than transfer from a court that has considered infringement issues on the merits, such as by completing *Markman* hearings or ruling on summary judgment, none of which has occurred here. As such, the Court cannot find that WAG has articulated a prejudice sufficient to vary from adherence to § 1400(b) and *TC Heartland*. *Micron*, 875 F.3d at 1100-01 (quoting *Dietz*, 136 S. Ct. at 1892). Second, it is not at all clear that WAG's prejudice and inconvenience contentions are relevant to this Court's venue analysis. *See Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("venue requirements exist for the benefit of defendants"); *Columbia Sportswear N.Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 15-64, 2017 U.S. Dist. LEXIS 143016, at *28 (D. Or. Sep. 5, 2017) ("prejudice to the plaintiff is not a relevant consideration" in a transfer analysis based on improper venue). Therefore, the Court is unpersuaded by WAG's argument that any prejudice or inconvenience it may suffer requires this Court to find that Defendants forfeited their venue defense. Accordingly, the Court finds that Defendants have not forfeited their venue defense, venue is not proper in this district, and it must now determine whether to dismiss or transfer these actions.

### c. Transfer Based on Improper Venue

Pursuant to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." Defendants argue that the Court should dismiss, rather than transfer, the cases because there is no compelling reason to transfer. Defendants' Brief in Support of Motion to Dismiss, Nov. 22, 2017, D.E. 163, at 36. The Court disagrees. Most of these cases are four years old and, as noted above, have been litigated extensively. The Court cannot conceive of any valid purpose to be served by requiring WAG to refile the cases in the appropriate venues. Instead, the interests of justice resoundingly favor transfer of the cases to allow the parties to "'to continue this litigation from where it stands.'". *National Prods. Inc.*, 2018 WL 1457254, at *5 (quoting *Warrington v. Gibson*, Civ. No. 94-119, 1995 WL 1945557, at *6 (N.D. Miss. June 8, 1995)).

### d. Dismissal of Docler Media without Prejudice

*WAG Acquisition, LLC v. Gattyán Group S.à.r.l.*, Civil Action No. 14-2832 (ES), consists of two Defendants: (1) DuoDecad IT Services Luxembourg S.à.r.l., which is organized and has its principal place of business in Luxembourg; and (2) DuoDecad IT Services USA LLC, a limited liability company organized under the laws of the State of California. Plaintiff's Brief in Support of Cross-Motion, Dec. 19, 2017, D.E. 153, at 22. Together these companies comprise part of the "Docler Group."[11] *Id.* Because Docler-Luxembourg is a foreign entity, *TC Heartland* does not apply to it.

---

[11] For ease of reference, the Court will refer to DuoDecad IT Services Luxembourg as "Docler-Luxembourg," and DuoDecad IT Services USA LLC as "Docler-U.S."

Defendants seek a transfer under 28 U.S.C. § 1404 to the Central District of California under 28 U.S.C. § 1404. Defendants' Brief in Support of Motion to Dismiss, Nov. 22, 2017, D.E. 148, at 38. WAG cross-moves to dismiss Docler-U.S. from the action. WAG represents that testimony of Docler representatives in June 2017 established that Docler-U.S.'s involvement is limited to marketing, and that it has "no direct role in the infringement." Plaintiff's Reply Brief in Further Support of Cross-Motion, Jan. 3, 2018, D.E. 159, at 2. WAG represents that it "will not pursue Docler-U.S. for its current activities within the Docler Group." *Id.* However, WAG is reticent to dismiss Docler-U.S. with prejudice, because it fears that under *Kessler v. Eldred*, 206 U.S. 285 (1907) and *Brain Life LLC v. Elekta, Inc.*, 746 F.3d 1045 (Fed. Cir. 2014), subsequent reorganization by the Docler Group could convey a license to the patents-in-suit to the Docler Group, or an entity thereof. Accordingly, WAG seeks to dismiss Docler-U.S. without prejudice under Rule 41.

Defendants argue that if the Court is inclined to dismiss Docler-U.S. rather than transfer Civil No. 14-2832 to the Central District of California, the Court should dismiss Docler-U.S. with prejudice. Defendants argue that the *Kessler* doctrine does not apply, and that WAG seeks to dismiss Docler-U.S. solely to secure continuing venue in New Jersey in its case against Docler-Luxembourg. Defendants' Reply Memorandum, Dec. 26, 2017, D.E. 154, at 13. Defendants argue that after almost four years of litigation this matter, WAG's application amounts to gamesmanship. *Id.* Further, Defendants contend that WAG cannot satisfy the factors this Court must consider in deciding a motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2). *Id.* at 13-14.

