## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WAG ACQUISITION, LLC,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**MULTI MEDIA, LLC,** *et al.*,<br><br>   **Defendants.** | Civil Action No.: 14-2340 (ES) (MAH) |
| **WAG ACQUISITION, LLC,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**DATA CONVERSIONS, INC.,** *et al.*,<br><br>   **Defendants.** | Civil Action No.: 14-2345 (ES) (MAH) |
| **WAG ACQUISITION, LLC,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**FLYING CROCODILE, INC.,** *et al.*,<br><br>   **Defendants.** | Civil Action No.: 14-2674 (ES) (MAH) |

| | |
|---|---|
| WAG ACQUISITION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GATTYÁN GROUP S.à.r.l., *et al.*,<br><br>Defendants. | Civil Action No.: 14-2832 (ES) (MAH) |
| WAG ACQUISITION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FRIENDFINDER NETWORKS INC., *et al.*,<br><br>Defendants. | Civil Action No.: 14-3456 (ES) (MAH) |
| WAG ACQUISITION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VUBEOLOGY, INC., *et al.*,<br><br>Defendants. | Civil Action No.: 14-4531 (ES) (MAH) |
| WAG ACQUISITION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WEBPOWER, INC., *et al.*,<br><br>Defendants. | Civil Action No.: 15-3581 (ES) (MAH)<br><br>**OPINION ADOPTING<br>REPORT & RECOMMENDATION** |

## SALAS, DISTRICT JUDGE

Pending before the Court is a joint motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, to dismiss or transfer for improper venue under the patent venue statute, 28 U.S.C. § 1400(b), filed by Defendants.[1] (D.E. No. 162).[2] Plaintiff WAG Acquisition, LLC ("Plaintiff") opposes the motions. (D.E. No. 165). Also before the Court is Plaintiff's cross-motion to dismiss Defendant Docler Media, LLC as a Defendant (D.E. No. 152), which Defendants Docler Media, LLC and Duodecad IT Services Luxembourg S.a.r.l. oppose (D.E. No. 154).[3]

On October 23, 2018, Magistrate Judge Michael A. Hammer issued a Report and Recommendation (D.E. No. 175 ("R&R")) recommending that this Court: (i) deny the joint motion to dismiss for lack of subject-matter jurisdiction filed by all Defendants in the above-captioned cases; (ii) deny Defendants' joint motion to dismiss for improper venue; (iii) grant Defendants' joint motion to transfer venue as to *WAG v. Multi Media, LLC* (Civ. No. 14-2340); *WAG v. Data Conversions, Inc.* (Civ. No. 14-2345); *WAG v. Flying Crocodile, Inc.* (Civ. No. 14-2674); *WAG v. FriendFinder Networks, Inc.* (Civ. No. 14-3456); *WAG v. Vubeology, Inc.* (Civ. No. 14-4531); and *WAG v. WebPower, Inc.* (Civ. No. 15-3581); (iv) grant Plaintiff's cross-motion to dismiss

---

[1] This litigation is proceeding against various Defendants across the above-captioned related actions. The following Defendants have signed on to the pending motion to dismiss: Multi Media, LLC; FriendFinder Networks Inc.; Streamray Inc.; WMM, LLC; WMM Holdings, LLC; WebPower; Accretive Technology Group, Inc.; ICF Technology Group, Inc.; Riser Apps, LLC; Duodecad IT Services Luxembourg S.a.r.l.; Docler Media LLC; and Vubeology, Inc. (*See* Civil Action No. 14-2340, D.E. No. 163 at 49–51).

[2] For ease of reference, all citations will be to docket entries in the lead case, *WAG Acquisition, LLC v. Multi Media, LLC*, Civil Action No. 14-2340, unless otherwise noted.

[3] All references to this motion and the documents pertaining thereto relate to *WAG Acquisition, LLC v. Gattyán Group S.a.r.l.*, Civil Action No. 14-2832.

Defendant Docler Media, LLC as a Defendant without prejudice; and (v) deny Defendants' motion to transfer venue as to Defendant Duodecad IT Services Luxembourg S.a.r.l. (Civ. No. 14-2832). The parties were given notice that they had fourteen days from their receipt of the Report and Recommendation to file and serve any objections pursuant to Local Civil Rule 72.1(c)(2). (R&R at 44). Defendants timely filed a joint objection (D.E. No. 176 ("Def. Obj.")), and Plaintiff timely filed a response (D.E. No. 181 ("Pl. Resp.")).