Federal Rule of Civil Procedure 41 provides in pertinent part that "[a]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

Fed. R. Civ. P. 41(a)(2). When determining whether to grant a motion for voluntary dismissal under Rule 41(a)(2), a court must consider:

> (1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by defendants in preparing for trial; (3) the extent to which the current suit has progressed; (4) plaintiffs' diligence in bringing the motion to dismiss and the rationale for it; and (5) the pendency of a dispositive motion by the non-moving party.

*Williamson v. Daiichi Sankyo, Inc.*, Civ. No. 16-5371, 2017 WL 2226734, at *3 (D.N.J. May 22, 2017) (quoting *Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs.*, Civ. No. 10-2513, 2012 WL 727943, at *2 (M.D. Pa. Mar. 6, 2012)). Whether to grant or deny a motion for voluntary dismissal is within the discretion of the district court. *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990). Such motions are liberally granted "unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *Id.*

The most significant factor for the Court's consideration in granting a motion under Rule 41(a)(2) is whether the non-moving party will likely suffer prejudice as a result of the dismissal. *Williamson*, 2017 WL 2226734, at *3. *See also*, 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE § 2364, at 469 (3d ed. 2008) ("Many courts have taken the sensible position that dismissals without prejudice generally should be granted by the district court if no prejudicial effects would result for the opposing party."); *id.* at 474-476 ("Accordingly, a very significant number of courts have followed the traditional principle recognized by federal courts that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit."). In this case, the Defendants have not identified any such prejudice. *See, e.g.*, Defendants' Reply Brief, Dec. 26, 2017, D.E. 154, at 13-14; Defendants' Sur-Reply Brief in Response to Plaintiff's Cross-Motion, Jan. 5, 2018, D.E. 160, at 4-6. WAG has unambiguously expressed its position that discovery to

date reveals that Docler-U.S. played no material role in the infringement, and that it intends to proceed solely against Docler-Luxembourg.  Given WAG's representations to this Court, it is difficult to conceive of a circumstance wherein WAG could resume infringement litigation against Docler-U.S. for the patents-in-suit.  Accordingly, this factor weighs heavily in favor of dismissal without prejudice.  For those reasons as well, this Court cannot conclude that a second litigation is at all likely, much less that it would pose "excessive and duplicative expense." *Williamson*, 2017 WL 2226734, at *3.

The third factor—the effort and expense incurred by defendants in preparing for trial— also weighs in favor of dismissal without prejudice.  The Court cannot find prejudice deriving from undue discovery burdens on Docler-U.S.  WAG contends, and Defendants do not dispute, that when WAG served discovery requests on both Docler-Luxembourg and Docler-U.S., those defendants produced one collective response.  Plaintiff's Reply Brief, Jan. 3, 2018, D.E. 159, at 4.  Additionally, when the Rule 30(b)(6) deposition was noticed for the Defendants, the Docler Defendants produced corporate representatives solely in Luxembourg and those representatives spoke on behalf of both entities.  *Id.*  No depositions were conducted in California, where Docler-U.S. was formed.  *Id.*  Moreover, there is no suggestion that Docler-U.S. has incurred any substantial costs as a result of this litigation.

The fourth factor—WAG's timeliness in bringing the motion and rationale—also supports dismissal without prejudice.  Regarding timeliness, Defendants' argument that WAG is displaying gamesmanship in seeking to dismiss Docler Media now to cure venue problems is unavailing.  WAG completed the Docler Rule 30(b)(6) deposition in June 2017 regarding the structure of the Docler Group and the relationship and roles of Docler-Luxembourg and Docler-U.S.  It moved for dismissal approximately six months later.  Although WAG could have filed

the motion sooner, the Court cannot find unreasonable delay or unfair advantage by WAG, or prejudice that Defendants suffered, by WAG's filing in December 2017.  To the contrary, in that interim period, the parties were filing the motions addressed in this Report and Recommendation.  *See, e.g.,* D.E. 140, 143, 145, 147, 148, 149, 152, 153; Order, Oct. 2, 2017, D.E. 147 (terminating venue motions and setting forth briefing schedule to address standing issue under Rule 12(b)(1) in addition to venue challenges).