Having carefully reviewed the Report and Recommendation *de novo* and the submissions by the parties, the Court hereby ADOPTS the well-reasoned and thorough Report and Recommendation of Judge Hammer. In addition to adopting the facts, the procedural history, the summary of the parties' arguments, the discussion, and the conclusions of Judge Hammer, the Court addresses Defendants' main objections to the Report and Recommendation and Plaintiff's main responses.

## I. Legal Standard

When a magistrate judge addresses motions that are considered "dispositive," such as to grant or deny a motion to dismiss, a magistrate judge will submit a report and recommendation to the district court. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate. The district judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(C); *see also* L. Civ. R. 72.1(c)(2). Unlike an opinion and order issued by a magistrate judge, a report and recommendation does not have the force of law unless and until the district court enters an order accepting or rejecting it. *United Steelworkers of Am. v. N.J. Zinc Co., Inc.*, 828 F.2d 1001, 1005 (3d Cir. 1987).

The standard of review of a magistrate judge's determination depends upon whether the motion is dispositive or non-dispositive. For dispositive motions, the district court must make a *de novo* determination of those portions of the magistrate judge's report and recommendation to which a litigant has filed an objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); *see also State Farm Indem. v. Fornaro,* 227 F. Supp. 2d 229, 231 (D.N.J. 2002); *Zinberg v. Washington Bancorp Inc.,* 138 F.R.D. 397, 401 (D.N.J. 1990). The district court "may consider the record developed before the Magistrate Judge" and make its "own determination on the basis of that record." L. Civ. R. 72.1(c)(2).

## II. Discussion

Defendants object only to Judge Hammer's denial of Defendants' motion to dismiss for lack of subject-matter jurisdiction. (Def. Obj. at 7). Defendants primarily recycle arguments made in support of their motion to dismiss—namely, that by virtue of a series of litigation funding agreements which Plaintiff entered with Woodsford Litigation Funding (US) Limited ("WLF"), Plaintiff surrendered substantial rights in the patents-in-suit to WLF such that Plaintiff lacks constitutional and prudential standing to enforce those patents. (*See generally* Def. Obj.; D.E. No. 163 at 22–36). Judge Hammer rejected these arguments, concluding generally that Plaintiff did not transfer such significant rights to WLF, and that WLF's rights were not so restrictive of Plaintiff's rights, as would deprive Plaintiff of standing. (*See generally* R&R at 11–27). This Court agrees with Judge Hammer.

As an initial matter, the Court echoes Judge Hammer's contextualization of this dispute in the relevant legal landscape:

> This matter is distinguishable from much of the caselaw on which the parties rely. Most of those cases involved licensing agreements between the patent owner and a licensee, where some right to practice under the patents, or to assign or license the patents, was

5

> transferred to the licensee. **The agreements between [Plaintiff] and WLF[, by contrast,] are not licensing agreements, and WLF is not afforded any independent rights under the patents at all.** Rather, the crux of the issue currently before the Court is what rights were transferred from [Plaintiff] to WLF as a result of the financing and operating agreements.

(*Id.* at 13 (emphasis added)). With that important qualification in mind, the Court addresses Defendants' objections in turn.

### A. WLF's Litigation Rights

The Federal Circuit has emphasized that "[f]requently, . . . the nature and scope of [a patent plaintiff's] right to bring suit . . . is the most important consideration" in determining whether the plaintiff retains enough rights in the patent-in-suit for purposes of standing. *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010). Judge Hammer found, and Defendants do not dispute, that under Plaintiff's agreements with WLF, Plaintiff retains the sole legal right to initiate litigation over the patents-in-suit. (R&R at 12 & 14). Once Plaintiff initiates a suit, it must allow WLF the option to fund the action. (*See id.* at 14). If WLF decides not to fund the action, Plaintiff may proceed with the litigation on its own. (*See id.*). Nevertheless, Defendants argue that Plaintiff lacks the sole ability to sue *as a practical matter* because Plaintiff lacks the resources to pursue litigation on its own and is therefore "financially dependent on WLF to enforce the patents-in-suit." (Def. Obj. at 11–12). As Plaintiff points out, Defendants' contention about Plaintiff's financial circumstances is speculative and unsupported by evidence. (*See* Pl. Resp. at 11). Defendants also fail to cite any authority for their position that a party's ability or inability to fund its suit has any bearing on the standing analysis. The Court therefore rejects Defendants' objection and adopts Judge Hammer's reasoning on this point.