With regard to WAG's rationale, it asserts that "[u]nder the *Kessler* doctrine . . . dismissal of an alleged patent infringer with prejudice can be held to constitute the effective grant of a license to practice under the asserted patent."  Plaintiff's Reply Brief, Jan. 3, 2018, D.E. 159, at 3 (citing *Kessler v. Eldred*, 206 U.S. 285 (1907)).  WAG is concerned that if the Court dismisses Docler-U.S. with prejudice, any corporate reorganization by the Docler Group could effectively convey a license of the patents-in-suit to the Docler Group.  The *Kessler* Doctrine was applied in *Brain Life, LLC v. Elekta Inc.*, and "a later-filed lawsuit on the same patent and the same products was foreclosed due to the earlier final judgment of non-infringement" because the Court held that "by virtue of gaining a final judgment of noninfringement in the first suit – where all of the claims were or could have been asserted against Elekta – the accused devices acquired a status as noninfringing devices, and Brain Life is barred from asserting that they infringe the same patent claims a second time."  746 F.3d 1045, 1055-59 (Fed. Cir. 2014).

Defendants argue that WAG's *Kessler* doctrine concerns are misplaced because there is no second lawsuit here as there was in *Brain Life*.  That argument misses the mark.  In proposing to dismiss Docler-U.S. without prejudice, WAG seeks to prevent entry of a final judgment against Docler-U.S.  In fact, the Federal Circuit has instructed that a Rule 41 dismissal with

prejudice would operate as "an adjudication on the merits in favor of the defendant." *Highway Equip. Co. v. FECO Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006). The final judgment might allow a Docler entity, upon reorganization, to practice the patents-in-suit, and a court to apply the *Kessler* doctrine to preclude WAG from enforcing those patents. The Court need not decide today whether the *Kessler* doctrine would so apply; it is satisfied that WAG has articulated a rationale that is neither frivolous nor gamesmanship. Moreover, even if the Court concluded otherwise, the foregoing analysis makes clear that the other factors weigh strongly in favor of dismissal without prejudice.

Finally, the Court notes that Defendants' motion to transfer this case to the Central District of California is inconsistent with Rule 1's mandate to "secure the just, speedy, and inexpensive determination" of this case. The exiguous premise on which Defendants base this motion is that Docler-U.S. is a California limited liability. There is no dispute that as to Docler-Luxembourg, the actual defendant in interest in this case, venue is proper in the District of New Jersey. This Court has overseen this matter since its inception and is well familiar with the factual and legal issues. The Defendants' motion would have this Court transfer this four-year-old case to a different district solely because Docler-U.S., which WAG has acknowledged did not infringe and which WAG seeks to dismiss, is organized there.

Accordingly, the Court will recommend that the District Court deny Defendants' motion to transfer *WAG Acquisition LLC v. Gattyan Group*, Civ. No. 14-2832, to the Central District of California. The Court further will recommend that the District Court dismiss Docler-U.S. without prejudice.

## IV.  CONCLUSION

For the reasons stated above, this Court respectfully recommends that the District Court:

(1) Deny Defendants' motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1);

(2) Deny Defendants' motions to dismiss for improper venue pursuant to 28 U.S.C. §§ 1400(b), 1406;

(3) Grant Defendants' motions to transfer venue pursuant to 28 U.S.C. §§ 1400(b), 1406; as follows:

(a) Transfer *WAG v. Multi-Media, L.L.C.*, Civil Action No. 14-2340 to the United States District Court for the Central District of California;

(b) Transfer *WAG v. Data Conversions, Inc.*, Civil Action No. 14-2345 to the United States District Court for the District of Nevada;

(c) Transfer *WAG v. Flying Crocodile, Inc.*, Civil Action No. 14-2674 to the United States District Court for the Western District of Washington;

(d) Transfer *WAG v. Friendfinder Networks Inc.*, Civil Action No. 14-3456 to the United States District Court for the Northern District of California;

(e) Transfer *WAG v. Vubeology, Inc.*, Civil Action No. 14-4531 to the United States District Court for the Western District of Texas; and

(f) Transfer *WAG v. Webpower, Inc.*, Civil Action No. 15-3581 to the United States District Court for the Southern District of Florida.

In *WAG Acquisition LLC v. Gattyan Group*, Civ. No. 14-2832, the Undersigned respectfully recommends that the District Court: (1) grant WAG's cross-motion to dismiss

Defendant Docler-U.S. without prejudice under Fed. R. Civ. P. 41(a)(2); and (2) deny

Defendants' motion to transfer this matter pursuant to 28 U.S.C. § 1404(a).

     The parties have fourteen days to file and serve objections to this Report and

Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2).[12]


 

*s/ Michael A. Hammer*
_____
**UNITED STATES MAGISTRATE JUDGE**


Dated: October 22, 2018

---

[12] This Opinion will be filed under seal to give the parties an opportunity to move to seal pursuant to Local Civil Rule 5.3 should any part of the Opinion contain confidential or highly sensitive materials.  Any such motion shall be filed by November 21, 2018.