Second, Defendants contend that WLF's right to involvement in settlement decisions deprives Plaintiff of standing. (Def. Obj. at 12–14). Judge Hammer's Report and

Recommendation explains Plaintiff's and WLF's relative rights with respect to settlement: "[Plaintiff] can settle pending litigation with the consent of WLF. However, if [Plaintiff] and WLF cannot agree on the settlement terms, a third-party expert makes a final and binding decision." (R&R at 12). Defendants argue that WLF's involvement in settlement decision-making requires a finding that Plaintiff alone lacks standing and that WLF must be joined in these actions. (Def. Obj. at 13–14). In Defendants' view, the requirement of WLF's consent would force Defendants to negotiate a settlement with a non-party entity, which prejudices Defendants. (*Id.*). Plaintiff responds that "WLF has no power on its own to settle" and that the settlement approval process "is a private matter of corporate governance," analogous to the context of a corporate entity that requires input from various stakeholders before finalizing a settlement. (Pl. Resp. at 13–14).

The Court agrees with Plaintiff that WLF's limited role in settlement decision-making is insufficient to deprive Plaintiff of standing. As Judge Hammer reasoned:

> That WLF must consent to settle litigation does not, by itself, compel the conclusion that [Plaintiff] lacks substantial rights in the patents necessary to confer standing. First, as noted above, only [Plaintiff] can initiate suit. Moreover, WLF cannot, by itself, force settlement. Instead, . . . if [Plaintiff] and WLF cannot agree on settlement terms, a third-party expert makes the final and binding settlement decision. This provision alone limits WLF's rights in the patents.

(R&R at 18). Judge Hammer analogized the provision requiring third-party expert approval to other cases involving consent requirements but providing that such consent may not be unreasonably withheld, reasoning that the expert-approval provision serves a similar limiting purpose. (*Id.*). When moderated in this way, the Federal Circuit has found that consent requirements "do[ ] not significantly restrict the scope of" a party's rights in a patent. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251–52 (Fed. Cir. 2000); *see also Intellectual Prop. Devel., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1343 (Fed. Cir. 2001). Here, importantly,

7

WLF alone can neither settle the litigation nor force Plaintiff to settle. (*See* R&R at 22). This Court therefore agrees with Judge Hammer's finding that, while WLF's role in settlement decision-making does function as a restriction on Plaintiff's substantial rights, it is "not so restrictive as to compel the conclusion that [Plaintiff] transferred substantial rights in the patents to WLF." (*Id.*).

Third, Defendants assert that WLF's ability to exercise its special voting rights with respect to litigation also deprive Plaintiff of standing. (Def. Obj. at 14–16). As a member of Plaintiff, WLF may use its special voting rights to continue or discontinue litigation if both WLF and Plaintiff's counsel agree. (*See* R&R at 6 & 12). Defendants argue that such rights "make [Plaintiff's] ability to control litigation illusory" and render WLF "the party that controls the litigation once it is initiated." (Def. Obj. at 15–16). However, as Judge Hammer found, WLF's voting rights arise only contingently and "do not confer exclusionary rights" on WLF. (R&R at 19). For instance, WLF may discontinue the litigation if WLF ceases funding and Plaintiff cannot find an alternative funding source. (D.E. No. 163-13 at 30–31). In such a circumstance, as Plaintiff argues, Plaintiff may continue to pursue the litigation at its own expense. (Pl. Resp. at 15). As this Court has already determined, Plaintiff's ability or inability to self-fund the litigation does not affect its standing to bring suit. WLF may also discontinue the litigation if Plaintiff's counsel ceases its representation and WLF cannot secure replacement counsel. (*See* D.E. No. 163-13 at 30–31). But without any counsel to prosecute the case, the discontinuance of the litigation would be a product of circumstances—not the result of any meaningful exercise of WLF's "right" to discontinue it. The Court therefore concurs with Judge Hammer's characterization of WLF's voting rights as future "contingencies" that do not constitute a significant transfer of Plaintiff's rights, as well as Judge Hammer's analogy of these "contingencies" to potential future interests,

8

which the Federal Circuit has held not to constitute "full exclusionary interests" for purposes of standing at the time a lawsuit commences. (*See* R&R at 19 (citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1343 (Fed. Cir. 2007)).

Finally, Defendants contend that WLF's first priority to damages is indicative of ownership rights in the patents. (Def. Obj. at 16–17). Judge Hammer found that WLF's first priority to damages is consistent with WLF's protection of its own investment in this litigation and does not constitute an ownership right. (R&R at 23). A right to a portion of the proceeds of litigation is not necessarily a substantial right in the patent, particularly when the portion is not a substantial share. *See Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007). Here, the share of damages to which WLF is entitled under the parties' agreements has been redacted (*see* D.E. No. 163-13 at 16), but WLF's Chief Executive Officer testified at his deposition that WLF's share would be less than fifty percent (Pl. Resp. at 16 (citing D.E. No. 163-12 at 24–25)). Based on this record, the Court cannot conclude that WLF's first priority to some share of the damages constitutes a substantial right in the patents enough to deprive Plaintiff of standing. Accordingly, the Court concurs with Judge Hammer's finding and adopts the Report and Recommendation on this issue.

### B. WLF's Patent Rights

Plaintiff retains the right to assign, transfer, sell, or license the patents, but it requires WLF's consent, which may not be unreasonably withheld. (*See* R&R at 12). Defendants maintain that this consent requirement constitutes a substantial limitation on Plaintiff's ownership rights. (Def. Obj. at 18–19). Judge Hammer rejected this argument, reasoning that "where restrictions on the rights to assign and license are . . . limited by a requirement that the transferor and transferee consent to the assignment or license, and the required consent cannot be unreasonably withheld,

9

such a restriction is not significantly restrictive of the transferor's rights in the patent." (R&R at 15). Judge Hammer correctly relied on *Speedplay, Inc. v. Bebop, Inc.*, in which the Federal Circuit considered, *inter alia*, a provision in a license agreement limiting the licensee's ability to assign its license without the licensor's consent, but prohibiting the licensor from unreasonably withholding consent. 211 F.3d at 1251. The Federal Circuit distinguished such a provision from an "absolute right to veto any assignment" and concluded that, given the reasonableness limitation, "the consent requirement [did] not significantly restrict the scope of [the plaintiff's] rights in the ... patent." *Id.* at 1252. The same is true here. The Court rejects Defendants' argument that WLF's rights are broader than the licensor's rights in *Speedplay* or that WLF may withhold consent for an undefined "multitude of reasons" (*see* Def. Obj. at 19), because here, the reasonableness of WLF's withholding of consent must be measured "according to its consistency with [Plaintiff's] Patent Assertion Strategy." (R&R at 17 (citing D.E. No. 163-13 at 10)).

Second, Defendants argue that WLF's right to convert the patents to its own name under certain circumstances indicates that WLF has significant rights in the patents. (Def. Obj. at 20–21). Plaintiff agreed to give WLF a security interest in the patents as collateral, and WLF may convert the patents to its name if Plaintiff defaults. (*See* R&R at 7 & 13 (citing D.E. No. 163-21 at 8–9, 13–14)). As with WLF's right to continue or discontinue the litigation, Judge Hammer found WLF's right to convert the patents to be a "contingenc[y]" that does "not confer exclusionary rights" on WLF. (*Id.* at 19). Indeed, WLF may convert the patent only in an event of default. (*See* D.E. No. 163-21 at 13–14; Pl. Resp. at 19–20). WLF's conversion right is distinct from the right considered in *Propat*, 473 F.3d at 1191–92, where the patentee had the ability to terminate the plaintiff's patent rights if the plaintiff failed to perform up to certain benchmarks, because here, WLF may convert the patents only upon an event of default. WLF's right to convert,

10

as Judge Hammer reasoned, is thus better characterized as a security interest protecting WLF's investment than as an ownership right in the patent. (*See* R&R at 23). As a result, WLF's right to convert the patent in the event of default does not deprive Plaintiff of standing.

Third, Defendants raise the prudential concern that Plaintiff's continued prosecution of this litigation without joining WLF poses a threat of multiple lawsuits. (Def. Obj. at 21–22). Judge Hammer correctly noted that Plaintiff's and WLF's relationship "does not give rise to this risk" because Plaintiff "holds legal title to the patents, and the agreements confer no authority on WLF to initiate litigation, much less unilaterally." (R&R at 24). Instead, Plaintiff has the sole right to sue. (*See id.*). Nevertheless, Defendants raise the possibility that Plaintiff could default and WLF could invoke its right to convert the patents to its own name, in which case there would be "no guarantee that there [would] not be additional lawsuits." (Def. Obj. at 21). But this right is a hypothetical future occurrence contingent on Plaintiff's default. In the event Plaintiff does default and WLF does convert the patents, Plaintiff's "right to sue for infringement would be extinguished," (Pl. Resp. at 20), leaving no risk of multiple lawsuits against Defendants. Accordingly, the Court concurs with Judge Hammer and adopts the conclusions of the Report and Recommendation on this matter.

Fourth, Defendants argue that the rights that Plaintiff transferred to WLF outweigh Plaintiff's retained rights to practice under the patents. (Def. Obj. at 22–23). Judge Hammer carefully weighed the parties' rights and found that Plaintiff "retained all exclusionary and substantial rights in the patents such that [Plaintiff] possesses constitutional standing to bring this action." (R&R at 23 (citing *Morrow*, 499 F.3d at 1340)). Most importantly, only Plaintiff can initiate proceedings to enforce the patents. (*Id.*). Plaintiff also retains legal title to the patents, and can "practice under the patents, expand and strengthen them, license them, and sue third parties

11

for infringement." (*Id.* at 23–24). As discussed *supra*, WLF's limited set of rights and contingent future interests—such as its priority to a share of damages and its right to provide consent (not unreasonably withheld) to licensing determinations—do not outweigh the significant rights in the patents that Plaintiff retained. The Court therefore rejects Defendants' objection and agrees with Judge Hammer's balancing of the parties' rights.

Finally, Defendants raise a new argument in their objections to the Report and Recommendation that Plaintiff lacks the ability to assign its rights under its agreements with WLF, which, in Defendants' view, is a significant limitation on Plaintiff's ownership rights in the patents. (Def. Obj. at 19–20). Because this argument was raised for the first time in Defendants' objections to the Report and Recommendation, and not in Defendants' motion brief (*see generally* D.E. No. 163), the Court deems this argument to be waived. *See Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002).

Fundamentally, WLF contracted to fund this litigation, and Plaintiff secured that transaction by granting WLF a limited set of rights. The very purpose of the parties' engagement was to enable Plaintiff to sue to enforce the patents. As Judge Hammer correctly concluded, "WLF's interest is purely financial—in short, if the infringement litigation yields an award to [Plaintiff], WLF is remunerated." (R&R at 26). The rights transferred to WLF "reflect an intention to allow WLF to protect its investment" in the litigation, which "is fundamentally different than an intention to confer on WLF substantial rights in the patents themselves." (*Id.* at 23). Accordingly, and because Defendants raise no further objections to Judge Hammer's standing analysis, the Court concludes that Plaintiff has standing to bring these actions and that the Court may exercise subject-matter jurisdiction.

### III. Conclusion

For the foregoing reasons, having reviewed Magistrate Judge Hammer's Report and Recommendation, Defendants' objection thereto, and Plaintiff's response, this Court hereby adopts Magistrate Judge Hammer's Report and Recommendation in full. Accordingly, the Court:

(i) DENIES Defendants' motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1);

(ii) DENIES Defendants' motion to dismiss for improper venue pursuant to 28 U.S.C. §§ 1400(b), 1406;

(iii) GRANTS Defendants' motion to transfer venue pursuant to 28 U.S.C. §§ 1400(b), 1406; as follows:

    (a) *WAG v. Multi Media, LLC*, Civil Action No. 14-2340 is TRANSFERRED to the United States District Court for the Central District of California;

    (b) *WAG v. Data Conversions, Inc.*, Civil Action No. 14-2345 is TRANSFERRED to the United States District Court for the District of Nevada;

    (c) *WAG v. Flying Crocodile, Inc.*, Civil Action No. 14-2674 is TRANSFERRED to the United States District Court for the Western District of Washington;

    (d) *WAG v. Friendfinder Networks Inc.*, Civil Action No. 14-3456 is TRANSFERRED to the United States District Court for the Northern District of California;

    (e) *WAG v. Vubeology, Inc.*, Civil Action No. 14-4531 is TRANSFERRED to the United States District Court for the Western District of Texas; and

    (f) *WAG v. Webpower, Inc.*, Civil Action No. 15-3581 is TRANSFERRED to the United States District Court for the Southern District of Florida.

(iv) GRANTS Plaintiff's cross-motion to dismiss Defendant Docler-U.S. under Fed. R. Civ. P. 41(a)(2) without prejudice and DENIES Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) in *WAG Acquisition LLC v. Gattyán Group S.a.r.l.*, Civ. No. 14-2832.

An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**